Leslie A. Berkoff, Esq.
Ira S. Zaroff, Esq.
MORITT HOCK & HAMROFF LLP
1407 Broadway, 39th Floor
New York, NY 10018
Tel: (212) 239-2000
lberkoff@moritthock.com
izaroff@moritthock.com

*Attorneys for Pravati Capital, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | : | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| JOHN G. BALESTRIERE, | : | Case No. 24-11422-lgb |
| | : | |
| | : | |
| Debtor. | . | |

------------------------------------------------------------------------x

**PRAVATI CAPITAL, LLC'S REPLY TO JOINT OMNIBUS OBJECTION TO PRAVATI CAPITAL'S APPLICATIONS FOR RULE 2004 EXAMINATIONS OF NON-DEBTOR LAW FIRMS AND SECOND MOTION FOR EXTENSION OF TIME TO OBJECT TO DISCHARGE/DISCHARGEABILITY**

Pravati Capital, LLC ("Pravati"), by and through its undersigned counsel, respectfully submits this Reply (the "Reply") to the Joint Omnibus Objection (the "Objection") [Dkt. No. 74] to Pravati's Rule 2004 Applications directed at Balestriere PLLC d/b/a Balestriere Fariello ("BF") [Dkt. No. 69] and Balestriere Law Firm PLLC ("BLF") [Dkt. No. 67] and Pravati's Second Motion to Extend Time to Object to the Debtor's Discharge and/or Dischargeability of Certain Debts [Dkt. No. 71], and states as follows:

**PRELIMINARY STATEMENT**

1. The Debtor, John Balestriere and his two law firms, BF, and BLF (together the "Law Firms") jointly oppose the Rule 2004 Applications of Pravati seeking the production of

documents from, and an examination of, the Law Firms. The Debtor is the only person in control of all of the pertinent documents and information.

2. The Objection is replete with *ad hominems*, bordering on defamatory, and blame-shifting for the Debtor's predicament. The Court is respectfully referred to the accompanying Reply Declaration of Benjamin Pierce in Further Support of Pravati Capital, LLC's Application for an Order Directing Balestriere PLLC d/b/a Balestriere Fariello to Produce Documents and Sit for an Examination Pursuant to Bankruptcy Rule 2004, dated February 1, 2025 ("Pierce Reply Decl."), for a detailed response to some of the more outlandish accusations leveled by the Debtor and the Law Firms in their Objection.

3. The Objection regrettably contains inappropriate—and incorrect—details of confidential and inadmissible settlement discussions that Pravati entered into, and continues to consider, in good faith. The Objection also misrepresents positions that the Debtor and the Law Firms took during efforts to meet and confer and efforts to compromise on the production of documents which resulted in delays that necessitated the instant Motion for a further extension of time for Pravati to file a complaint objecting to the Debtor's discharge and/or dischargeability of certain debts. In fact, prior to Pravati's instant applications, the Debtor's counsel told the undersigned in no uncertain terms that "document production is complete." Now, however, in the Objection, the Debtor and the Law Firm acknowledge and represent to the Court that they do possess documents that Pravati is "due." *See, infra*, p. 5.

4. Given these improper distractions and obfuscations, the Objection spends little time arguing why the requests for information are inappropriate under the circumstances and applicable law. The matters on which Pravati seeks discovery are well-within the parameters of

Bankruptcy Rule 2004 which provides for very broad discovery to aid in the discovery of assets and determining whether wrong has occurred. *See, infra*, pp.6-9.

5. The notion that BLF should produce absolutely no documents is absurd as is the suggestion that Pravati should produce documents to prove its belief that the Debtor has committed wrongdoings. It is axiomatic that the knowledge of fraudulent conduct is rarely within the knowledge of the victim but is, instead, particularly within the knowledge of the alleged wrongdoers. *See, infra*, pp.12-13.

6. Moreover, potential claims pursuant to 11 USC §§ 523 and 727 likely exist and Pravati is entitled, pursuant to Rule 2004, to seek information that may uncover improper transactions and wrongdoing on the part of the Debtor and his wholly owned Law Firms. Despite the contentions made in the Objection, it is no defense against the production of information that an applicant may seek information to prosecute an action against the Debtor. *See, infra*, p.8. The Requests herein are proper and have been tailored to focus on the Debtor's transactions and potential wrongdoings as they relate to his Law Firms.

7. The Objection's claims of privilege are exaggerated and overbroad. Pravati is not seeking the production of "millions" of pages of privileged documents. Indeed, the attorney-client privilege is narrowly construed and would certainly not apply to many of the documents responsive to the Requests. To the extent that responsive documents are privileged, they must be identified in a privilege log. If the Debtor and the Law Firms continue to refuse to do so, it is grounds for the waiver of the asserted privileges. *See, infra*, pp.10-12.

8. Given the foregoing, and as more fully detailed in the Rule 2004 Applications, and below, the Debtor and his Law Firms' gamesmanship and continued refusal to produce documents responsive to the Requests necessitated Pravati's Motion for an extension of

time to file a complaint objecting to the Debtor's discharge and/or dischargeability of certain debts. It is respectfully requested that such extension of time to June 3, 2025 be granted.

## COUNTER-STATEMENT OF FACTS

9. The Court is respectfully referred to Pavati's moving papers on the instant Rule 2004 Applications and Motion for a further extension of time, and the accompanying Pierce Reply Decl., for a fuller statement of the facts and procedural history concerning the Debtor and Pravati. However, given the unfortunate misrepresentations and accusations leveled at Pravati in the Objection, it is important to provide the Court a more accurate description of events that has led to the instant Applications. Pravati will not, however, delve into the details of any of the settlement conversations or communications other than to acknowledge that Pravati has attempted to discuss settlement with the Debtor and the Law Firms in good faith. Advancing anything further, as the Debtor and the Law Firms have done in the Objection, is highly improper and the arguments relied on in the Objection concerning these discussions should be disregarded by the Court. *See Grant v. Citibank (S. Dakota), N.A.*, No. 10 Civ. 2955, 2010 WL 5187754, *2 n.1 (S.D.N.Y. Dec. 6, 2010) ("Rule 408 of the Federal Rules of Evidence bars the admission of most evidence of offers of compromise and settlement;" thus, the Court would not consider the information concerning the settlement discussions in the defendant's reply memorandum).

10. The picture painted by the Debtor and the Law Firms fails to account for the gamesmanship they insist on playing. As the email correspondence attached hereto as *Exhibit 1* makes clear (redacted to remove settlement discussions), the Debtor and the Law Firms consistently refused to produce virtually anything responsive to the Requests on behalf of the Debtor or BF, and nothing on behalf of BLF. At the same time, they continued to insist that Pravati should hurriedly examine the Debtor as early as February 12, 2025, despite the failure and

4

continued refusal to produce the responsive documents. They have also steadfastly refused to produce any privilege log despite repeated claims of attorney-client privilege.

11. In fact, Pravati was told by the Debtor's counsel on behalf of the Debtor and the Law Firms, on January 30, 2025, the day before the instant Applications and Motion were filed, "as I wrote you yesterday, the document production is complete." *Id*. Now, however, for the first time, the Debtor and BF acknowledge throughout the Objection that Pravati is "due" additional documents from BF and that it therefore has more responsive documents to produce. They continue to argue, without justification, that BLF should not have to produce a single document in contravention of Bankruptcy Rule 2004.

12. Pravati seeks the examination of the Debtor as the only person that controls the documents and information concerning his estate, the Law Firms, and the interaction between them all, which includes the transfer of assets. Such examination will not be possible until all responsive documents and a privilege log are produced. These transfers include cases transferred from BF to BLF, as evidenced by the Consents to Change Attorneys attached as *Exhibit D* to the Rule 2004 Applications [Dkt. No. 67-4]. These are publicly filed documents obtained by Pravati through the Court's electronic filing system. In their Objection, the Debtor and the Law Firms mock Pravati for exhibiting these as evidence of wrongful transfers from BF to BLF and as the only documents that it exhibited in support of its Rule 2004 Applications. But this only highlights the weakness of the Objection. There have clearly been transfers of assets, including cases from BF to BLF and Pravati is entitled to documents responsive to its Requests targeting these transfers and other potential wrongdoings of the Debtor.

13. The Objection claims that BLF was formed only three (3) days after the Debtor filed for bankruptcy. (Objection at 20). It is clear that the Debtor has caused BF to transfer

assets to BLF, including cases in which Pravati has a lien. The notion that Pravati is not entitled to the production of documents from BLF is antithetical to the purpose behind Rule 2004. And the claim in the Objection that Pravati has "virtually" all documents from BF (Objection at 5) is incorrect, as made clear in the Declaration of Benjamin Pierce, dated January 27, 2025, submitted with the moving papers on the instant Applications and Motion [Dkt. No. 69-5].

14. As discussed in the moving papers and the foregoing, any delay in these proceedings resulted from the Debtor and the Law Firms' obfuscations and gamesmanship, not the few days of the undersigned's travel time around the holidays and New Year. Therefore, it is respectfully submitted that the requested extension of time to file a complaint is granted, without prejudice to seeking additional time if the circumstances so warrant.

## ARGUMENT

### I. THE REQUESTS ARE PROPER AND THE LAW FIRMS MUST PRODUCE RESPONSIVE DOCUMENTS

15. The Requests seek discovery that is well-within the parameters of Bankruptcy Rule 2004 because they relate to the property and assets controlled by the Debtor, the actions of the Debtor and/or potential claims objecting to the Debtor's discharge and/or dischargeability of the Debtor's debts. (Fed. R. Bankr. P. 2004). It is axiomatic that Bankruptcy Rule 2004 provides for very broad discovery and permits the examination of a party other than the Debtor. *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("a third party who has a relationship with the debtor may be subject to a Rule 2004 examination in order to aid in discovery of assets"). Indeed, the investigative power embodied in Rule 2004 is so broad that an examination thereunder can "legitimately be in the nature of a fishing expedition." *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985); see also *In re Hilsen*, No. 87-11261, 2008 Bankr. LEXIS 2123, at *1-*2 (Bankr. S.D.N.Y. July 25, 2008) (same); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y.

1996) (same); *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984) (same). "As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for discovering assets, examining transactions, and determining whether wrong has occurred." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted).

16. The Court in *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) cited *In re Forest*, 93 F.190, 191 (S.D.N.Y. 1899), "one of the earliest published cases involving the scope of inquiry of a non-bankrupt under the Act." The Court in *In re Forest* held:

> In general, a large latitude of inquiry should be allowed in the examination of persons closely connected with the bankrupt in business dealings, or otherwise, for the purpose of discovering assets and unearthing frauds, upon any reasonable surmise that they have assets of the debtor. The intent of the bankrupt law is that only the debtor dealing honestly with his property shall be discharged; and that any proper assets of the estate, however concealed, shall be made available to creditors. The examination for this purpose is of necessity to a considerable extent a fishing examination…If the result of such an examination may often be a considerable amount of immaterial testimony, this is much less evil than to stifle examination by technical rules which would defeat the purpose of the act, and discredit the administration of the law in the interest of the creditors.

*In re Forest*, 93 F. at 191.

17. The Court in *In re Drexel* went on to hold that "[t]he understanding generally acceptable today is that the scope of Rule 2004 examination is very broad. Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards. It can be legitimately compared to a fishing expedition." *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702 at 711.

18. The cases relied on in the Objection are inapposite. *In re Celsius Network LLC*, 2022 Bankr. LEXIS 3091, at *7 (Bankr. S.D.N.Y. Nov. 2, 2022), is distinguishable from this case because there, the discovery being sought by a creditor was already the subject of an investigation by an examiner and creditors' committee. However, here, no other parties are seeking the discovery from BF and BLF that Pravati is seeking.

19. Indeed, "it is no defense to the production of information that an applicant for an examination seeks information to prosecute an action against the witness." *In re Drexel Burnham Lamber Group*, 123 B.R. at 710 citing *In re Paramount Publix Corporation*, 82 F.2d 230 (2d Cir. 1936) and *Marx v. Chase Nat. Bank*, 117 F.2d 800 (2d Cir. 1941). "[A] [p]ending litigation against [a] person sought to be examined under Rule 2004 and possible use of such testimony in [a] collateral litigation is not [a] sufficient reason for denying examination." *In re Drexel Burnham Lamber Group*, 123 B.R. at 710 citing *In re Table Talk Inc.*, 51 B.R. 143 (Bankr. D. Mass. 1985); *see also Freeman v. Seligson*, 405 F.2d 1326, 1337 (D.C. Cir. 1968). Furthermore, good cause for Rule 2004 discovery exists when "the requested documents are necessary to establishment of the moving party's claim" or when "denial of production would cause undue hardship or injustice." *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 712.

20. The Rule 2004 discovery of BF and BLF is necessary for Pravati to assess possible claims under 11 USC § 523 and/or § 727. Certain sections of § 523 and § 727 require debtors to account, not only for their personal finances, but also for their business transactions. *See, e.g., In re Robinson*, 595 B.R. 148, 157 (Bankr. S.D.N.Y. 2019) ("At issue here are numerous transfers between Robinson and various entities under her sole control…Therefore the assets of those Companies may be treated as the 'property of the debtor' under section 727(a)(2)(A)").

21. As well, for potential claims under 11 U.S.C. § 727(a)(3), discovery regarding a debtor's businesses is especially necessary where, as here, the debtor is the sole owner of the business entities and the party responsible for decision-making and the businesses financial affairs. *See In re Gormally*, 550 B.R. 27, 49 (Bankr. S.D.N.Y. 2016) (denying the debtor's discharge for failure to maintain adequate records regarding the debtor's business); *In re Thomas*, No. 01-21302, 2003 WL 21981707, at *11 (Bankr. D. Idaho July 17, 2003) ("Debtors were the sole owners of the corporation, the sole parties responsible for the decision-making and the financial affairs of the business, and solely responsible for the books and records of the business. Without [the corporation's] business records, no effort to ascertain Debtors' financial condition or relevant business transactions could be reasonably expected to succeed.").

22. Pravati is also entitled to test the veracity of statements made by the Debtor. *See, e.g., In re Bordonaro v. Fido's Fences, Inc.*, 543 B.R. 692, 701 (Bankr. E.D.N.Y. 2016) ("A bankruptcy petition, schedules and related statements are declarations made under penalty of perjury" and "constitute statements under oath for purposes of § 727(a)(4)(A)"); *In re Johnson*, 638 B.R. 782, 794 (Bankr. C.D. Cal. 2022) (a debtor's misrepresentations supported a claim under 11 U.S.C. § 523).

23. As one of the largest creditors of the Debtor, Pravati has a particular interest in obtaining information necessary to assess and defend its rights. *See In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 712 ("[i]t somehow seems impractical and unfair to prevent the potentially largest claimant from an investigation of the parameters of its claims and possible defenses."). The requested discovery of BF and BLF goes far beyond "relevance," indeed such discovery is key to analyzing the full extent of Pravati's rights to object to the Debtor's discharge/dischargeability.

24. Given the fact that the Debtor controls all of the information concerning his estate and his Law Firms, it would not be disruptive or overly burdensome to comply with his and his Law Firms' discovery obligations contrary to the contentions made in the Objection.

## II. THE DEBTOR'S AND THE LAW FIRMS' ASSERTIONS OF PRIVILEGE ARE IMPROPER

25. The Requests herein are targeted at the transfer of assets that the Debtor has caused BF to make to BLF. The fact that the Debtor is a lawyer and BF and BLF are his Law Firms does not immediately shroud all responsive documents under a claim of a privilege. The Objection's claims of privilege are exaggerated and overbroad. Pravati is not seeking the production of "millions" of pages of privileged documents.

26. Information and documents concerning bank account statements, tax returns, information about substitutions of counsel and notices of appearance, the transfer of assets greater than $500 (which may include cases and their value to the Law Firms) and the use of those funds, compensation paid to the Law Firms or that is due and owing to the Law Firms, the acquisition of any interest in litigations, and the capitalization of the Law Firms, are not privileged. Even information about the settlement of the specific cases listed in the Requests are not necessarily privileged. They would necessarily involve communications with third parties. They would not necessarily be subject to confidentiality stipulations, and communications discussing the fact of those settlements would not necessarily be privileged. Of course, to the extent such information is legitimately privileged, the Debtor and his Law Firms must log them in a privilege log so that Pravati can see what has been withheld and on what basis and test the assertions of privilege.

27. It is well-settled that courts construe the attorney-client privilege narrowly because it "renders relevant information undiscoverable." *United States v. Mejia*, 665 F.3d 126,

132 (2d Cir. 2011). "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact, were, kept confidential (3) for the purpose of obtaining or providing legal advice." *Id.* "The party asserting the privilege…bears the burden of establishing its elements." *Id.*

28. There is no attorney-client privilege over documents or communications in law firms that have nothing to do with the client or for the purpose of obtaining and giving legal advice. "Conversations between lawyers where one lawyer is merely relaying factual information, such as a conversation with a third party, to another lawyer are not privileged (or protected by the work product doctrine)." *In re Grand Jury Subpoenas dated Mar. 9, 2001*, 179 F.Supp.2d 270, 291 (S.D.N.Y. 2001).

29. The Debtor and the Law Firms' continued refusal to produce, or attempts to avoid producing, privilege logs may constitute a waiver of the attorney-client privilege. *See Strougo v. BEA Assocs.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001) ("The failure to produce a privilege log or to describe the documents in conformity with the Local Rule may result in a waiver of privilege"); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 Civ. 4978, 2000 WL 1538003, *3 (S.D.N.Y. Oct. 17, 2000) (finding waiver of work-product privilege where defendants willfully failed to set forth either the parties or the subject matter of the documents in the privilege log such that "[t]he dearth of information in the index listing is so complete that the listing is the functional equivalent of no listing at all."); *Hurst v. F.W. Woolworth Co.*, No. 95 Civ. 6584, 1997 WL 61051, *6 (S.D.N.Y. Feb. 11, 1997) (finding of waiver may be appropriate where log is never or untimely provided); *Wilson v. New York City Housing Authority*, No. 96 Civ. 1765, 1996 WL 524337, *2 (S.D.N.Y. Sept. 16, 1996) ("To the extent that defendants attempt to assert privilege, their failure to serve an index of privilege documents in conformity with [former] Local Civil Rule 46(e)(2)

has resulted in waiver of any privilege they may have otherwise had."); *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Intern., Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y.1990) (by claiming "privilege" rather than specifying particular privilege as required by the local rules, defendant waived work product privilege); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2006 WL 1295409, *1 (S.D.N.Y. May 10, 2006) ("Where a party fails to provide an index of withheld documents in a timely manner, any potentially applicable privilege is ordinarily waived.") (citing a multitude of cases); *A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97 Civ. 4978, 2000 WL 1538003 at *2-3 (citing a multitude of cases).

### III. THE ASSERTION THAT PRAVATI SHOULD PRODUCE DOCUMENTS TO PROVE ITS CLAIMS OR THAT THE LAW FIRMS SHOULD BE REQUIRED TO PRODUCE LITTLE TO NOTHING IS IRRATIONAL

30. Astonishingly, the Debtor and his Law Firms, without any basis in fact or law, argue in the Objection that Pravati should produce documents to prove that there have been fraudulent conveyances and other wrongs committed to avoid paying the judgment debt owed to Pravati. At the same time, the Debtor and his Law Firms argue that they are required to produce very little (or nothing in the case of BLF), and only up until the date of abandonment, November 12, 2024, despite the fact that, as claimed in the Objection, BLF was created only three days after the Debtor filed for bankruptcy.

31. Pravati seeks the examination of the Debtor as the only person that controls the documents and information concerning his estate, the Law Firms, and the interaction between them all, which includes the transfer of assets. There have clearly been transfers of assets, including cases from BF to BLF and Pravati is entitled to documents responsive to its Requests targeting these transfers and potential wrongdoings of the Debtor.

32. Of course, courts have consistently held, albeit mostly in the context of pleading standards, that the accused wrongdoer is the person with the knowledge of the alleged wrongdoing. The details of the alleged wrongdoing "are rarely within the knowledge of a victim of fraud and are more appropriately left for discovery." *Alix v. McKinsey & Co., Inc.*, 23 F.4th 196, 209 (2d Cir. 2022); *see also In re IIG Glob. Trade Fin. Fund Ltd.*, 666 B.R. 38, 87 (Bankr. S.D.N.Y. 2024) ("[A] Complaint often cannot be expected to specify the evidentiary details of a claim with the specificity that one might expect in a post-discovery and post-trial statement of proposed factual findings…. It would impose too high a burden to require that a Complaint allege facts that are peculiarly within the knowledge of an opposing party.").

33. While these cases are not directly on point, the absurdity of the Debtor and his Law Firms' position is highlighted by this analogous fundamental principle of the law and allegations concerning fraudulent conduct.

34. The Debtor is the only person that controls the relevant documents and information. He and his Law Firms should produce documents responsive to the Requests and, when the production of documents, with a privilege log, is complete, sit for an examination in accordance with Bankruptcy Rule 2004.

### IV. PRAVATI'S REQUEST FOR AN EXTENSION OF TIME TO FILE A COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE AND/OR DISCHARGEABILITY OF CERTAIN DEBTS SHOULD BE GRANTED

35. Based on the foregoing, it is respectfully submitted that the facts support the granting of the Motion for an extension of time to file a complaint objecting to the Debtor's discharge and/or dischargeability of certain debts. Pravati has made every effort to advance the proceedings, discuss settlement in good faith, and meet and confer about the Requests. However, in return, Pravati has encountered delaying tactics, gamesmanship, and incomplete document

productions, including the ongoing refusal to produce a privilege log. If the relief requested is not granted, Pravati will be prejudiced and will have insufficient time to conduct discovery which may aid in supporting a claim under 11 USC § 523 and/or § 727. Conversely, the Debtor will not be prejudiced if an extension is granted. Indeed, it is Debtor's own actions and positions, as described throughout Pravati's moving papers, that has necessitated the instant Motion.

36. In fact, other than reciting general propositions of law, the Objection provides no argument as a basis for denying the instant Motion. (Objection at 25-26). Conversely, Pravati, in its moving papers, presented the factors that inform a Court's discretion to grant an extension and explained how they applied to the circumstances herein. See [Dkt. No. 71].

37. Pravati submits that the complexity of this case, made more complex by the Debtor's obfuscations, provides ample reason for granting the instant Motion for an extension of time. It involves not only the Debtor's financial affairs, but also the financial affairs of the Debtor's Law Firms, the supposed dissolution of BF, the subsequent formation of BLF, the alleged transfers of assets, including those in which Pravati maintains a lien, and the intersection of the Debtor's individual affairs with the business affairs of his Law Firms, and numerous unresolved issues that directly affect Pravati's rights as a creditor. Moreover, as detailed throughout Pravati's moving papers, the Debtor cannot be said to have been cooperating in good faith with Pravati. *See In re Chatkhan*, 455 B.R. 365, 367-68 (Bankr. E.D.N.Y. 2011) (listing factors typically informing the Court's discretion to justify granting an extension of the deadline under Rule 4004(b), including the complexity of the case, and the debtor's cooperation with the creditor).

38. It is respectfully submitted, that the requested extension of time be granted, without prejudice to Pravati seeking an additional extension should the Debtor and his Law Firms

continue to obstruct Pravati from obtaining the information to which it is entitled or should other circumstances warrant a further extension.

## CONCLUSION

WHEREFORE, Pravati respectfully requests (i) an entry of an Order authorizing a subpoena providing for the examination of BF, directing BF to produce documents identified in the *Exhibit B* to the moving Application and sit for examination subsequent thereto; (ii) an entry of an Order authorizing a subpoena providing for the examination of BLF, directing BLF to produce documents identified in the *Exhibit B* to the moving Application and sit for examination subsequent thereto; and (iii) for an Order pursuant to Rules 4004(b) and 4007(c) of the Federal Rules of Bankruptcy Procedure further extending the time to file a complaint objecting to the discharge of the Debtor and/or the dischargeability of certain debts of the Debtor until June 3, 2025, and (iv) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      February 14, 2025

MORITT HOCK & HAMROFF LLP

By:    */s/ Leslie A. Berkoff*
      Leslie A. Berkoff, Esq.
      Ira S. Zaroff, Esq.
1407 Broadway, 39th Floor
New York, NY 10018
Tel: (212) 239-2000
lberkoff@moritthock.com
izaroff@moritthock.com
*Attorneys for Pravati Capital, LLC*