1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 24-11422-lgb

4  - - - - - - - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  JOHN G. BALESTRIERE,

8

9         Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, NY  10004

15

16              February 19, 2025

17              2:02 P.M.

18

19

20

21  B E F O R E :

22  HON. LISA G. BECKERMAN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  KS

1    HEARING re Pravati's Application for an Order Directing

2    Balestriere Law Firm PLLC to Produce Documents and sit for

3    an Examination Pursuant to Bankruptcy Rule 2004

4

5    HEARING re Pravati's Application for an Order Directing

6    Balestriere PLLC d/b/a Balestriere Fariello to Produce

7    Documents and sit for an Examination Pursuant to Bankruptcy

8    Rule 2004

9

10   HEARING re Pravati's Second Motion Pursuant to Bankruptcy

11   Rules 4004(b) and 4007(c) for an Order Further Extending

12   Time to File a Complaint Objecting to Debtor's Discharge

13   and/or Dischargeability of Certain Debts

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1  A P P E A R A N C E S :

2

3  BALESTRIERE PLLC

4        Attorney for Balestriere PLLC and Balestriere Law

5        Firm PLLC

6        225 Broadway, 29th Floor

7        New York, NY 10007

8

9  BY:  JOHN G. BALESTRIERE

10

11  BARCLAY DAMON LLP

12        Attorneys for John G. Balestriere

13        1270 Avenue of the Americas

14        New York, NY 11530

15

16  BY:  JANICE BETH GRUBIN

17

18  BARCLAY DAMON LLP

19        Attorneys for John G. Balestriere

20        545 Long Wharf Drive, Ninth Floor

21        New Haven, CT 06511

22

23  BY:  ILAN MARKUS

24

25

1   MORITT, HOCK & HAMROFF, LLP

2         Attorneys for Pravati Capital, LLC

3         400 Garden City Plaza

4         Garden City, NY 11530

5

6   BY:  LESLIE ANN BERKOFF

7

8   MORITT, HOCK & HAMROFF, LLP

9         Attorneys for Pravati Capital, LLC

10        41 Duke Street

11        Deer Park, NY 11729

12

13  BY:  REBEKAH R. SHERRY

14

15  MORITT, HOCK & HAMROFF, LLP

16        Attorneys for Pravati Capital, LLC

17        1407 Broadway, 39th Floor

18        New York, NY 10018

19

20  BY:  IRA S. ZAROFF

21

22

23

24

25

1  1787 LEGAL GROUP, LLC

2      Attorney for Pravati Capital, LLC

3      7154 East Stetson Drive, #210

4      Scottsdale, AZ 85251

5

6  BY:  BENJAMIN PIERCE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  This is Judge Beckerman.  The court is

3    now in session.  I'm going to go ahead and call my case, and

4    when I do I'll ask the attorneys to please put their

5    appearances on the record.  Okay.  Case Number 24-11422,

6    John G. Balestriere.  May have counsel, please, appearances?

7    Ms. Grubin, you're on mute.

8          MS. GRUBIN:  Good afternoon, Your Honor.  Janice

9    Grubin from Barclay Damon, LLP.  I'm -- I represent Mr.

10   Balestriere and I'm co-counsel to Balestriere Fariello,

11   which we'll refer to as BF, along with Mr. John Balestriere,

12   who is also here to represent as co-counsel BF and also

13   Balestriere firm BLF.  And Mr. Balestriere informs me that

14   he is in the waiting room for some reason.

15         THE COURT:  Okay.  All right.  Well, my CRD is on

16   the line, so let me just text her.

17         MS. GRUBIN:  Thank you.

18         THE COURT:  That's okay.  So good.  Okay, my

19   courtroom deputy says he is not in the waiting room.  He

20   needs to use the new link that was emailed.

21         MS. GRUBIN:  Okay.

22         THE COURT:  I'll wait.

23         MS. GRUBIN:  Okay.  Let me I'll send it to him.

24         THE COURT:  If you're on.

25         MS. GRUBIN:  I am.

1          THE COURT:  So it worked.

2          MS. GRUBIN:  Oh, yeah.  Much easier, actually,

3    with the code, I thought.  Chantel, yeah.

4          THE COURT:  Hello, Mr. Balestriere.

5          (Off the record)

6          MS. GRUBIN:  There was a new code that was sent,

7    and I didn't get it maybe because we just filed the notice

8    of appearance.  So I'm sorry for the delay.

9          THE COURT:  No worries.  That's fine.  Okay.  All

10   right.

11          MS. GRUBIN:  I'd also like to add that Mr. Ilan

12   Marcus, my colleague, should be joining us momentarily as

13   well.

14          THE COURT:  Okay.  That's fine.  Thank you.  All

15   right.  Ms. Berkoff?

16          MS. BERKOFF:  Leslie Berkoff on behalf of Pravati

17   Capital LLC.  I have with me today my partner, Ira Zaroff,

18   as well, Your Honor.

19          THE COURT:  Okay.  All right.  Any other --

20          MR. ZAROFF:  Good afternoon, Your Honor.

21          THE COURT:  Good afternoon, Mr. Zaroff.  Any other

22   appearances?  Okay.  All right.  So, Ms. Berkoff, you

23   obviously filed three separate motions, so I will leave it

24   to you in what order you wish to take them.  I think we're

25   going to spend more time on the 2004 than we probably are on

1   the other ones, so it might make sense to start with those,

2   but I defer to you.

3           MS. BERKOFF:  Thank you, Your Honor.  And

4   actually, I am going to have my partner, Mr. Zaroff, handle

5   most, if not all of this.  I would agree that the two -- if

6   I could just set the table for a second, the 2004s obviously

7   logically would make sense for us to start with.  We do

8   think the motion to extend may sort of dovetail from there.

9   But since Mr. Zaroff has been more hands-on on the discovery

10  demands, I thought it would be more useful to have him cover

11  it.  If anything gets missed or if there's a question that

12  he can't answer because he's a little newer to the

13  litigation, I'll chime in as necessary.  But I'm going to

14  effectively turn the virtual podium over to him if I can.

15          THE COURT:  Yes, that's fine, Ms. Berkoff.

16          MS. BERKOFF:  Thank you.

17          MR. ZAROFF:  Thank you, Your Honor.  Good

18  afternoon.  The motions before Your Honor today are related.

19  Pravati has been attempting to -- you know, I'm getting

20  quite a bit of --

21          THE COURT:  Yeah.

22          MR. ZAROFF:  -- feedback.

23          MS. BERKOFF:  Do it this way.  Take it off my

24  space.

25          MR. ZAROFF:  Let me see if -- pardon me, Your

1    Honor.  I'm getting quite a bit of echo here.

2              THE COURT:  Okay.  That seems like --

3              MS. BERKOFF:  Mute those (indiscernible).

4              MR. ZAROFF:  Ms. Berkoff and I are in the same

5    room, and sometimes --

6              THE COURT:  Oh, I figured that out.  That's fine.

7              MR. ZAROFF:  I apologize for that.

8              MS. BERKOFF:  I'll work with this.

9              MR. ZAROFF:  Your honor, as I was saying, the

10   motions today are related.  Pravati has been attempting to

11   obtain documents and information about the debtor and his

12   law firms and the transfers between them in order to assess

13   its rights and whether it should object to discharge and

14   dischargeability.  At the time these motions were made, it

15   had roughly been about six weeks since Your Honor issued her

16   order approving the Rule 2004 subpoena on the debtor.

17             Since that time, Pravati has been met with delay

18   and stonewall.  First, the debtor produced hardly any

19   documents in response to the document request, despite

20   creating a new law firm, which he caused the transfer of

21   assets.  Pravati has made efforts to negotiate the document

22   requests on the law firms, but has been met with near

23   blanket refusals to produce any documents, and no documents

24   at all in the -- for the BLF, the new law firm.

25             As well, Your Honor, they have refused to produce

1    any privilege logs, despite what we believe are their

2    exaggerated assertions of privilege.  At the same time, the

3    debtor has insisted that Pravati hurry up and take his

4    examination despite not having any of the relevant documents

5    and information.  We believe, Your Honor, that the document

6    requests are tailored and focused to include the assets that

7    have been transferred, including cases that Pravati has

8    funded, and in which it has a lien interest.

9            Yet again, as I noted, Your Honor, we've been met

10   with nothing but stonewalling and blanket refusals to

11   produce documents.  This has necessitated the instant motion

12   for an extension of time, as well as the instant Rule 2004

13   applications on the law firms.  Should Your Honor have any

14   questions concerning the requests or anything in the papers,

15   I'm happy and prepared to enter those.

16           THE COURT:  Okay.  Well, thank you, Mr. Zaroff.  I

17   do.  I have a number of questions.  So first thing is, it

18   seems to me that this 2004 exam has to fall within the

19   requirements of 2004, which has to do with debtors, assets,

20   and liabilities in particular, and debtor's operations.  The

21   debtor himself is not a law firm, so there's a little bit of

22   a tricky part about that, I suppose.  But it has to fall

23   into that.

24           And then the other thing that it has to sort of be

25   mindful of is the requirements for non-dischargeability

1   litigation.  And you know, here, you know, we have obviously

2   a situation where we have a pending proceeding.  And I

3   think, you know, anything that seems to fall outside of the

4   pending proceeding exception, you know, is fine.  But if

5   it's within the pending proceeding, it's not something that

6   generally courts will give you 2004 relief on.  And with

7   respect to discharge, you know, at least just talking about

8   an overall discharge for the moment, leaving aside the

9   issues in 523, but, you know, here you have to look into

10  really property of the debtor, you know, before the filing

11  of the petition.

12          And obviously, you know, I allow discovery with

13  the debtor, you know, going back as you know six years

14  because you could have fraudulent transfer actions or other

15  things relating to the debtor.  I completely get that.  Even

16  though that's not what the dischargeability statute says

17  because it's just another, you know, action that could be

18  brought.  But it's an action that creditors have rights

19  outside of bankruptcy to bring.  So I definitely am mindful

20  of that.

21          And then property of the estate after the date of

22  the filing of the petition.  Again, because this is a debtor

23  who's a person and not the law firms themselves, this gets a

24  little tricky too.  So when I was reading your requests, you

25  know, they do seem fairly broad to me.  I don't think -- I

1    guess I'll just say off the bat, I don't think this is a

2    situation where no discovery is warranted necessarily.  But

3    I do think that In terms of discovery, it has to really

4    relate in some way to the debtor, the debtor's assets or the

5    debtor's liabilities, because otherwise it gets into areas

6    that are perhaps beyond, you know, what's allowed under the

7    pending proceeding exception.

8              And that's because if it's discovery that

9    otherwise would have to do with the pending proceeding,

10   which might have to do, for example, with your  -- and there

11   is a pending proceeding in which you have a claim, you know,

12   because of the guarantee against the debtor, you know, it

13   really has to be something that is more tailored towards

14   issues that would come up in dischargeability or something

15   that would be -- you know, allowed under 2004.

16             And that's why I think here, this just gets a

17   little tricky.  You know, you can't have -- you know, this

18   isn't -- if the law firms were in bankruptcy, a lot of your

19   questions would be perfectly fine, because they go -- and

20   the things you've asked for because they would then go to

21   the debtors acts, conduct or property, the debtor's

22   liability and financial condition, anything that affects the

23   administration of the debtor's estate, or the debtor's right

24   to a discharge.

25             I went to the worst part, which is the higher

1    standard of 7 -- you know, of 727 and looking at 523 for

2    dischargeability of debt.  So while I think that if it's --

3    involves transfer of money or property to the debtor, I

4    think that's relevant.  I certainly think that's a question

5    because that goes to issues about that.  And certainly there

6    would be money presumably that Mr. Balestriere got from his

7    law firm.  I would be surprised if that wasn't true, but I

8    don't know what it is over the years, that seems like it

9    could be reasonable because there's a question about that,

10   at least the pre-petition stuff.  Because that is -- you

11   know, the pre-petition firm, because that's certainly true.

12            And then of course, if there's some reason that

13   there's transfers that are going on post-petition to the

14   debtor, yeah, it's still relevant under the discharge

15   provisions or transfers, you know, that would happen.  I

16   think it would also be relevant to be asking questions about

17   the law firms paying things -- you know, paying his family

18   members or something because then somebody might have an

19   argument that that's some kind of, you know, shielded

20   transfer that people were trying to do.  So you'd probably

21   think it would extend to that.

22            But I have a hard time understanding what gets

23   beyond assets and liability transfers to and between the

24   debtor.  I understand that there are transfers that have

25   taken place between the old law firm and the new law firm,

1   but where I have an issue with that is the old law firm and

2   its interest was abandoned out of the Chapter 7 trustee,

3   which means it goes by the Chapter 7 trustee.  So it means

4   it goes back to the debtor technically under abandonment.

5   So the debtor has that, but it's not part of the estate.  So

6   that's technically what happens with the abandonment of the

7   interest in the old law firm.

8         And then in the new law firm, which was done after

9   the time of this filing was created, you know, there are

10   limitations on discovery for that.  Obviously, the code

11   contemplates if money is going back and forth or assets are

12   moving back and forth between the debtor and that entity.

13   That's relevant.  But it doesn't contemplate the idea of

14   something being moved from one law firm to another law firm.

15   And that's where I have a little bit of trouble because I

16   could see where that would be relevant to your litigation in

17   the pending proceeding.

18         But I'm having a little bit more trouble seeing

19   where it falls under 2004 or where it falls under -- I'm

20   just picking again on 727.  Yu might point me to something

21   that applies in 7 -- 523, which we haven't even gotten into.

22   But it has to fall in those categories, or I think this gets

23   too broad.  And that's why when I looked at your list of

24   requests, it just seemed very unduly broad to me.  Again,

25   not saying you're not entitled to some discovery, but that I

1   do think it has to be relatively limited and it can't be

2   something that relates to the pending proceeding.  And a lot

3   of the issues that you raised are issues about, you know,

4   liens that would have been at one law firm or another law

5   firm, again, not really the debtor.

6         And the problem is that there are limitations

7   under the code, even very broad, but 2004, and there are

8   limitations relating to dischargeability.  So anyway, I was

9   hoping you could answer my concern about that because that's

10   where I have some trouble with what you're asking.

11         MR. ZAROFF:  Happy to you, Your Honor.  It's our

12   contention, and I think we've briefed it in the papers, that

13   Rule 2004 allows for broad discovery, especially in

14   situations here where clearly there have been transfers of

15   assets.  And Rule 2004 does go to the right of discharge and

16   it requires the honesty on the part of the debtor.

17         It was uncovered during the arbitration where the

18   debtor -- their stonewall providing disclosure and it was

19   only during -- my understanding was upon his examination in

20   the arbitration that certain funds that were due to Pravati

21   or that were due to the law firm at the time, the law -- the

22   first law firm, and which part of those funds should have

23   been paid over to Pravati, or at least reported to Pravati,

24   were not.

25         So -- and likewise, there were a transfer of cases

1    that Pravati had funded, and upon which it has an interest

2    lien, were transferred from law firm one to the new law firm

3    created just three days after the filing.  And we have

4    really very little information about what else there is.

5    And so when there are suspicions of wrongdoings or

6    transfers, the case law seems pretty clear that these are

7    areas that an applicant is entitled to examine, to seek that

8    information, and ultimately to take an examination of the

9    debtor or the non-debtor, as the case may be in this here.

10           The complexity we have here, Your Honor, is that

11   the debtor controls not only his own information, but he

12   controls all the information, the documents of these law

13   firms.  There's no one else to whom we can look other than

14   the debtor.  And there are cases where you have a wholly

15   owned corporation and all of that information is controlled

16   by the debtor, the corporation's information becomes really

17   one and the same with the debtor.

18           And so really what we're trying to do, Your Honor,

19   is see what cases have been transferred, are those the cases

20   that Pravati has funded and in which it has an interest,

21   have there been payments to the law firm, information

22   Pravati would be entitled to, and we just don't know.  And

23   so it's the information we're seeking and it's information

24   we were told by the debtor and the law firms we're not

25   entitled to.  Only to the date of abandonment, despite the

1    fact that the new law firm was formed three days after the

2    filing.

3            And so if money is paid to the new law firm, I

4    think that's something that Pravati is entitled to know.

5    They say, well, you look at the bank accounts.  First, we

6    only have bank accounts the date of abandonment.  That's

7    the only dates that they've agreed to.  And secondly, we

8    need to know where that money comes from.  Did it come from

9    the settlement of a case?  Did it come from fees earned in a

10   case?  Was a case settled and a contingency fee earned?

11   These are the things we just don't know, we'd like to know,

12   and we'd like to examine Mr. Balestriere about.

13           So it is complex in the sense that we have a

14   debtor who has law firms, one of which was recently formed

15   where all the assets -- and in this case the assets are

16   cases, they're litigations, were moved from law firm one to

17   law firm two.  We have found (indiscernible) of counsel

18   where it's just simply Mr. Balestriere for Mr. Balestriere.

19   We were told that we're not entitled to any information

20   about that or any other case where there may have been the

21   transfer of the case to the new law firm.  So these are the

22   things we're trying to get to the heart of.

23           And we did try to tailor the request to that

24   effect.  Yes, they read, I would suppose, more on the broad

25   side as requests tend to do any and all documents, but

1    really at the heart of it, we just want to know what's been

2    transferred, what monies have been received, what monies

3    have been paid, what monies have been owed, what cases have

4    been settled, and have there -- and what are the, you know,

5    components of that settlement vis-a-vis these that are

6    earned or paid to Mr. Balestriere.

7              THE COURT:  Okay.  I hear your argument, but I'm

8    still having a problem with some of it.  I'm trying to

9    understand what exactly you're trying to get at.  Because it

10   seems to me you have a guarantee, Mr. Zaroff, that was

11   obviously, you know, awarded by -- you know, a judgment was

12   awarded to some degree by the arbitration and relating to

13   that obligation, guarantee obligation.  And I know obviously

14   that process is still going on I believe in the court system

15   there.  Can't remember if it's actually been a -- you know,

16   a -- I guess, affirmed or not, but turned into a judgment.

17              But anyway, I -- what I understand is there's the

18   process going on there.  And that obviously relates to the

19   amount of your claim, what you have claims against, against

20   the debtor on account of the guarantee.  You also, of

21   course, have claims against the existing prior law firm

22   because that was part of your contract.  And I think that

23   the arbitrator was clear that there was obviously contract

24   issues.

25              Whether or not, you know, under the contract you

1    also have claims against the other party because of a

2    transfer, that may certainly be true.  I'm not saying it

3    isn't, but I'm saying that you already have a proceeding

4    going on with respect to that.  Here we have a guarantee.

5    You have a judgment that you -- or certainly an arbitration

6    award anyway, that's going be the basis of your claim for

7    sure in this case, against Mr. Balestriere for his, you

8    know, personal guarantee.

9          But you also have these other claims going on

10   against parties, one of which is in wind-up and the other

11   which isn't -- and I don't think that there is preclusion

12   against proceeding against either of those because we're --

13   we don't -- the stay doesn't apply to either one of them.

14   Either of those two entities if you have a basis for it.

15         So here I think the question is, yes, if money was

16   going from the law firm to Mr. Balestriere or from either

17   the law firm to Mr. Balestriere, then I think that that's

18   certainly relevant if there were assets transferred to Mr.

19   Balestriere.  And I'm saying Mr. Balestriere probably

20   because I think it includes like his entire family, but

21   whatever, where there would be an issue, I could see that.

22         But where you get to the law firms, I think that

23   really -- you know, that might obviously go to a fraudulent

24   transfer action that you might have against the law firm and

25   perhaps Mr. Balestriere.  I get that.  But I think you're

1    going to have to -- you know, this would have to be

2    relatively limited and probably start with first money and

3    maybe money and cases that were transferred, at least

4    knowing which ones were transferred.  I don't think that

5    finding out other issues about that, I'm not sure whether

6    that's going to go beyond 2004 or something else.

7            Because if you find that cases were transferred to

8    another law firm and that gives you some kind of argument,

9    again either under your contract or fraudulent transfer

10   argument, I don't know what else one would be arguing here,

11   but something, then I mean you'll have to file a complaint

12   or continue in your existing dispute or it'll be in your

13   claim presumably.  Any of those.

14           But it doesn't mean that you have some kind of

15   extremely broad fishing expedition here because it's not the

16   debtor that we're talking about.  It's these law firms that

17   are ongoing.  And yes, it is odd that Mr. Balestriere

18   decided to like start a new firm three days after bankruptcy

19   filing.  I agree.  It's not common.  That's why if any money

20   moved from that law firm to Mr. Balestriere, you should know

21   because that makes sense.  If Mr. Balestriere put money into

22   the law firm, you should know.  That's part of Mr.

23   Balestriere's discovery that I already approved.

24           If there's money that moved from the old law firm

25   to Mr. Balestriere, you should know about that.  I think

1    that's right.  If money moved from Mr. Balestriere to the

2    old law firm, you should know about that.  That's definitely

3    right because those are issues about -- that involve the

4    debtor's estate potentially or claims against the debtor's

5    estate or a discharge issue.  But where you get into third-

6    party issues, it gets a little tricky here.  You can't --

7    especially where you have a pending proceeding.  If you

8    didn't have a pending proceeding, this would probably be a

9    broader expedition I would allow.  But because you do have a

10   pending proceeding, it's harder to determine what's outside

11   of your pending proceeding that you already have.

12            MR. ZAROFF:  Yes, Your Honor.

13            THE COURT:  So I think what's reasonable is that

14   -- you know, it seems what's reasonable to me is that

15   there's a certain amount of information that you should be

16   entitled to.  But I don't think it's going to be as broad as

17   all the things that you're asking about.  Because if it

18   turns out that cases got transferred, which I think you need

19   to know if cases got transferred, that's fine, that's your

20   collateral arguably, or basis for payment, if those got

21   transferred, you should know that they got transferred.

22            But I'm not sure what else for purposes of this

23   that that would be permissible.  If you think you have a

24   breach of contract claim against the additional or another

25   lawsuit against the additional new firm, since the cases got

1    transferred and it's on the basis of your contract, nothing

2    is stopping you from bringing that action because it doesn't

3    involve Mr. Balestriere necessarily.  If you think it's a

4    law firm that's doing something, if you think there was a

5    fraudulent transfer from BF to BLF, sorry, BLF to BF -- I

6    hope I said that right, BLF to BF, again, nothing's stopping

7    you from suing them.  Sorry to say that, but true.  So, you

8    know, there's a limit here.  That's all I'm saying to you.

9    All right.  I'm going to hear the case.

10        MR. ZAROFF:  Yes, Your Honor.  Yes, Your Honor, if

11   I may, and I think you touched on something very important

12   here, which is what we are trying to get at, the heart of

13   what we're trying to get at is what monies or what assets

14   are flowing to Mr. Balestriere.

15        The creation of the new law firm as a vehicle to

16   move assets or perspective or potential assets, funds, fees,

17   settlements, whatever the case may be, to him personally.

18   And I would like to direct Your Honor to a case we cited on

19   page 8 of our reply brief --

20        THE COURT:  Mm-hmm.

21        MR. ZAROFF:  -- Paragraph 20.  That is the

22   Robinson case.  In there, where we say that Sections 523 and

23   527 require debtors to account not only for their personal

24   finances, but for their business transactions as well, the

25   court there held, "At issue here are numerous transfers

1    between Robinson and various entities under her sole

2    control.  Therefore, the assets of the companies may be

3    treated as the property of the debtor under Section

4    727(a)(2)(A)."  So we do have a situation here, Your Honor,

5    where we have one individual who's got control of all of the

6    information, all of the documents.

7                    THE COURT:  Okay.

8                    MR. ZAROFF:  He's got --

9                    THE COURT:  I'm just going to stop you there for a

10   second --

11                   MR. ZAROFF:  Understood.

12                   THE COURT:  -- because I'm not sure that's

13   entirely true about the first law firm.  There was another

14   partner.  It wasn't just one person who is a partner in that

15   law firm.  I don't know who kept the books and records.  I

16   don't know if it was Mr. Balestriere or somebody else.  I

17   just truly don't know.  I'm not saying you're wrong

18   entirely, but I just know that there wasn't just one

19   partner.

20                   This law firm, I believe, is just one partner, but

21   that's because I think I asked Mr. Balestriere this question

22   last time he was in front of me.  But it's -- again, I'm

23   just interrupting you because I'm not sure that's correct

24   that you're the only (indiscernible).

25                   MR. ZAROFF:  No, that's okay, Your Honor.  We're

1    trying to get to the bottom of that as well.  We have reason

2    to believe that Mr. Balestriere was the sole or at least

3    certainly the vast majority owner --

4              THE COURT:  Okay.

5              MR. ZAROFF:  -- of law from one.  But again, those

6    -- that's the information that we're trying to obtain and to

7    which we've just been told you're not entitled.

8              THE COURT:  Okay.  But in your own discovery

9    request that I approved the last time, I did require

10   information about his ownership in the law firm.  So that

11   information should have been provided.

12             MR. ZAROFF:  And if I may, Your Honor, one of the

13   things -- we have these two motions because certain requests

14   Your Honor was --

15             THE COURT:  Yes.

16             THE COURT:  -- right to point out, should be

17   directed at the law firms.  So what we wanted to do was take

18   this approach, go down this road.  It may very well be the

19   case, hopefully not, where we may have to make a motion to

20   compel because --

21             THE COURT:  Yes, you may because it does sound

22   like to me, if you really haven't been given information

23   about the ownership of these law firms, that would be a big

24   problem to me.  Because that for sure should -- is

25   definitely an issue.  I mean, that is clearly -- it -- you

1    know, Mr. Balestriere is involved in each one of those and I

2    did require you to be provided with organizational documents

3    and ownership information and other things.  Because Mr.

4    Balestriere, as a debtor or even post-petition, post-

5    debtor's-estate, you know, outside of the seven, still has

6    ownership interests in these areas.  So I understand, you

7    know, why that's a question.  But I think your -- again,

8    your request goes a little bit beyond that here in terms of

9    what you're looking for.

10            I do think there's some information you should be

11   provided with regarding these law firms, but it has to tie

12   in some way, either to a concern about a transfer, you know,

13   that occurred either pre-petition or post-petition,

14   certainly involving Mr. Balestriere, or at least for the

15   very limited amount, maybe some limited discovery on just

16   the issue of transfer of cases.  Not the information you've

17   requested, but just where there was a substitution of

18   counsel filed so that at least cases that you allege you had

19   an interest in were transferred.

20            And if you have a list of all cases that were

21   transferred without describing what they are, just knowing

22   that they were because they were publicly filed, that there

23   was transfer, you know, publicly done --

24            MR. ZAROFF:  If we --

25            THE COURT:  -- or not.

1          MR. ZAROFF:  If we know of some -- sorry, Your

2     Honor.

3          THE COURT:  No, then I get that.  But again, I

4     think, you know, asking for things that go to all of the

5     information about these litigations, I think that's too far.

6     I think if you find out that it got transferred to somebody

7     else who's not under the automatic stay, you have remedies.

8     And those remedies might not involve me, but they're

9     remedies that exist under the law.  And you have either

10    contractual remedies or you have non-contractual remedies

11    that don't involve the debtor necessarily.

12          And so, you know, I just say to you, those are

13    things that -- you know, that could be dealt with perhaps in

14    other ways.  It doesn't necessarily mean that you get, you

15    know, unlimited discovery or broad discovery about

16    everything that's happened with these.  If you know that a

17    lawsuit that you had an interest in under your contract and

18    that you had funded and you were entitled to receive

19    payments, and now it's transferred to some other entity, if

20    either the contract allows for that, it doesn't allow for

21    that, I don't know.  If it doesn't allow for it, I guess you

22    got lawsuits.  That's what I'm telling you.

23          MR. ZAROFF:  That was the intention of many of

24    these requests, Your Honor.

25          THE COURT:  I understand.

1          MR. ZAROFF:  But those are for the cases we do

2    know about, but we don't know about all of them.

3          THE COURT:  I understand, but I don't think you're

4    going to get into the nature of each one of these cases.

5    You are getting into attorney-client information.  This is

6    an ongoing law firm, particularly the current law firm.  I

7    wouldn't allow someone to do that unless there was a really

8    valid reason and you don't even have a -- no disrespect, you

9    don't have a valid reason yet.

10          So I don't think that's what is appropriate here,

11   especially because there is already a pending proceeding and

12   where you could bring an action that doesn't have to do with

13   non-dischargeability or some other action on behalf of the

14   esteem or on behalf specifically under either 727 or 523,

15   then you're going to get into issues where, okay, you may

16   find out things happened.

17          And I grant you, you may need to find out where

18   things were transferred.  But after that, there's nothing

19   stopping you from filing some kind of action against an

20   entity that's not in bankruptcy proceedings.  So, again, I

21   just -- there's nothing about the stay that applies to

22   either property that's been abandoned outside of the estate,

23   I -- the old law firm, and property that's not part of the

24   estate, the new law firm.

25          MR. ZAROFF:  Your Honor --

1          THE COURT:  So you've got very -- you got broad

2    options in terms of things that aren't covered by this

3    court.  Sorry.

4          MR. ZAROFF:  Understood, Your Honor.  I do want to

5    make -- there's -- nothing in these requests were drafted to

6    seek any information or communications that would have

7    anything to do with attorney-client advice, giving legal

8    advice.  But we are --

9          THE COURT:  I understand.

10          MR. ZAROFF:  -- in this very difficult world of

11    world of litigation, you know, litigations, and where we

12    have requests targeted at a lawyer and his law firms.

13          THE COURT:  Okay.

14          MR. ZAROFF:  It does create --

15          THE COURT:  I understand.

16          MR. ZAROFF:  -- difficulties.

17          THE COURT:  But if you get information about cases

18    that have been transferred -- and just again, the case --

19    the party who they represent, and, you know, that, nothing

20    about what the case is or any advice or anything else, but

21    just the bare bones things, if you get information on that,

22    that is enough at some point, either for you to come back

23    and argue that you need something else, Mr. -- you know, Mr.

24    Zaroff, or to commence an action, if you think you have one

25    that involves the bankruptcy court, or to commence an action

1    that doesn't involve the bankruptcy court.

2              So again, I -- I'm just saying to you that there's

3    limits here with what -- you know, what's reasonable.  Again

4    --

5              MR. ZAROFF:  We shall --

6              THE COURT:  Yeah.  I just --

7              MR. ZAROFF:  We shall endeavor to follow your --

8              THE COURT:  Right.  I understand.

9              MR. ZAROFF:  -- Your Honor's guidance.  And I

10   suppose the next steps would be to --

11             THE COURT:  Discuss what I'm gonna allow you to

12   have produced.  Yes, we we'll get to that.  All right, Ms.

13   Grubin or Mr. Marcus or Mr. Balestriere?

14             MR. BALESTRIERE:  I will have something to say I

15   suppose, Your Honor, but -- and it almost could be helpful

16   for me to go first, but I defer to Ms. Grubin because I was

17   just going to talk about some of the facts.  But I defer to

18   Ms. Grubin, of course (indiscernible) --

19             MS. GRUBIN:  Let me just -- as -- to take a phrase

20   from Ms. Berkoff, set the table.  So, Your Honor, as we

21   looked carefully at the 2004 applications, and we're really,

22   I guess, talking about them really now, we understood the

23   aim of those applications to be to seek information about

24   the financial dealings of the debtor.  And I'm quoting from

25   their papers, "Post-petition winding down of BF and the

1   debtor's actions in allegedly causing it to transfer assets

2   to BLF in which Pravati maintains a lien."  And we agree

3   with that.  We think that those are very appropriate areas

4   of investigation for Pravati using 2004.

5            We believe that those areas can be investigated by

6   virtue of getting the bank statements from BF in the time

7   periods, in -- of the six-year time period going to the date

8   of abandonment.  And then because we think that when you

9   look at the bank statements, you will see the money comes

10  in.  You will presumably see where it came from, and you

11  will see where it went.  If they have questions about --

12  further questions, then they can ask that at the deposition

13  or seek supplemental discovery, number one.

14            I mean, we -- and we do stand firm that we do not

15  believe that they're entitled to any information regarding

16  BLF other than its organizational documents, which I believe

17  we already submitted.  And the -- Your Honor ruled on

18  November 26th, really the scope of the discovery as to BF

19  and BLF, which we listened to, did not agree to, but

20  listened, understood, and were then preparing to respond

21  when the actual discovery was issued to us, which we did and

22  attempted to do in a conversation with counsel, and we

23  really didn't get very far.

24            And some of that had to do with the way the

25  discovery was phrased.  The term "documents" is used very

1    broadly, our deep, deep concern about attorney-client

2    privilege.  And remember, this is not Mr. Balestriere's

3    privilege.  These are current and former clients'

4    privileges.  These are third parties whose -- they have the

5    privilege.  They can waive the privilege.  You know, that's

6    first and foremost.

7            I'd also like to respond, the case that Mr. Zaroff

8    relies on, Robinson, that involved a decision on discharge,

9    727.  That is not where we are here today.  And many of the

10   decisions that they cite involve 523 or 727 matters.  We're

11   not there yet.

12           I would also like to say that, you know, Pravati

13   and its counsel assume there's been transfers.  I mean, it

14   just -- you know, in their examination -- in their

15   applications, they say alleged transfers, and then we move

16   on to the fact that they're war transfers.  And I heard Mr.

17   Zaroff just say that all assets were moved from one law firm

18   to the other law firm.  I don't understand where he gets

19   that.  That is not true.

20           And another thing, the cases were transferred.

21   The cases went from the old law firm to the new firm only

22   after the client agreed to seek Mr. Balestriere's

23   representation at his new firm.  Those cases weren't

24   transferred in terms of an asset of the firm transfer to the

25   new firm.  That's not what happened here.  And Pravati's

1    collateral is not those cases.  It is the services that

2    generate the fees upon which their lien attaches.

3            And we don't disagree that they have a lien.  We

4    don't disagree their owed money.  We don't disagree they're

5    secured.  We don't disagree that there was an arbitration

6    award.  That has yet to be confirmed on March 7, 2024.  And

7    we believe that they -- that it is owed discovery, but it

8    need -- but it's -- but the law firm's current and former

9    clients need to be protected.  And the harassment and the

10   name-calling and the back-and-forth have to stop.

11           You know, and we have given them discovery.  We're

12   prepared to give more discovery.  I could go on and on, but

13   I don't want to belabor the point.  I think Your Honor is

14   correct.  Let's start with the money.  Let's -- we actually

15   also shared a list of pending cases with Pravati's counsel.

16   The cases that remained with the old law firm, BF, which had

17   status information on it.  Admittedly, that was in part

18   because we had hoped that we would begin to discuss a

19   settlement, which we have tried repeatedly to do so since

20   April of '24 to no avail, with no response.

21           And again, we tried it in the proceeding pending

22   in Arizona.  And I would point out to Your Honor that

23   notwithstanding Pravati's counsel's language about, you

24   know, settlement is sacrosanct and we breached, we have not.

25   There are limits to 408, okay?  And basically, we offered

1    that information about the settlement, not to show liability

2    or the amount of the claim, but we showed it to counteract

3    Pravati's harangue about undue delay on the part of the

4    debtors on the debtor.  We're not offering it for anything

5    other than that and to offer some context.   Mr.

6    Balestriere, would you like to supplement my presentation?

7            MR. BALESTRIERE:  Sure thing.  If I may, Your

8    Honor.

9            THE COURT:  Yes, you may.

10          MR. BALESTRIERE:  Thank you, and thank you, Ms.

11    Grubin.  Obviously, I'm here because I represent Balestriere

12    Law Firm, so that's the reason I suppose I'm speaking, Your

13    Honor.  Though, of course, I can answer any questions that

14    the Court has as debtor.

15          Something Mr. Zaroff said is wrong and seems to

16    inform their entire perspective, which is he said that there

17    have been funds, fees, and settlements which have been

18    transferred.  As I believe I even indicated in the

19    declaration, so it's under oath, which I filed with this

20    court in the fall, as I said before the Arizona court, when

21    there was a failed receiver application motion filed by

22    Pravati where BF, through the counsel in Arizona called me

23    to testify, all evidence showed there have been no funds, no

24    fees, no settlements which have been transferred.

25          And I think Ms. Grubin put it very well.  There

1    have been cases, hourly fee, not contingency fee, hourly-fee

2    cases where the old firm represented a given client.

3    Without waiving privilege, I can say when the firm went into

4    dissolution and after discussion with ethics counsel and

5    insolvency counsel, this has all happened for the last year

6    with constant discussions with insolvency counsel and with

7    ethics counsel, I shared with those clients the old firm is

8    going into dissolution.  You can hire any lawyer of your

9    choosing.  We will assist you in that transition.

10           I am opening up a new firm right here and you may

11   hire us here if you wish.  You don't need to.  That would

12   require a new engagement agreement.  Any accounts receivable

13   you owe the old firm, you still owe the old firm.  And so

14   good fortune went my way and I -- you know, you called it

15   odd to start a new firm a few days later.  Just to be very

16   direct, Your Honor, I was starting from financial zero.

17           I have a family.  I did speak to my kids' schools

18   about not paying them for a while, spoke to the landlord

19   about not paying the landlord for a little bit, but needed

20   to make money.  And thankfully, some hourly fee clients did

21   come over.  But as Ms. Grubin said, it was their cases they

22   chose to transfer.  No fees, no funds, no settlements.  In

23   fact, the new firm is not handling any matters on a

24   contingency-fee basis at all, meaning not only those which

25   Pravati had functionally funded at the old firm, but

1    nothing, nothing new that has -- that the new firm is

2    handling is on a contingency-fee basis.

3              So all accounts receivable from Balestriere

4    Fariello, they still belong to that.  Any contingency fee

5    interest still belongs to that.  And in Arizona, we even

6    said to Pravati, this is frankly exhausting for me, to be

7    very direct, to handle this dissolution.  They had proposed

8    the name of a receiver in New York, Fred Stevens, who Ms.

9    Rubin knows.  Sounds great.  Let's bring in this financial

10   receiver as long as we can agree the financial receiver does

11   not get attorney-client information.

12             They rejected that offer.  Frankly, the offer is

13   -- and it's not an offer to settle the case, is still there

14   because I am trying to make money to pay my staff and

15   family, take care of these clients, but we have put in many

16   hundreds of hours in the dissolution because, just to be

17   very direct, it's something I started 20 years ago, wanted

18   to unwind the right way, wanted to make sure that the

19   clients were taking care of the right way.  And as I sit

20   here, Your Honor, I think there's maybe one motion to

21   withdraw pending in one action.  And then in -- no, two,

22   excuse me, both of which I anticipate would be granted.

23             Outside of that, the old firm would have no

24   clients, except itself, for example, in the Arizona case.

25   Or actually, I suppose, former Balestriere Fariello clients,

1    that Ms. Schnurr and Mr. Rubin, you know, are suing in that

2    Supreme Court case, though, if needed, the new firm will

3    represent them if that case ends up going anywhere.  So I

4    just want to reiterate, I agree with Ms. Grubin said, the

5    clients chose to transfer their cases.  No fees, no funds,

6    no settlements have been transferred to the law firm.  I

7    believe this is in our papers, Your Honor, but we one time

8    noted what I think the only "transfers" were.

9            The new law firm bought some old furniture.  So

10   there's a payment from the new law firm to the old firm.  We

11   will be moving out of the suite, but in the meantime, the

12   new firm is paying the sublet, in essence, paying directly

13   to the landlord.  There were a couple of retainers that

14   belong to clients.  I think about 10,000 total.  They were

15   transferred from the old firm to the new firm.  And then one

16   client, and that client's matter is now over, made a mistake

17   and paid Balestriere Fariello in the late fall when it had

18   been paid up with Balestriere Fariello, the old firm, but it

19   was for services provided by the new firm.

20           And so running it by Ms. Grubin, we documented

21   that and there was that transfer.  Forgive me if I said too

22   much, but I just thought important for the Court to know

23   those facts and to assert whether you want to say on behalf

24   of the new law firm or as debtor, there have been no funds

25   or fees or settlements which have been transferred from the

1   old firm to the new firm.

2           MS. GRUBIN:  And I would just add that we have

3   kept meticulous records with respect to the services that

4   were provided to clients by the old firm up until the old

5   firm went into its pre-dissolution mode and prior to the

6   date of the transfer of those cases at the client's request

7   to the new firm.

8           THE COURT:  Ms. Grubin, thank you.  Thank you, Mr.

9   Balestriere.  Okay.

10          MR. BALESTRIERE:  Thank you, Your Honor.

11          THE COURT:  All right.  So --

12          MR. ZAROFF:  Your Honor, may I briefly respond to

13  just to a couple of points?

14          THE COURT:  You may, yeah.  You may.

15          MR. ZAROFF:  Thank you.  One, just to point out

16  the obvious, we have no information or documents relating to

17  anything of what was just discussed --

18          THE COURT:  I understand.

19          MR. ZAROFF:  -- by Mr. Balestriere or Ms. Grubin.

20  Secondly, that there wasn't X number of dollars transferred

21  from BF to BLF where there was some furniture transferred.

22  We're talking about the transfer of cases that Pravati had

23  funded while Mr. Balestriere was at BF, that were

24  transferred to the new law firm.  And if there is

25  settlement, or if there are fees --

1           MS. GRUBIN:  The debtor did not transfer them to

2    the law firm.

3           MR. ZAROFF:  -- that would --

4           MS. GRUBIN:  Sorry.  The debtor did not transfer

5    --

6           MR. ZAROFF:  -- come to Mr. Balestriere by way of

7    those cases, that's something we would like to know.  To us,

8    it seems on its face, the purpose of BLF was to avoid the

9    judgment debts and to prevent Pravati from collecting on

10   that judgment as judgment creditor.  Thank you, Your Honor.

11   That's all.

12          THE COURT:  And I understand that argument, but I

13   mean, that still to me goes to very limited information.

14   Sorry, Mr. Zaroff, because I just am having a hard time

15   seeing what is required.  Okay, so let's talk about what I

16   think is necessary.  I think all bank records that exist to

17   either firm, there does have to be some kind of bank

18   statements provided for them.  And I'm not cutting off the

19   old firm, Ms. Grubin, at the abandonment date.

20          It's true, it's not part of the estate, but it

21   still doesn't mean that things couldn't have been

22   transferred out of the old firm into the new firm and --

23   without records or to Mr. Balestriere.  Although I doubt

24   that.  I don't mean that, Mr. Balestriere, to think there's

25   any --

1           MR. BALESTRIERE:  I understand, Your Honor.

2           THE COURT:  Yeah, I don't mean that.  I just mean

3     that I think the information is appropriate.  So I think --

4           MR. BALESTRIERE:  I understand, Your Honor.

5           THE COURT:  -- the bank statements are going to

6     have to be provided going back six years from the date of

7     the petition for the old firm and going forward, you know,

8     with the new firm from the date it was created until, I

9     don't know, until now.  We'll just pick a date, January.

10    You're not going to have bank statements for February at

11    this point.  So we'll go with January.

12          Then it seems to me that it's reasonable for the

13    question of what cases were transferred over for there to be

14    some kind of basic information given.  Again, I think the

15    name of the case, if it's a public filing, that shouldn't be

16    a problem.  The fact as to when it was transferred from the

17    old firm to the new firm, and that that certainly should be

18    provided.  If cases that haven't been filed were

19    transferred, I do think that information is still gonna have

20    to be provided, at least just the fact that the client moved

21    over and the retainer moved over or whatever it is.

22          Not again the terms of the engagement letter, not

23    again what you're representing them for, but just the fact

24    that these matters were transferred from one firm.  I

25    acknowledge that no one would -- and I don't suggest that

1    you did do this in any other way, Mr. Balestriere or Ms.

2    Grubin, other than the client signing off, because otherwise

3    it wouldn't be happening.  So I understand that.  But

4    nevertheless, I think that needs to be provided.  So that at

5    least Mr. Zaroff knows that these specific cases, cases that

6    he thinks, you know, there were issues that they had

7    interest in, whether they got transferred or they didn't get

8    transferred, and then what got transferred.

9              I also think there has to be provided, which

10   should be in the bank statements but I just note, any

11   information about any transfers that were made to Mr.

12   Balestriere or family members, either pre-petition from the

13   old firm or post-petition from the new firm, I guess, or

14   even post-petition from the old firm, but I think that would

15   be -- I mean, from the -- but I think that's unlikely.

16             Again, to Mr. Balestriere, I think obviously there

17   has to be information about any transfers that went from Mr.

18   Balestriere to the -- and you know, from the old firm to Mr.

19   Balestriere or BF, the new firm to Mr. Balestriere, but

20   we've talked about that.  That seems like what should be in

21   the bank statements, but those should be provided if there

22   were transfers.

23             I'm not sure what else right now beyond that would

24   be needed because it seems to me that if something comes up

25   from those where you see transfers that were made of cases,

1    you now have the information, Mr. Zaroff.  And if you need

2    some more discovery after that, you'll have to explain to me

3    why as opposed to going somewhere else as we discussed.  If

4    there was stuff transferred to Mr. Balestriere or family

5    members, then, yeah, you may require some other information

6    about what happened to it afterwards, I would think, if

7    there is any such thing.

8             I'm guessing Mr. Balestriere just got normal

9    distributions that had to do with like anybody would if it

10   was their law firm, but you know, you may have questions

11   about that once you see the information.  And I'm not saying

12   that I wouldn't allow further questions, but I think you've

13   already gotten discovery from Mr. Balestriere as to where --

14   his bank statement.  So if it went to Mr. Balestriere, it

15   should -- you should have the ongoing information about what

16   happened to it in the six years of going backwards, or

17   anything else you require, you know, in terms of that.

18            And then if it turns out that it's -- that it went

19   to the new law firm, for example, and there was transfers

20   there that didn't involve Mr. Balestriere himself, but just

21   direct transfers, then you may need to inquire some more

22   about it.  Like if you see transfers, maybe we'll have to

23   have somebody explaining to us what was a retainer, what

24   wasn't a retainer, but you have to have the information. So

25   I think -- you know, I think that's fair.

1          So I also think the only other thing I would ask

2    just to avoid having to go through this twice is if clients

3    were transferred and they're on your list, I think you just

4    need to indicate if a retainer was transferred to, and if

5    so, how much just so that Mr. Zaroff can track things.

6    Because that would make sense if it's happened.

7          Again, there's nothing inappropriate about that.

8    You know, that's appropriate.  But at least you'd understand

9    why money moved from one firm to the next and that it

10   related to this particular case and it doesn't look

11   suspicious then because you know why.  If there's some other

12   reason money moved, then you'll, I'm sure, will have to look

13   into that.  But it -- you know, if it moved to Mr.

14   Balestriere, you're getting -- you've already gotten it or

15   you should be getting the discovery.  So that's my point.

16         And if it looks to you like it moved to again Mr.

17   Balestriere, I'm really making something up here, but if it

18   moved to your mother-in-law, then, I mean, you'll have to

19   ask for more discovery about why it went to his mother-in-

20   law.  Just being hypothetical again.  Not saying that ever

21   happened, but just saying.

22         MR. ZAROFF:  Understood, Your Honor.

23         THE COURT:  Okay.  And I don't see why there's any

24   need for all the other specific discovery about these

25   particular assets because, again, if they've moved to the

1    new firm, you have all your rights.  Sorry to put it that

2    way.  Both inside this court, if there's an argument about

3    either piercing the corporate veil, like something else,

4    like, you know, some sort of fraudulent transfer action that

5    belongs here, fine.  But you also have all your rights

6    outside of here, whether they're contractual or fraudulent

7    transfer arguments, or anything else that exists with the

8    other party, nothing is stopping you.  There is no stay.  So

9    right now you could -- you know, other than Mr. Balestriere,

10   there's obviously a lot of people, you could -- you know, a

11   lot of entities you could technically be looking for

12   information if you find something about it.

13           But I'm just saying, if it actually relates to

14   something Mr. Balestriere did, you know, you're going to

15   figure it out if it benefited him or his family from the

16   information that we're talking about that you're gonna get.

17   And if it's something that went to Mr. Balestriere directly,

18   then you're gonna have the follow-on information because you

19   have all the follow-on information.  And you can ask him

20   about all the transfers he ever made because I required you

21   to get that information for six years.

22           And so you should pick it all up if it's something

23   that happened through him.  If it didn't happen through him,

24   Mr. Zaroff, I'm not going to be able to give you all the

25   information in the world on that.  There's other ways of

1   getting that because it's -- again, those entities aren't in

2   bankruptcy proceedings.  So I'm just saying.  So that's all

3   I'm going to order here.

4           MR. ZAROFF:  I understand, Your Honor.  If I may

5   just couple of small points, you had touched on it earlier

6   in the hearing about corporate documents and about the

7   ownership of the law firms.

8           THE COURT:  Yeah, I think I already ordered --

9           MR. ZAROFF:  All we received were the --

10          THE COURT:  -- that in my prior -- in your prior

11  order.

12          MR. ZAROFF:  All we received to date are articles

13  of corporation filed with the Department of State.  You're

14  right.

15          MS. GRUBIN:  That's all there is, Your Honor.  I

16  mean, these were both very small, closely held law firms,

17  which I was --

18          THE COURT:  Well, all right, but the answer is

19  that you have to disclose what you hold now, what you held

20  --

21          MR. ZAROFF:  Right.

22          THE COURT:  -- for the six years before the

23  filing, and you need to disclose what's being held in the

24  new firm in terms of you or anybody else that holds an

25  interest in it.  That's not unreasonable on their part.

1            MR. ZAROFF:  Agreed.  But I'm saying in terms of

2      documents, there really are only the articles --

3            THE COURT:  Oh, yeah.  There may be no documents,

4      but you need to explain if there's anybody else.  That's not

5      a reasonable thing.  There are discovery answers.  You know,

6      you could -- you can also provide them with the fact that

7      you confirm, you know, when you have your deposition, that

8      --

9            MR. ZAROFF:  Exactly.

10            THE COURT:  -- you own 100 percent of it.

11            MR. ZAROFF:  Right.

12            THE COURT:  (Indiscernible) answer.

13            MR. ZAROFF:  And one last one last issue, Your

14      Honor, I promise.  Your Honor has narrowed the issues, and

15      we understand what those are.  But to the extent that there

16      are any responsive documents that are with being withheld

17      under the assertion of privilege, we think we are entitled

18      to a privilege log.

19            THE COURT:  I think that's reasonable.  If you're

20      withholding something under privilege, I don't think I've

21      asked for anything or --

22            MR. ZAROFF:  Right.

23            THE COURT:  -- have required you to produce much

24      that's that privileged.  Let's put it that way.  I mean,

25      your bank accounts of these corporations, I don't think

1    those are privileged.  And I also don't think the -- what

2    I've asked you to provide about the situation in with your

3    firms and, you know, what's been transferred over, some of

4    it's a matter of public record anyway at this point.  And

5    the rest of it, I haven't asked you to provide any details

6    about the representation, just very basic things.  Because

7    I'm not gonna go into issues about why the person was

8    retained for what purpose, what the nature of the matter is.

9    I'm not going into that either.

10            Because that -- it does get into attorney-client

11   privilege, particularly for things that maybe haven't even

12   been brought yet.  And, you know, anybody who, like Mr.

13   Balestriere, who's a -- what, you know, seems to be an

14   active person involved in various types of litigation as a

15   lawyer, you know, on behalf of his clients, does, you know,

16   certainly, like, you know, involve consultations with people

17   that doesn't necessarily ultimately result in a lawsuit, it

18   does happen.

19            So, you know, there are going to be some things

20   that aren't going to have been filed and I'm not going to

21   require information about it.  Obviously, anything that's

22   been filed with the court, you can look up the information

23   too about what it is, read the complaint.  Sorry, Mr.

24   Zaroff, but it's true.

25            MR. ZAROFF:  Yes, Judge.

1           THE COURT:  So, there's, you know, there's

2    limitations on what I'm going to do with that, that I, you

3    know, I'm giving you basic information, but none of that

4    should be privileged.  So I don't know what's privileged.

5    Maybe some -- I don't know if there's something about Mr.

6    Balestriere's personal documents, but I agree with Mr.

7    Zaroff that, to the extent you're claiming a privilege, you

8    do have to provide a privilege log.  That is not

9    unreasonable.  If you recall --

10           MR. ZAROFF:  I (indiscernible), Your Honor.

11           THE COURT:  -- (indiscernible) because it doesn't

12   exist, okay, it doesn't exist.  That's an answer.  It

13   doesn't exist.  And --

14           MR. ZAROFF:  I think we (indiscernible) --

15           THE COURT:  -- Mr. Balestriere makes some good

16   points, which don't surprise me by the way, about what

17   doesn't or doesn't exist with his personal documents.  You

18   know, not many people actually keep -- make financial

19   statements for themselves.  I had this issue come up in a

20   fraudulent transfer litigation that I had that was litigated

21   in front of me and where I had to try to figure out what

22   someone's financial condition was without a -- financial

23   statements.

24           With a corporation, it's a lot easier.  I got

25   financial statements, balance sheets, income statements with

1  a person.  It's actually very hard when there's no

2  information.  And so it's not -- but it's not uncommon for a

3  person not to have those things.  Mostly people just have

4  their bank accounts, brokerage accounts, or other things

5  that they have, all of which you're getting for personally.

6  But I'm just saying to you it's -- they don't have financial

7  statements.  So I don't -- it doesn't surprise me if some of

8  the answers to your discovery requests that I've approved

9  already just don't exist because they probably don't exist

10  because most people don't do that. Unless they're required

11  to buy a bank or something.

12          So, all right.  Well, anyway, I would suggest, Mr.

13  Zaroff, that you submit an order where I'm going to grant

14  your request, but the limited basis that I described.  And

15  I'd suggest you run it by Ms. Grubin before you file, you

16  send it to me to enter, but I will do that.  I also note

17  that this is without prejudice of you coming back and

18  seeking further discovery if you find a basis for it,

19  because I'm not precluding her from doing from doing that --

20          MR. ZAROFF:  I --

21          THE COURT:  -- if there's a basis.  But I'm just

22  saying to you I've explained my view on your basis but we'll

23  see.  If you find something that you feel that you have a

24  basis for under 2004, you'll have to come back.

25          MS. GRUBIN:  If I might ask if Mr. Zaroff could

1    also state with specificity the court's direction in the

2    proposed order.  And then we're crystal clear --

3              THE COURT:  Sure.

4              MS. GRUBIN:  -- as to --

5              THE COURT:  No problem.  And otherwise -- and if I

6    don't like what you state, I'll write it myself.  It's not

7    --

8              MR. ZAROFF:  We shall --

9              MS. GRUBIN:  Thank you, Your Honor.

10             MR. ZAROFF:  We shall await the transcript.

11             THE COURT:  It's not that hard.

12             MR. ZAROFF:  Very well.

13             THE COURT:  All right.

14             MR. ZAROFF:  And Your Honor --

15             THE COURT:  Now we should get --

16             MR. ZAROFF:  -- on the motion for --

17             THE COURT:  Yes, we're going to get --

18             MR. ZAROFF:  -- extension.

19             THE COURT:  -- into that.

20             MR. ZAROFF:  May I, before we get to that, Your

21   Honor, two quick things?

22             THE COURT:  Yes.

23             MR. ZAROFF:  With regards to the -- you ordered

24   the name of the case or client that's been transferred when

25   transferred in a retainer.  So could that simply be a list?

1  I mean, it would seem --

2            THE COURT:  Yes.

3            MR. ZAROFF:  -- that that would be the easiest.

4  Okay.

5            THE COURT:  Yes, it can be a list because as long

6  as -- and if it's a filed case, give him the index number or

7  whatever it is.

8            MR. ZAROFF:  Understood.  Right, right.

9            THE COURT:  And look it up.  I've told him --

10           MS. GRUBIN:  Would Your Honor --

11           THE COURT:  I've told him look it up.

12           MS. GRUBIN:  John, we can supplement what we've

13  already provided to them.

14           MR. BALESTRIERE:  Okay.  Great.  Yeah.

15           THE COURT:  Understood, but I'm just explaining to

16  him that's all I need.  I'm not asking you to provide any

17  other information, just that information, so that then Mr.

18  Zaroff can take a look at, you know, what he believes their

19  interests are.  And if he has an issue with it, then he'll

20  have an -- if it's a public litigation -- litigations that

21  have been filed before court.

22           He'll be able to take a look at it and understand

23  what's going on.  And if it's not that, he'll have to

24  explain, you know, why there's an interest in it because I

25  know it was litigation funding.  So generally, one wouldn't

1    have a lawsuit at some point.

2          MR. BALESTRIERE:  And if I may, one other point,

3    Your Honor, the -- may I ask that before any clients are

4    contacted that Pravati seeks leave of court?  Because the

5    background on this is that Pravati has sent over the last

6    year about a dozen or so what have been called lien letters,

7    at least in some other litigation, which certainly

8    frustrated some of my clients.  One of the former clients

9    wanted a sue Pravati over this.

10          I'm not saying they could or couldn't or whether

11    they won't knowing this particular client, but that is the

12    concern about clients getting -- I have shared with all the

13    clients.  Of course, there was an old law firm, it's been

14    dissolved.  There's a new law firm.  If they think that they

15    somehow need to contact the clients, I would ask that they

16    first seek permission from the Court.

17          THE COURT:  Okay.  If they're clients of your new

18    firm, I understand that.  If they're not clients of your new

19    firm, I don't understand that.

20          MR. BALESTRIERE:  Understood, Your Honor.

21          THE COURT:  Because you told me that it's --

22          MR. BALESTRIERE:  And actually, I think that's

23    what I'm --

24          THE COURT:  They told me that they're winding

25    down.  So if they decided not to go with you, just again,

1    hypothetically --

2              MR. BALESTRIERE:  No, no, no, I get it.

3              THE COURT:  -- or if they -- if they're clients,

4    they're still -- again, you said this doesn't exist, but I'm

5    being hypothetical here.  If there's still cases that are

6    still housed at the old firm, then that's fine.  But if

7    they're at the new firm, okay, fine.  I understand there

8    could be an issue about contacting them.  And I'll ask them

9    to come back to me before they do that, but it has to be at

10   the new firm, if that's the issue with the clients, but --

11   because the old firm, they can't be disrupting your business

12   with the old firm.

13             I don't see the issue.  It's not something that's

14   outside of the estate technically.  You know, I mean, the

15   old firm is, but I don't think that there's any issues about

16   that causing a problem with a client.  Same thing, I don't

17   think it would do so if, you know, if for some reason you

18   didn't -- you weren't the client, the person who the case

19   was transferred to.  If it went to another law firm and they

20   have a lien, that's not you.  So I think they -- it's not

21   your client anymore.  So I think that's, you know, right to

22   go ahead and to have the ability to contact any of those

23   parties.

24             MR. BALESTRIERE:  That -- and that's fine.  I

25   should have been more precise in my request, that it was

1    really the new firm clients.  The only reply --

2              THE COURT:  Well, the action's still pending.

3              MR. BALESTRIERE:  Right, right.  I mean, the old

4    firm clients, I've told them about Pravati.  I mean, I said

5    that Pravati might even contact them.  This goes back now

6    months ago in August when I was informing those clients, so

7    I think they're somewhat prepared to hear from Pravati.  But

8    the -- I should have been more precise.  What you said is

9    perfect.  Thank you, Your Honor.

10             MR. ZAROFF:  Your Honor, it could get into the

11   situation where if funds are received vis-a-vis a matter

12   that Pravati had funded and in which it has a lien and those

13   funds ought to be inter-pleaded because of multiple

14   claimants that exist over those funds, I think it could be

15   difficult to have to first seek leave of a court to -- as

16   Pravati is it (indiscernible) claimants --

17             MS. GRUBIN:  If I could speak to that, Mr. Zaroff?

18   To the extent there are any settlements, I have directed my

19   client to send me the settlement amounts and we would be

20   holding them in escrow pending an adjudication of the

21   party's respective interest in those funds.  Because, yes,

22   you're correct.

23             I mean, Pravati's lien would attach if it truly

24   was a case that was not a new case and was a settlement of a

25   case in which Pravati had a lien on those services.  Yes, we

1   would, and we -- you know, there may be some instances in

2   that regard, and we will be endeavoring to notify you and

3   work with you on that.

4            THE COURT:  Okay.  Ms. Grubin, may I ask a

5   question about that?  Maybe that actually needs to be

6   memorialized in an order.  I'm sorry to say that, but just

7   so that then Mr. Zaroff has a concern that there's a court

8   order and there's a reason that certain things have to

9   happen now, as long as that there's a, you know, a position

10  that Pravati has that they're entitled to it.  And if there

11  -- if there's a problem, then the money's still sitting with

12  you.  And obviously, if you don't think they're entitled to

13  it, you or Mr. Balestriere can come back to me and tell me

14  that.

15           But I think at least then the money would be

16  arguably required to be put there from a court perspective.

17  And I assume that would be something Mr. Zaroff would be

18  more comfortable with.  Myself -- not in any way saying you

19  won't do it, you're saying, because you would.  But just for

20  Mr. Balestriere, it wouldn't be either because I know he

21  would.  But I'm just saying to you just so there's actually

22  a requirement in place.  So maybe that --

23           MS. GRUBIN:  Well --

24           THE COURT:  -- is a good idea.

25           MS. GRUBIN:  I think it's a very good idea,

1   frankly, because to -- you know, and then any monies that

2   are dispersed would need your approval.

3          THE COURT:  Right.  That should make you more

4   comfortable, Mr. Zaroff.

5          MR. ZAROFF:  It does.  Thank you, Janice.  Thank

6   you, Your Honor.

7          THE COURT:  Okay.  All right, that seems like

8   another good solution.  All right.  So now why don't we talk

9   about the motion for an extension of time?  I guess I'm just

10  gonna say right off the bat I've obviously read the papers.

11  Look, I -- there's clearly more discovery that has to be had

12  here.  We just discussed that.  At least some.  And clearly

13  not all the discovery's been delivered yet.  I think

14  everybody acknowledged maybe most of it has, but on Mr.

15  Balestriere's side, but there's now additional discovery and

16  this has to be delivered.

17          And perhaps there's a few things that weren't

18  delivered or things weren't clear.  And then Mr. Balestriere

19  has to have his deposition taken.  So there has to be an

20  extension of time here.  I don't think there's an issue

21  about that.  The question is whether what's the right

22  extension of time.  How long?  And, you know, should this be

23  the last one?

24          And I -- you know, so I think those are the issues

25  that I have to grapple with here.  It's not that I'm not

1   going to grant you an extension, Mr. Zaroff, on behalf of

2   your client.  I am because clearly to me you have not

3   completed all the discovery that would be necessary for

4   somebody to decide they had a case or they didn't have a

5   case here for a 727, a 523 objection, or for that matter

6   something else.  So I get that you're not done.

7            So I guess my question for you, Mr. Zaroff, is

8   what timeframe do you think you need for an extension?  And

9   I guess, you know, why should I not cause that to be the

10  last extension given this case has been pending not for a

11  long time but for some time already?  And by then it would

12  be by the date you've asked for I think it would have been

13  pending.  Maybe nine months?  No more than six months.

14           MR. ZAROFF:  August 16th is when we filed.

15           THE COURT:  Yeah, okay.  Well, there.  So June is

16  the date -- I think is the date you gave me.  Something like

17  that.

18           MS. GRUBIN:  Yes, June 3rd.

19           THE COURT:  Yeah, June 3rd.  That's a lot of

20  months.  So I don't think it's unreasonable to put a

21  deadline if I gave you an extension that long.  So why don't

22  you explain to me why you need an extension that long under

23  the circumstances, why you think you do, and then why that

24  shouldn't be -- should or shouldn't be the last one.

25  Because it seems to me like it probably should.

1          MR. ZAROFF:  We've asked for the 90 days, Your

2     Honor, given the way things have proceeded thus far.  We've

3     -- as I mentioned at the outset of the hearing, we've been

4     met with what we believe to be delay and stonewalling.  We

5     mentioned that and Your Honor acknowledged earlier in the

6     hearing that we may very well have to come back to Your

7     Honor for more discovery, maybe even motions to compel based

8     on what's produced in response to not only our request, but

9     the orders of the court, and days go by quickly.

10          And so we thought and we gave it considerable

11     thought that the 90 days, while it is 90 days, would be the

12     most reasonable amount of time for us to obtain the

13     information, go through the information, take the

14     examination of Mr. Balestriere, and then put together a

15     complaint under the appropriate sections, 523 or 727 as the

16     case may be.

17          We don't think, Your Honor, that it should be the

18     last extension of time because, again, the way things have

19     been proceeding thus far.  We get a little bit here.  We get

20     a little bit there.  We have to go back.  We have meet-and-

21     confers.  We have to come to Your Honor.  The circumstances

22     may dictate that we have to come back to Your Honor for an

23     extension of time, recognizing that it wouldn't be another

24     90 days should we have to come back to Your Honor.

25          THE COURT:  Okay.  Ms. Grubin?

1    MS. GRUBIN:  Well, Your Honor, we acknowledge that

2    there -- that because there is more discovery and March 3rd,

3    which I think is the current date, or March 5th is right

4    around the corner, that it would be unreasonable for us to

5    insist that there be no further extensions.  But we would

6    ask for 60-day extension at the most, that it be a final

7    extension, and that there be a date given for Mr.

8    Balestriere's deposition.

9    MR. ZAROFF:  Well, the date for deposition would

10   be difficult because we don't know what we're going to

11   receive and we don't know what the preparation time might

12   be.

13   MR. BALESTRIERE:  And we can produce the documents

14   you ordered, Your Honor, easily within a week as soon as the

15   order is in.  I mean, it's not a lot, it's easy to obtain.

16   So there's not going to be, as I believe the record shows,

17   there has not been, any slowing down on our part.  I know

18   Ms. Grubin originally proposed for me to be deposed six

19   weeks ago, then five weeks ago, then four weeks ago.  These

20   bank records, which will not have anything extraordinary in

21   them, and there are not that many pages overall, can be

22   produced in a week, and I think the Court knows this.

23   The years and years of bank records, Pravati has

24   had four years.  Meaning, I think we're talking about, let's

25   call it a year maybe, more like 10 months of bank records

1    for Balestriere Fariello.  And then for the new firm, it's

2    five months, I guess, of bank records.  So it's not even

3    that much in terms of volume, but we'll turn it all over.

4    And I hope this is okay with Ms. Grubin, but we'll turn it

5    all over within a week.

6            THE COURT:  Okay, I understand.  All right.  Mr.

7    Zaroff, I'm going to go ahead and grant your extension to

8    June, to the June date you requested, but I am going to make

9    it the final one.  So you're going to have to come back and

10   seek more discovery or seek to compel things if you're not

11   on your timeframe.  And if everything's going great, you

12   should -- maybe you'll have an extra 30 days for your

13   complaint at the end.

14           And if you're not, you're going to have to hustle

15   up something if that's what you need to do to file

16   something.  I don't think it's unreasonable because, you

17   know, the issue about Mr. Balestriere is he's trying to get

18   a discharge.  And he doesn't know whether he's going to be

19   able to or not be able to get a discharge unless and until

20   dates come and go and people either file complaints or they

21   don't file complaints.

22           And in fairness, he already knows, you know, what

23   the Schnurrs are doing because they filed -- at least

24   partially, because they filed a complaint.  Whether he --

25   you know, whatever you think of it, they definitely filed a

1    complaint.  So he knows what the story is and whether or

2    not, you know, he doesn't -- you know, he doesn't know what

3    you're going to be doing, what your client's going to be

4    doing.  So in fairness, that's not unreasonable for him to

5    have some more clarity here about at least where this is

6    going.

7              And one other thing I wanted to ask you about, Mr.

8    Zaroff, you know, Ms. Grubin mentioned and Mr. Balestriere

9    too, the fact that they obviously had tried to have some

10   settlement discussions, maybe not in the context of here,

11   but here and before, and of litigation, etcetera.  But you

12   know, is it helpful?  Would your client consider going to

13   mediation?

14             Because my own experience is sometimes that's very

15   helpful.  It does resolve things.  You sometimes need

16   another party.  Your colleague Ms. Berkoff is one of the

17   better mediators in our -- certainly that I've ever seen in

18   my cases.  And so I don't think she's going to disagree with

19   my point that mediation can be helpful sometimes.

20   Obviously, it wouldn't be here -- her here, but you know, I

21   wonder if it would be helpful for the parties.

22             I just -- it's a question I have about it.  Just

23   because it does seem like you're going to get this

24   discovery, which is fine.  You should.  I don't have any

25   problem with that.  But I think, you know, the parties have

1   a dispute.  And you know, realistically, you know, there's

2   limitations to what can happen here.  Even if you have a

3   great case for non-dischargeability on your own debt, you're

4   still only going to collect whatever Mr. Balestriere's going

5   to have to -- that would be collectable over some period of

6   time on account of your debt.

7           And obviously you're only gonna get what you get

8   from the law firms or from settlements, etcetera, what comes

9   in.  I mean, that's just where we are.  It's just a reality

10  of money.  And then, you know, if you're not right and your

11  discharge isn't allowed, you know, your objection and

12  discharge isn't allowed and he gets a discharge, then you're

13  just going to get whatever you get in connection with your

14  lien and settlements, etcetera, because that's not going to

15  go away.

16          But everything else, you know, you'll just have

17  what you have.  So there are limitations on what you're

18  going to be able to collect.  You know, unless you find a

19  pot of gold here, you might -- you know, which I don't know

20  that it exists, you know, there is some limitation on what

21  you're going be able to collect from the law firms and for

22  settlements and Mr. Balestriere himself.  So it's just,

23  there is some reality to it.

24          So I -- again, I'm not asking you to tell me the

25  answer today.  I'm suggesting to you consider what I said.

1    If the parties decide that they want to have a mediation,

2    let me know because I'd be happy to do it.  I don't order

3    people generally to it unless they're open to it because I

4    have my own experiences that's usually not very helpful.

5    But if people are open to it, it does sometimes resolve

6    things, especially where people have been litigating for

7    years and there's a lot of personal feelings and other

8    things that don't -- you know, that -- you know, because

9    this has been an ongoing dispute for numerous years,

10   sometimes you need a third party.

11          So, I just -- and it -- and sometimes that third

12   party shouldn't just be me ruling on things.  Again, no

13   disrespect to me.  But that's just true.  And we happen to

14   -- as Ms. Berkoff will tell you, we happen to have a

15   fabulous mediation panelist in our district.  And there are

16   a lot of good choices out there.  And then there's always

17   other people like that aren't on that panel that are also

18   excellent mediators out in the world.

19          So just something to think about if it would be

20   helpful here.  Because it does seem to me that, again, no

21   disrespect to Mr. Balestriere, because he does have other --

22   you know, other creditors, etcetera, but obviously a big

23   part of this case, it would -- you know, for example, the

24   Schurrs and stuff, but a big part of this case is certainly

25   the dispute with your client.

1                    MS. GRUBIN:  Your Honor, I would say that we would

2      welcome mediation.

3                    THE COURT:  I understand.

4                    MS. BERKOFF:  And thank you, Your Honor.  I just

5      thought it was my cue to chime in based upon that entrée.

6      It's certainly something that I will discuss with our

7      client.  We'll consider and we'll share with Ms. Grubin and

8      her partner as well and Mr. Balestriere, any views on that

9      and whether we think that would be productive.  So I

10     appreciate the Court pointing it out.  And certainly not

11     something I'm, as you noted, unfamiliar with.

12                    THE COURT:  No, I understand that.  But I think --

13     you know, I think sometimes it does help just because you're

14     not going to get to a settlement otherwise because there's

15     just too much emotion, sorry, and you need a new third party

16     coming to it that's looking at it from perhaps a little bit

17     of a more realistic perspective on outcomes.

18                    And again, that's not meant disrespectfully to

19     either party, but, you know, clearly there's already been an

20     acknowledgement, you know, that there are liens on certain

21     things, that there are obviously possibilities in the future

22     there could be settlements on those matters there.  And then

23     there's just Mr. Balestriere's situation, and I think you're

24     definitely going to get a chance to investigate Mr.

25     Balestriere's situation.  But again, unless there's

1   something unusual that hasn't come to light so far in this

2   case, you know, you -- this is not going to be -- even if

3   you're able to -- even if you were able to get a denial of

4   discharge, either of the, I mean, of the debt or entirely

5   for Mr. Balestriere, which I'm not saying would happen, you

6   happen, there are limitations on that outcome as well.

7           It doesn't necessarily mean that ultimately your

8   client's going to be repaid all the money that they believe

9   they're owed.  So sometimes reality has to set in.  You

10  know, I just note that is a situation here, particularly the

11  way that the lien attaches with services.  That also makes

12  that a little more difficult.  So I think there's a basis

13  for wanting to have -- perhaps considering that.  But again,

14  as I said, I won't order people to mediation if they don't

15  -- generally, if they don't want to do it, because I don't

16  find it's that helpful.

17          I definitely encourage people, because my own

18  experiences I've had, you know, a lot of very fine people

19  who sit on our panel or don't sit on our panel even come in

20  as mediators and do great jobs in my cases.  And so I -- in

21  getting to very complicated resolution sometimes where

22  litigation has been going on for quite a while.  So just

23  note that.  All right.

24          So, Mr. Zaroff, you just need to submit an order

25  to me on your motion for the extension of time.  And you

1   just need to add -- note in it that I -- that the Court's

2   ruled that this is the last extension just so it's in it,

3   and that's all I need in the order in terms of that.

4                And then with respect to -- as we've discussed,

5   the other -- the 2004 exams, that you'll have to obviously

6   redraft your order and send it by Ms. Grubin first and Mr.

7   Balestriere.

8                MS. BERKOFF:  Thank you, Your Honor.  We'll do

9   that.

10               THE COURT:  All right.

11               MS. BERKOFF:  Good afternoon.

12               THE COURT:  Is there anything else --

13               MR. ZAROFF:  Very good, Your Honor.  Thank you.

14               THE COURT:  -- that you all wanted to discuss

15  today?

16               MS. GRUBIN:  Your Honor, I just wanted to give the

17  Court a head's up that we may be seeking a telephonic

18  conference with Your Honor on some issues that have arisen

19  in connection with the Schnorr adversary proceeding.

20               THE COURT:  Okay, that's fine.

21               MS. GRUBIN:  And we'll be set -- we're probably

22  going to be sending a joint email to chambers in that regard

23  shortly.

24               THE COURT:  Okay, no problem.  That's fine.  I'm

25  here.

1          MS. GRUBIN:  Great.  Thank you.

2          THE COURT:  That's what I do.  It certainly can't

3    be worse than my having to get -- you know, try to schedule

4    a discovery dispute the morning before a deposition when I'm

5    at an airport.  That's happened.  So it does -- these things

6    happen.  You do what you have to do wherever you are.  So --

7          MS. GRUBIN:  Right.

8          THE COURT:  -- no problem.  I'm here.

9          MS. GRUBIN:  Great.  Thank you.

10          THE COURT:  Okay.  All right.  Well, if there's

11    nothing else today, thank you all for appearing, and I wish

12    you a good rest of the day and afternoon, and court is now

13    adjourned.

14          MS. GRUBIN:  Thank you, Judge.

15          MR. ZAROFF:  Thank you, Your Honor.  Bye, bye.

16          THE COURT:  Bye.

17          (Whereupon these proceedings were concluded)

18

19

20

21

22

23

24

25

1                    **I N D E X**

2

3                    RULINGS

4                                        **Page      Line**

5    Discovery                          39        5

6    Privilege Log                      45        19

7    Extension of Time                  59        6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 21, 2025

| & | | |
|---|---|---|
| **&**   4:1,8,15 | | |

**0**

**06511**   3:21

**1**

**10**   58:25
**10,000**   36:14
**100**   45:10
**10004**   1:14
**10007**   3:7
**10018**   4:18
**11501**   68:23
**11530**   3:14 4:4
**11729**   4:11
**12151**   68:6
**1270**   3:13
**1407**   4:17
**16th**   56:14
**1787**   5:1
**19**   1:16 67:6

**2**

**2**   23:4
**20**   22:21 35:17
**2004**   2:3,8 7:25
  9:16 10:12,18
  10:19 11:6
  12:15 14:19
  15:7,13,15
  20:6 29:21
  30:4 48:24
  65:5
**2004s**   8:6
**2024**   32:6
**2025**   1:16
  68:25

**21**   68:25
**210**   5:3
**225**   3:6
**24**   32:20
**24-11422**   1:3
  6:5
**26th**   30:18
**29th**   3:6
**2:02**   1:17

**3**

**30**   59:12
**300**   68:22
**330**   68:21
**39**   67:5
**39th**   4:17
**3rd**   56:18,19
  58:2

**4**

**400**   4:3
**4004**   2:11
**4007**   2:11
**408**   32:25
**41**   4:10
**45**   67:6

**5**

**5**   67:5
**523**   11:9 13:1
  14:21 22:22
  27:14 31:10
  56:5 57:15
**527**   22:23
**545**   3:20
**59**   67:7
**5th**   58:3

**6**

**6**   67:7
**60**   58:6

**7**

**7**   13:1 14:2,3
  14:21 32:6
**7154**   5:3
**727**   13:1 14:20
  23:4 27:14
  31:9,10 56:5
  57:15

**8**

**8**   22:19
**85251**   5:4

**9**

**90**   57:1,11,11
  57:24

**a**

**abandoned**
  14:2 27:22
**abandonment**
  14:4,6 16:25
  17:6 30:8
  38:19
**ability**   52:22
**able**   43:24
  50:22 59:19,19
  61:18,21 64:3
  64:3
**account**   18:20
  22:23 61:6
**accounts**   17:5
  17:6 34:12
  35:3 45:25
  48:4,4

**accurate**   68:4
**acknowledge**
  39:25 58:1
**acknowledged**
  55:14 57:5
**acknowledge...**
  63:20
**action**   11:17,18
  19:24 22:2
  27:12,13,19
  28:24,25 35:21
  43:4
**action's**   53:2
**actions**   11:14
  30:1
**active**   46:14
**acts**   12:21
**actual**   30:21
**actually**   7:2
  8:4 18:15
  32:14 35:25
  43:13 47:18
  48:1 51:22
  54:5,21
**add**   7:11 37:2
  65:1
**additional**
  21:24,25 55:15
**adjourned**
  66:13
**adjudication**
  53:20
**administration**
  12:23
**admittedly**
  32:17

**adversary** 65:19

**advice** 28:7,8 28:20

**affects** 12:22

**affirmed** 18:16

**afternoon** 6:8 7:20,21 8:18 65:11 66:12

**ago** 35:17 53:6 58:19,19,19

**agree** 8:5 20:19 30:2,19 35:10 36:4 47:6

**agreed** 17:7 31:22 45:1

**agreement** 34:12

**ahead** 6:3 52:22 59:7

**aim** 29:23

**airport** 66:5

**allege** 25:18

**alleged** 31:15

**allegedly** 30:1

**allow** 11:12 21:9 26:20,21 27:7 29:11 41:12

**allowed** 12:6 12:15 61:11,12

**allows** 15:13 26:20

**americas** 3:13

**amount** 18:19 21:15 25:15 33:2 57:12

**amounts** 53:19

**ann** 4:6

**answer** 8:12 15:9 33:13 44:18 45:12 47:12 61:25

**answers** 45:5 48:8

**anticipate** 35:22

**anybody** 41:9 44:24 45:4 46:12

**anymore** 52:21

**anyway** 15:8 18:17 19:6 46:4 48:12

**apologize** 9:7

**appearance** 7:8

**appearances** 6:5,6 7:22

**appearing** 66:11

**applicant** 16:7

**application** 2:1 2:5 33:21

**applications** 10:13 29:21,23 31:15

**applies** 14:21 27:21

**apply** 19:13

**appreciate** 63:10

**approach** 24:18

**appropriate** 27:10 30:3 39:3 42:8 57:15

**approval** 55:2

**approved** 20:23 24:9 48:8

**approving** 9:16

**april** 32:20

**arbitration** 15:17,20 18:12 19:5 32:5

**arbitrator** 18:23

**areas** 12:5 16:7 25:6 30:3,5

**arguably** 21:20 54:16

**argue** 28:23

**arguing** 20:10

**argument** 13:19 18:7 20:8,10 38:12 43:2

**arguments** 43:7

**arisen** 65:18

**arizona** 32:22 33:20,22 35:5 35:24

**articles** 44:12 45:2

**aside** 11:8

**asked** 12:20 23:21 45:21

46:2,5 56:12 57:1

**asking** 13:16 15:10 21:17 26:4 50:16 61:24

**assert** 36:23

**assertion** 45:17

**assertions** 10:2

**assess** 9:12

**asset** 31:24

**assets** 9:21 10:6,19 12:4 13:23 14:11 15:15 17:15,15 19:18 22:13,16 22:16 23:2 30:1 31:17 42:25

**assist** 34:9

**assume** 31:13 54:17

**attach** 53:23

**attaches** 32:2 64:11

**attempted** 30:22

**attempting** 8:19 9:10

**attorney** 3:4 5:2 27:5 28:7 31:1 35:11 46:10

**attorneys** 3:12 3:19 4:2,9,16 6:4

**august** 53:6
  56:14
**automatic** 26:7
**avail** 32:20
**avenue** 3:13
**avoid** 38:8 42:2
**await** 49:10
**award** 19:6
  32:6
**awarded** 18:11
  18:12
**az** 5:4

**b**

**b** 1:21 2:6,11
**back** 11:13
  14:4,11,12
  28:22 32:10
  39:6 48:17,24
  52:9 53:5
  54:13 57:6,20
  57:22,24 59:9
**background**
  51:5
**backwards**
  41:16
**balance** 47:25
**balestriere** 1:7
  2:2,6,6 3:3,4,4
  3:9,12,19 6:6
  6:10,10,11,13
  6:13 7:4 13:6
  17:12,18,18
  18:6 19:7,16
  19:17,19,19,25
  20:17,20,21,25
  21:1 22:3,14
  23:16,21 24:2

25:1,4,14
29:13,14 33:6
33:7,10,11
35:3,25 36:17
36:18 37:9,10
37:19,23 38:6
38:23,24 39:1
39:4 40:1,12
40:16,18,19,19
41:4,8,13,14
41:20 42:14,17
43:9,14,17
46:13 47:15
50:14 51:2,20
51:22 52:2,24
53:3 54:13,20
55:18 57:14
58:13 59:1,17
60:8 61:22
62:21 63:8
64:5 65:7
**balestriere's**
  20:23 31:2,22
  47:6 55:15
  58:8 61:4
  63:23,25
**bank** 17:5,6
  30:6,9 38:16
  38:17 39:5,10
  40:10,21 41:14
  45:25 48:4,11
  58:20,23,25
  59:2
**bankruptcy**
  1:1,12,23 2:3,7
  2:10 11:19
  12:18 20:18

27:20 28:25
29:1 44:2
**barclay** 3:11
  3:18 6:9
**bare** 28:21
**based** 57:7
  63:5
**basic** 39:14
  46:6 47:3
**basically** 32:25
**basis** 19:6,14
  21:20 22:1
  34:24 35:2
  48:14,18,21,22
  48:24 64:12
**bat** 12:1 55:10
**beckerman**
  1:22 6:2
**behalf** 7:16
  27:13,14 36:23
  46:15 56:1
**belabor** 32:13
**believe** 10:1,5
  18:14 23:20
  24:2 30:5,15
  30:16 32:7
  33:18 36:7
  57:4 58:16
  64:8
**believes** 50:18
**belong** 35:4
  36:14
**belongs** 35:5
  43:5
**benefited**
  43:15

**benjamin** 5:6
**berkoff** 4:6
  7:15,16,16,22
  8:3,15,16,23
  9:3,4,8 29:20
  60:16 62:14
  63:4 65:8,11
**beth** 3:16
**better** 60:17
**beyond** 12:6
  13:23 20:6
  25:8 40:23
**bf** 6:11,12 22:5
  22:5,6 29:25
  30:6,18 32:16
  33:22 37:21,23
  40:19
**big** 24:23 62:22
  62:24
**bit** 8:20 9:1
  10:21 14:15,18
  25:8 34:19
  57:19,20 63:16
**blanket** 9:23
  10:10
**blf** 6:13 9:24
  22:5,5,6 30:2
  30:16,19 37:21
  38:8
**bones** 28:21
**books** 23:15
**bottom** 24:1
**bought** 36:9
**bowling** 1:13
**breach** 21:24
**breached**
  32:24

brief 22:19
briefed 15:12
briefly 37:12
bring 11:19
  27:12 35:9
bringing 22:2
broad 11:25
  14:23,24 15:7
  15:13 17:24
  20:15 21:16
  26:15 28:1
broader 21:9
broadly 31:1
broadway 3:6
  4:17
brokerage 48:4
brought 11:18
  46:12
business 22:24
  52:11
buy 48:11
bye 66:15,15
  66:16

**c**

c 2:11 3:1 6:1
  68:1,1
call 6:3 58:25
called 33:22
  34:14 51:6
calling 32:10
capital 4:2,9
  4:16 5:2 7:17
care 35:15,19
carefully 29:21
case 1:3 6:3,5
  16:6,9 17:9,10
  17:10,15,20,21

19:7 22:9,17
22:18,22 24:19
28:18,20 31:7
35:13,24 36:2
36:3 39:15
42:10 49:24
50:6 52:18
53:24,24,25
56:4,5,10
57:16 61:3
62:23,24 64:2
cases 10:7
  15:25 16:14,19
  16:19 17:16
  18:3 20:3,7
  21:18,19,25
  25:16,18,20
  27:1,4 28:17
  31:20,21,23
  32:1,15,16
  34:1,2,21 36:5
  37:6,22 38:7
  39:13,18 40:5
  40:5,25 52:5
  60:18 64:20
categories
  14:22
cause 56:9
caused 9:20
causing 30:1
  52:16
certain 2:13
  15:20 21:15
  24:13 54:8
  63:20
certainly 13:4
  13:5,11 19:2,5

19:18 24:3
25:14 39:17
46:16 51:7
60:17 62:24
63:6,10 66:2
certified 68:3
chambers
  65:22
chance 63:24
chantel 7:3
chapter 14:2,3
chime 8:13
  63:5
choices 62:16
choosing 34:9
chose 34:22
  36:5
circumstances
  56:23 57:21
cite 31:10
cited 22:18
city 4:3,4
claim 12:11
  18:19 19:6
  20:13 21:24
  33:2
claimants
  53:14,16
claiming 47:7
claims 18:19
  18:21 19:1,9
  21:4
clarity 60:5
clear 16:6
  18:23 49:2
  55:18

clearly 15:14
  24:25 55:11,12
  56:2 63:19
client 27:5 28:7
  31:1,22 34:2
  35:11 36:16
  39:20 40:2
  46:10 49:24
  51:11 52:16,18
  52:21 53:19
  56:2 60:12
  62:25 63:7
client's 36:16
  37:6 60:3 64:8
clients 31:3
  32:9 34:7,20
  35:15,19,24,25
  36:5,14 37:4
  42:2 46:15
  51:3,8,8,12,13
  51:15,17,18
  52:3,10 53:1,4
  53:6
closely 44:16
code 7:3,6
  14:10 15:7
collateral
  21:20 32:1
colleague 7:12
  60:16
collect 61:4,18
  61:21
collectable
  61:5
collecting 38:9
come 12:14
  17:8,9 28:22

34:21 38:6
47:19 48:24
52:9 54:13
57:6,21,22,24
59:9,20 64:1
64:19
**comes** 17:8
30:9 40:24
61:8
**comfortable**
54:18 55:4
**coming** 48:17
63:16
**commence**
28:24,25
**common** 20:19
**communicati...**
28:6
**companies**
23:2
**compel** 24:20
57:7 59:10
**complaint** 2:12
20:11 46:23
57:15 59:13,24
60:1
**complaints**
59:20,21
**completed** 56:3
**completely**
11:15
**complex** 17:13
**complexity**
16:10
**complicated**
64:21

**components**
18:5
**concern** 15:9
25:12 31:1
51:12 54:7
**concerning**
10:14
**concluded**
66:17
**condition**
12:22 47:22
**conduct** 12:21
**conference**
65:18
**confers** 57:21
**confirm** 45:7
**confirmed** 32:6
**connection**
61:13 65:19
**consider** 60:12
61:25 63:7
**considerable**
57:10
**considering**
64:13
**constant** 34:6
**consultations**
46:16
**contact** 51:15
52:22 53:5
**contacted** 51:4
**contacting**
52:8
**contemplate**
14:13
**contemplates**
14:11

**contention**
15:12
**context** 33:5
60:10
**contingency**
17:10 34:1,24
35:2,4
**continue** 20:12
**contract** 18:22
18:23,25 20:9
21:24 22:1
26:17,20
**contractual**
26:10,10 43:6
**control** 23:2,5
**controlled**
16:15
**controls** 16:11
16:12
**conversation**
30:22
**corner** 58:4
**corporate** 43:3
44:6
**corporation**
16:15 44:13
47:24
**corporation's**
16:16
**corporations**
45:25
**correct** 23:23
32:14 53:22
**counsel** 6:6,10
6:12 17:17
25:18 30:22
31:13 32:15

33:22 34:4,5,6
34:7
**counsel's** 32:23
**counteract**
33:2
**country** 68:21
**couple** 36:13
37:13 44:5
**course** 13:12
18:21 29:18
33:13 51:13
**court** 1:1,12
6:2,2,15,18,22
6:24 7:1,4,9,14
7:19,21 8:15
8:21 9:2,6
10:16 18:7,14
21:13 22:20,25
23:7,9,12 24:4
24:8,15,16,21
25:25 26:3,25
27:3 28:1,3,9
28:13,15,17,25
29:1,6,8,11
33:9,14,20,20
36:2,22 37:8
37:11,14,18
38:12 39:2,5
42:23 43:2
44:8,10,18,22
45:3,10,12,19
45:23 46:22
47:1,11,15
48:21 49:3,5
49:11,13,15,17
49:19,22 50:2
50:5,9,11,15

50:21 51:4,16
51:17,21,24
52:3 53:2,15
54:4,7,16,24
55:3,7 56:15
56:19 57:9,25
58:22 59:6
63:3,10,12
65:10,12,14,17
65:20,24 66:2
66:8,10,12,16
**court's** 49:1
65:1
**courtroom**
6:19
**courts** 11:6
**cover** 8:10
**covered** 28:2
**crd** 6:15
**create** 28:14
**created** 14:9
16:3 39:8
**creating** 9:20
**creation** 22:15
**creditor** 38:10
**creditors** 11:18
62:22
**crystal** 49:2
**ct** 3:21
**cue** 63:5
**current** 27:6
31:3 32:8 58:3
**cutting** 38:18

**d**

**d** 2:6 6:1 67:1
**damon** 3:11,18
6:9

**date** 11:21
16:25 17:6
30:7 37:6
38:19 39:6,8,9
44:12 56:12,16
56:16 58:3,7,9
59:8 68:25
**dates** 17:7
59:20
**day** 58:6 66:12
**days** 16:3 17:1
20:18 34:15
57:1,9,11,11
57:24 59:12
**deadline** 56:21
**dealings** 29:24
**dealt** 26:13
**debt** 13:2 61:3
61:6 64:4
**debtor** 1:9 9:11
9:16,18 10:3
10:21 11:10,13
11:15,22 12:4
12:12 13:3,14
13:24 14:4,5
14:12 15:5,16
15:18 16:9,9
16:11,14,16,17
16:24 17:14
18:20 20:16
23:3 25:4
26:11 29:24
33:4,14 36:24
38:1,4
**debtor's** 2:12
10:20 12:4,5
12:21,23,23

21:4,4 25:5
30:1
**debtors** 10:19
12:21 22:23
33:4
**debts** 2:13 38:9
**decide** 56:4
62:1
**decided** 20:18
51:25
**decision** 31:8
**decisions** 31:10
**declaration**
33:19
**deep** 31:1,1
**deer** 4:11
**defer** 8:2 29:16
29:17
**definitely**
11:19 21:2
24:25 59:25
63:24 64:17
**degree** 18:12
**delay** 7:8 9:17
33:3 57:4
**delivered**
55:13,16,18
**demands** 8:10
**denial** 64:3
**department**
44:13
**deposed** 58:18
**deposition**
30:12 45:7
55:19 58:8,9
66:4

**deputy** 6:19
**described**
48:14
**describing**
25:21
**despite** 9:19
10:1,4 16:25
**details** 46:5
**determine**
21:10
**dictate** 57:22
**difficult** 28:10
53:15 58:10
64:12
**difficulties**
28:16
**direct** 22:18
34:16 35:7,17
41:21
**directed** 24:17
53:18
**directing** 2:1,5
**direction** 49:1
**directly** 36:12
43:17
**disagree** 32:3,4
32:4,5 60:18
**discharge** 2:12
9:13 11:7,8
12:24 13:14
15:15 21:5
31:8 59:18,19
61:11,12,12
64:4
**dischargeabi...**
2:13 9:14
10:25 11:16

12:14 13:2
15:8 27:13
61:3
**disclose** 44:19
44:23
**disclosure**
15:18
**discovery** 8:9
11:12 12:2,3,8
14:10,25 15:13
20:23 24:8
25:15 26:15,15
30:13,18,21,25
32:7,11,12
41:2,13 42:15
42:19,24 45:5
48:8,18 55:11
55:15 56:3
57:7 58:2
59:10 60:24
66:4 67:5
**discovery's**
55:13
**discuss** 29:11
32:18 63:6
65:14
**discussed**
37:17 41:3
55:12 65:4
**discussion** 34:4
**discussions**
34:6 60:10
**dispersed** 55:2
**dispute** 20:12
61:1 62:9,25
66:4

**disrespect** 27:8
62:13,21
**disrespectfully**
63:18
**disrupting**
52:11
**dissolution**
34:4,8 35:7,16
37:5
**dissolved**
51:14
**distributions**
41:9
**district** 1:2
62:15
**document** 9:19
9:21 10:5
**documented**
36:20
**documents** 2:2
2:7 9:11,19,23
9:23 10:4,11
16:12 17:25
23:6 25:2
30:16,25 37:16
44:6 45:2,3,16
47:6,17 58:13
**doing** 22:4
48:19,19 59:23
60:3,4
**dollars** 37:20
**doubt** 38:23
**dovetail** 8:8
**dozen** 51:6
**drafted** 28:5
**drive** 3:20 5:3

**due** 15:20,21
**duke** 4:10

### e

**e** 1:21,21 3:1,1
6:1,1 67:1 68:1
**earlier** 44:5
57:5
**earned** 17:9,10
18:6
**easier** 7:2
47:24
**easiest** 50:3
**easily** 58:14
**east** 5:3
**easy** 58:15
**echo** 9:1
**ecro** 1:25
**effect** 17:24
**effectively** 8:14
**efforts** 9:21
**either** 19:12,13
19:14,16 20:9
25:12,13 26:9
26:20 27:14,22
28:22 38:17
40:12 43:3
46:9 54:20
59:20 63:19
64:4
**email** 65:22
**emailed** 6:20
**emotion** 63:15
**encourage**
64:17
**endeavor** 29:7
**endeavoring**
54:2

**ends** 36:3
**engagement**
34:12 39:22
**enter** 10:15
48:16
**entire** 19:20
33:16
**entirely** 23:13
23:18 64:4
**entities** 19:14
23:1 43:11
44:1
**entitled** 14:25
16:7,22,25
17:4,19 21:16
24:7 26:18
30:15 45:17
54:10,12
**entity** 14:12
26:19 27:20
**entrée** 63:5
**escrow** 53:20
**especially**
15:13 21:7
27:11 62:6
**essence** 36:12
**estate** 11:21
12:23 14:5
21:4,5 25:5
27:22,24 38:20
52:14
**esteem** 27:14
**etcetera** 60:11
61:8,14 62:22
**ethics** 34:4,7
**everybody**
55:14

**everything's** 59:11

**evidence** 33:23

**exactly** 18:9 45:9

**exaggerated** 10:2

**exam** 10:18

**examination** 2:3,7 10:4 15:19 16:8 31:14 57:14

**examine** 16:7 17:12

**example** 12:10 35:24 41:19 62:23

**exams** 65:5

**excellent** 62:18

**except** 35:24

**exception** 11:4 12:7

**excuse** 35:22

**exhausting** 35:6

**exist** 26:9 38:16 47:12,12 47:13,17 48:9 48:9 52:4 53:14

**existing** 18:21 20:12

**exists** 43:7 61:20

**expedition** 20:15 21:9

**experience** 60:14

**experiences** 62:4 64:18

**explain** 41:2 45:4 50:24 56:22

**explained** 48:22

**explaining** 41:23 50:15

**extend** 8:8 13:21

**extending** 2:11

**extension** 10:12 49:18 55:9,20,22 56:1,8,10,21 56:22 57:18,23 58:6,7 59:7 64:25 65:2 67:7

**extensions** 58:5

**extent** 45:15 47:7 53:18

**extra** 59:12

**extraordinary** 58:20

**extremely** 20:15

**f**

**f** 1:21 68:1

**fabulous** 62:15

**face** 38:8

**fact** 17:1 31:16 34:23 39:16,20

39:23 45:6 60:9

**facts** 29:17 36:23

**failed** 33:21

**fair** 41:25

**fairly** 11:25

**fairness** 59:22 60:4

**fall** 10:18,22 11:3 14:22 33:20 36:17

**falls** 14:19,19

**family** 13:17 19:20 34:17 35:15 40:12 41:4 43:15

**far** 26:5 30:23 57:2,19 64:1

**fariello** 2:6 6:10 35:4,25 36:17,18 59:1

**february** 1:16 39:10 68:25

**fee** 17:10 34:1 34:1,1,20,24 35:2,4

**feedback** 8:22

**feel** 48:23

**feelings** 62:7

**fees** 17:9 22:16 32:2 33:17,24 34:22 36:5,25 37:25

**figure** 43:15 47:21

**figured** 9:6

**file** 2:12 20:11 48:15 59:15,20 59:21

**filed** 7:7,23 25:18,22 33:19 33:21 39:18 44:13 46:20,22 50:6,21 56:14 59:23,24,25

**filing** 11:10,22 14:9 16:3 17:2 20:19 27:19 39:15 44:23

**final** 58:6 59:9

**finances** 22:24

**financial** 12:22 29:24 34:16 35:9,10 47:18 47:22,22,25 48:6

**find** 20:7 26:6 27:16,17 43:12 48:18,23 61:18 64:16

**finding** 20:5

**fine** 7:9,14 8:15 9:6 11:4 12:19 21:19 43:5 52:6,7,24 60:24 64:18 65:20,24

**firm** 2:2 3:5 6:13 9:20,24 10:21 13:7,11 13:25,25 14:1 14:7,8,14,14

15:4,5,21,22
16:2,2,21 17:1
17:3,16,17,21
18:21 19:16,17
19:24 20:8,18
20:20,22,24
21:2,25 22:4
22:15 23:13,15
23:20 24:10
27:6,6,23,24
30:14 31:17,18
31:21,21,23,24
31:25 32:16
33:12 34:2,3,7
34:10,13,13,15
34:23,25 35:1
35:23 36:2,6,9
36:10,10,12,15
36:15,18,19,24
37:1,1,4,5,7,24
38:2,17,19,22
38:22 39:7,8
39:17,17,24
40:13,13,14,18
40:19 41:10,19
42:9 43:1
44:24 51:13,14
51:18,19 52:6
52:7,10,11,12
52:15,19 53:1
53:4 59:1
**firm's** 32:8
**firms** 9:12,22
10:13 11:23
12:18 13:17
16:13,24 17:14
19:22 20:16

24:17,23 25:11
28:12 44:7,16
46:3 61:8,21
**first** 9:18 10:17
15:22 17:5
20:2 23:13
29:16 31:6
51:16 53:15
65:6
**fishing** 20:15
**five** 58:19 59:2
**floor** 3:6,20
4:17
**flowing** 22:14
**focused** 10:6
**follow** 29:7
43:18,19
**foregoing** 68:3
**foremost** 31:6
**forgive** 36:21
**formed** 17:1,14
**former** 31:3
32:8 35:25
51:8
**forth** 14:11,12
32:10
**fortune** 34:14
**forward** 39:7
**found** 17:17
**four** 58:19,24
**frankly** 35:6
35:12 55:1
**fraudulent**
11:14 19:23
20:9 22:5 43:4
43:6 47:20

**fred** 35:8
**front** 23:22
47:21
**frustrated** 51:8
**functionally**
34:25
**funded** 10:8
16:1,20 26:18
34:25 37:23
53:12
**funding** 50:25
**funds** 15:20,22
22:16 33:17,23
34:22 36:5,24
53:11,13,14,21
**furniture** 36:9
37:21
**further** 2:11
30:12 41:12
48:18 58:5
**future** 63:21

## g

**g** 1:7,22 3:9,12
3:19 6:1,6
**garden** 4:3,4
**generally** 11:6
50:25 62:3
64:15
**generate** 32:2
**getting** 8:19
9:1 27:5 30:6
42:14,15 44:1
48:5 51:12
64:21
**give** 11:6 32:12
43:24 50:6
65:16

**given** 24:22
32:11 34:2
39:14 56:10
57:2 58:7
**gives** 20:8
**giving** 28:7
47:3
**go** 6:3 12:19,20
15:15 19:23
20:6 24:18
26:4 29:16
32:12 39:11
42:2 46:7
51:25 52:22
57:9,13,20
59:7,20 61:15
**goes** 13:5 14:3
14:4 25:8
38:13 53:5
**going** 6:3 7:25
8:4,13 11:13
13:13 14:11
18:14,18 19:4
19:6,9,16 20:1
20:6 21:16
22:9 23:9 27:4
27:15 29:17
30:7 34:8 36:3
39:5,6,7,10
41:3,16 43:14
43:24 44:3
46:9,19,20,20
47:2 48:13
49:17 50:23
56:1 58:10,16
59:7,8,9,11,14
59:18 60:3,3,6

60:12,18,23
61:4,4,13,14
61:18,21 63:14
63:24 64:2,8
64:22 65:22
**gold** 61:19
**gonna** 29:11
39:19 43:16,18
46:7 55:10
61:7
**good** 6:8,18
7:20,21 8:17
34:14 47:15
54:24,25 55:8
62:16 65:11,13
66:12
**gotten** 14:21
41:13 42:14
**grant** 27:17
48:13 56:1
59:7
**granted** 35:22
**grapple** 55:25
**great** 35:9
50:14 59:11
61:3 64:20
66:1,9
**green** 1:13
**group** 5:1
**grubin** 3:16
6:7,8,9,17,21
6:23,25 7:2,6
7:11 29:13,16
29:18,19 33:11
33:25 34:21
36:4,20 37:2,8
37:19 38:1,4

38:19 40:2
44:15 48:15,25
49:4,9 50:10
50:12 53:17
54:4,23,25
56:18 57:25
58:1,18 59:4
60:8 63:1,7
65:6,16,21
66:1,7,9,14
**guarantee**
12:12 18:10,13
18:20 19:4,8
**guess** 12:1
18:16 26:21
29:22 40:13
55:9 56:7,9
59:2
**guessing** 41:8
**guidance** 29:9

**h**

**hamroff** 4:1,8
4:15
**handle** 8:4
35:7
**handling** 34:23
35:2
**hands** 8:9
**happen** 13:15
43:23 46:18
54:9 61:2
62:13,14 64:5
64:6 66:6
**happened**
26:16 27:16
31:25 34:5
41:6,16 42:6

42:21 43:23
66:5
**happening**
40:3
**happens** 14:6
**happy** 10:15
15:11 62:2
**harangue** 33:3
**harassment**
32:9
**hard** 13:22
38:14 48:1
49:11
**harder** 21:10
**haven** 3:21
**he'll** 50:19,22
50:23
**head's** 65:17
**hear** 18:7 22:9
53:7
**heard** 31:16
**hearing** 2:1,5
2:10 44:6 57:3
57:6
**heart** 17:22
18:1 22:12
**held** 22:25
44:16,19,23
**hello** 7:4
**help** 63:13
**helpful** 29:15
60:12,15,19,21
62:4,20 64:16
**higher** 12:25
**hire** 34:8,11
**hmm** 22:20

42:21 43:23
66:5
**hock** 4:1,8,15
**hold** 44:19
**holding** 53:20
**holds** 44:24
**hon** 1:22
**honesty** 15:16
**honor** 6:8 7:18
7:20 8:3,17,18
9:1,9,15,25
10:5,9,13
15:11 16:10,18
21:12 22:10,10
22:18 23:4,25
24:12,14 26:2
26:24 27:25
28:4 29:15,20
30:17 32:13,22
33:8,13 34:16
35:20 36:7
37:10,12 38:10
39:1,4 42:22
44:4,15 45:14
45:14 47:10
49:9,14,21
50:10 51:3,20
53:9,10 55:6
57:2,5,7,17,21
57:22,24 58:1
58:14 63:1,4
65:8,13,16,18
66:15
**honor's** 29:9
**hope** 22:6 59:4
**hoped** 32:18
**hopefully**
24:19

hoping 15:9
hourly 34:1,1
  34:20
hours 35:16
housed 52:6
hundreds
  35:16
hurry 10:3
hustle 59:14
hyde 2:25 68:3
  68:8
hypothetical
  42:20 52:5
hypothetically
  52:1

**i**

idea 14:13
  54:24,25
ilan 3:23 7:11
important
  22:11 36:22
inappropriate
  42:7
include 10:6
includes 19:20
including 10:7
income 47:25
index 50:6
indicate 42:4
indicated
  33:18
indiscernible
  9:3 17:17
  23:24 29:18
  45:12 47:10,11
  47:14 53:16

individual 23:5
inform 33:16
information
  9:11 10:5 16:4
  16:8,11,12,15
  16:16,21,23,23
  17:19 21:15
  23:6 24:6,10
  24:11,22 25:3
  25:10,16 26:5
  27:5 28:6,17
  28:21 29:23
  30:15 32:17
  33:1 35:11
  37:16 38:13
  39:3,14,19
  40:11,17 41:1
  41:5,11,15,24
  43:12,16,18,19
  43:21,25 46:21
  46:22 47:3
  48:2 50:17,17
  57:13,13
informing 53:6
informs 6:13
inquire 41:21
inside 43:2
insist 58:5
insisted 10:3
insolvency
  34:5,6
instances 54:1
instant 10:11
  10:12
intention 26:23
inter 53:13

interest 10:8
  14:2,7 16:1,20
  25:19 26:17
  35:5 40:7
  44:25 50:24
  53:21
interests 25:6
  50:19
interrupting
  23:23
investigate
  63:24
investigated
  30:5
investigation
  30:4
involve 21:3
  22:3 26:8,11
  29:1 31:10
  41:20 46:16
involved 25:1
  31:8 46:14
involves 13:3
  28:25
involving
  25:14
ira 4:20 7:17
issue 14:1
  19:21 21:5
  22:25 24:25
  25:16 45:13
  47:19 50:19
  52:8,10,13
  55:20 59:17
issued 9:15
  30:21

issues 11:9
  12:14 13:5
  15:3,3 18:24
  20:5 21:3,6
  27:15 40:6
  45:14 46:7
  52:15 55:24
  65:18
it'll 20:12

**j**

janice 3:16 6:8
  55:5
january 39:9
  39:11
jobs 64:20
john 1:7 3:9,12
  3:19 6:6,11
  50:12
joining 7:12
joint 65:22
judge 1:23 6:2
  46:25 66:14
judgment
  18:11,16 19:5
  38:9,10,10
june 56:15,18
  56:19 59:8,8

**k**

keep 47:18
kept 23:15
  37:3
kids 34:17
kind 13:19
  20:8,14 27:19
  38:17 39:14

**know** 8:19 11:1
11:1,3,4,7,9,10
11:12,13,13,17
11:25 12:6,11
12:12,15,17,17
13:1,8,11,15
13:17,19 14:9
15:3 16:22
17:4,8,11,11
18:1,4,11,11
18:13,15,25
19:8,23 20:1
20:10,20,22,25
21:2,14,19,21
22:8 23:15,16
23:17,18 25:1
25:5,7,12,23
26:1,4,12,13
26:15,16,21
27:2,2 28:11
28:19,23 29:3
31:5,12,14
32:11,24 34:14
36:1,22 38:7
39:7,9 40:6,18
41:10,17,25
42:8,11,13
43:4,9,10,14
45:5,7 46:3,12
46:13,15,15,16
46:19 47:1,3,4
47:5,18 50:18
50:24,25 52:14
52:17,21 54:1
54:9,20 55:1
55:22,24 56:9
58:10,11,17

59:17,18,22,25
60:2,2,2,8,12
60:20,25 61:1
61:1,10,11,16
61:18,19,19,20
62:2,8,8,22,23
63:13,19,20
64:2,10,18
66:3
**knowing** 20:4
25:21 51:11
**knows** 35:9
40:5 58:22
59:22 60:1
**ks** 1:25

**l**

**landlord** 34:18
34:19 36:13
**language** 32:23
**late** 36:17
**law** 2:2 3:4
9:12,20,22,24
10:13,21 11:23
12:18 13:7,17
13:25,25 14:1
14:7,8,14,14
15:4,4,21,21
15:22 16:2,2,6
16:12,21,24
17:1,3,14,16
17:17,21 18:21
19:16,17,22,24
20:8,16,20,22
20:24 21:2
22:4,15 23:13
23:15,20 24:5
24:10,17,23

25:11 26:9
27:6,6,23,24
28:12 31:17,18
31:21 32:8,16
33:12 36:6,9
36:10,24 37:24
38:2 41:10,19
42:18,20 44:7
44:16 51:13,14
52:19 61:8,21
**lawsuit** 21:25
26:17 46:17
51:1
**lawsuits** 26:22
**lawyer** 28:12
34:8 46:15
**leave** 7:23 51:4
53:15
**leaving** 11:8
**ledanski** 2:25
68:3,8
**legal** 5:1 28:7
68:20
**leslie** 4:6 7:16
**letter** 39:22
**letters** 51:6
**lgb** 1:3
**liabilities**
10:20 12:5
**liability** 12:22
13:23 33:1
**lien** 10:8 16:2
30:2 32:2,3
51:6 52:20
53:12,23,25
61:14 64:11

**liens** 15:4
63:20
**light** 64:1
**likewise** 15:25
**limit** 22:8
**limitation**
61:20
**limitations**
14:10 15:6,8
47:2 61:2,17
64:6
**limited** 15:1
20:2 25:15,15
38:13 48:14
**limits** 29:3
32:25
**line** 6:16 67:4
**link** 6:20
**lisa** 1:22
**list** 14:23 25:20
32:15 42:3
49:25 50:5
**listened** 30:19
30:20
**litigated** 47:20
**litigating** 62:6
**litigation** 8:13
11:1 14:16
28:11 46:14
47:20 50:20,25
51:7 60:11
64:22
**litigations**
17:16 26:5
28:11 50:20
**little** 8:12
10:21 11:24

12:17 14:15,18
16:4 21:6 25:8
34:19 57:19,20
63:16 64:12
**llc** 4:2,9,16 5:1
5:2 7:17
**llp** 3:11,18 4:1
4:8,15 6:9
**log** 45:18 47:8
67:6
**logically** 8:7
**logs** 10:1
**long** 3:20 35:10
50:5 54:9
55:22 56:11,21
56:22
**look** 11:9 16:13
17:5 30:9
42:10,12 46:22
50:9,11,18,22
55:11
**looked** 14:23
29:21
**looking** 13:1
25:9 43:11
63:16
**looks** 42:16
**lot** 12:18 15:2
43:10,11 47:24
56:19 58:15
62:7,16 64:18

**m**

**made** 9:14,21
36:16 40:11,25
43:20
**maintains** 30:2

**majority** 24:3
**make** 8:1,7
24:19 28:5
34:20 35:14,18
42:6 47:18
55:3 59:8
**makes** 20:21
47:15 64:11
**making** 42:17
**march** 32:6
58:2,3
**marcus** 7:12
29:13
**markus** 3:23
**matter** 1:5
36:16 46:4,8
53:11 56:5
**matters** 31:10
34:23 39:24
63:22
**mean** 20:11,14
24:25 26:14
30:14 31:13
38:13,21,24
39:2,2 40:15
42:18 44:16
45:24 50:1
52:14 53:3,4
53:23 58:15
61:9 64:4,7
**meaning** 34:24
58:24
**means** 14:3,3
**meant** 63:18
**mediation**
60:13,19 62:1
62:15 63:2

64:14
**mediators**
60:17 62:18
64:20
**meet** 57:20
**members**
13:18 40:12
41:5
**memorialized**
54:6
**mentioned**
57:3,5 60:8
**met** 9:17,22
10:9 57:4
**meticulous**
37:3
**mindful** 10:25
11:19
**mineola** 68:23
**missed** 8:11
**mistake** 36:16
**mm** 22:20
**mode** 37:5
**moment** 11:8
**momentarily**
7:12
**money** 13:3,6
14:11 17:3,8
19:15 20:2,3
20:19,21,24
21:1 30:9 32:4
32:14 34:20
35:14 42:9,12
54:15 61:10
64:8
**money's** 54:11

**monies** 18:2,2
18:3 22:13
55:1
**months** 53:6
56:13,13,20
58:25 59:2
**moritt** 4:1,8,15
**morning** 66:4
**mother** 42:18
42:19
**motion** 2:10
8:8 10:11
24:19 33:21
35:20 49:16
55:9 64:25
**motions** 7:23
8:18 9:10,14
24:13 57:7
**move** 22:16
31:15
**moved** 14:14
17:16 20:20,24
21:1 31:17
39:20,21 42:9
42:12,13,16,18
42:25
**moving** 14:12
36:11
**multiple** 53:13
**mute** 6:7 9:3

**n**

**n** 3:1 6:1 67:1
68:1
**name** 32:10
35:8 39:15
49:24

**narrowed** 45:14
**nature** 27:4 46:8
**near** 9:22
**necessarily** 12:2 22:3 26:11,14 46:17 64:7
**necessary** 8:13 38:16 56:3
**necessitated** 10:11
**need** 17:8 21:18 27:17 28:23 32:8,9 34:11 41:1,21 42:4,24 44:23 45:4 50:16 51:15 55:2 56:8,22 59:15 60:15 62:10 63:15 64:24 65:1,3
**needed** 34:19 36:2 40:24
**needs** 6:20 40:4 54:5
**negotiate** 9:21
**nevertheless** 40:4
**new** 1:2,14 3:7 3:14,21 4:18 6:20 7:6 9:20 9:24 13:25 14:8 16:2 17:1 17:3,21 20:18

21:25 22:15 27:24 31:21,23 31:25 34:10,12 34:15,23 35:1 35:1,8 36:2,9 36:10,12,15,19 36:24 37:1,7 37:24 38:22 39:8,17 40:13 40:19 41:19 43:1 44:24 51:14,17,18 52:7,10 53:1 53:24 59:1 63:15
**newer** 8:12
**nine** 56:13
**ninth** 3:20
**non** 10:25 16:9 26:10 27:13 61:3
**normal** 41:8
**note** 40:10 48:16 64:10,23 65:1
**noted** 10:9 36:8 63:11
**nothing's** 22:6
**notice** 7:7
**notify** 54:2
**notwithstand...** 32:23
**november** 30:18
**number** 6:5 10:17 30:13 37:20 50:6

**numerous** 22:25 62:9
**ny** 1:14 3:7,14 4:4,11,18 68:23

**o**

**o** 1:21 6:1 68:1
**oath** 33:19
**object** 9:13
**objecting** 2:12
**objection** 56:5 61:11
**obligation** 18:13,13
**obtain** 9:11 24:6 57:12 58:15
**obvious** 37:16
**obviously** 7:23 8:6 11:1,12 14:10 18:11,13 18:18,23 19:23 33:11 40:16 43:10 46:21 54:12 55:10 60:9,20 61:7 62:22 63:21 65:5
**occurred** 25:13
**odd** 20:17 34:15
**offer** 33:5 35:12,12,13
**offered** 32:25
**offering** 33:4
**oh** 7:2 9:6 45:3

**okay** 6:5,15,18 6:18,21,23 7:9 7:14,19,22 9:2 10:16 18:7 23:7,25 24:4,8 27:15 28:13 32:25 37:9 38:15 42:23 47:12 50:4,14 51:17 52:7 54:4 55:7 56:15 57:25 59:4,6 65:20 65:24 66:10
**old** 13:25 14:1 14:7 20:24 21:2 27:23 31:21 32:16 34:2,7,13,13 34:25 35:23 36:9,10,15,18 37:1,4,4 38:19 38:22 39:7,17 40:13,14,18 51:13 52:6,11 52:12,15 53:3 68:21
**once** 41:11
**ones** 8:1 20:4
**ongoing** 20:17 27:6 41:15 62:9
**open** 62:3,5
**opening** 34:10
**operations** 10:20

| | | | |
|---|---|---|---|
| **opposed** 41:3 | **ownership** | **parties** 19:10 | **periods** 30:7 |
| **options** 28:2 | 24:10,23 25:3 | 31:4 52:23 | **permissible** |
| **order** 2:1,5,11 | 25:6 44:7 | 60:21,25 62:1 | 21:23 |
| 7:24 9:12,16 | | **partner** 7:17 | **permission** |
| 44:3,11 48:13 | **p** | 8:4 23:14,14 | 51:16 |
| 49:2 54:6,8 | **p** 3:1,1 6:1 | 23:19,20 63:8 | **person** 11:23 |
| 58:15 62:2 | **p.m.** 1:17 | **party** 19:1 21:6 | 23:14 46:7,14 |
| 64:14,24 65:3 | **page** 22:19 | 28:19 43:8 | 48:1,3 52:18 |
| 65:6 | 67:4 | 60:16 62:10,12 | **personal** 19:8 |
| **ordered** 44:8 | **pages** 58:21 | 63:15,19 | 22:23 47:6,17 |
| 49:23 58:14 | **paid** 15:23 | **party's** 53:21 | 62:7 |
| **orders** 57:9 | 17:3 18:3,6 | **pay** 35:14 | **personally** |
| **organizational** | 36:17,18 | **paying** 13:17 | 22:17 48:5 |
| 25:2 30:16 | **panel** 62:17 | 13:17 34:18,19 | **perspective** |
| **originally** | 64:19,19 | 36:12,12 | 22:16 33:16 |
| 58:18 | **panelist** 62:15 | **payment** 21:20 | 54:16 63:17 |
| **ought** 53:13 | **papers** 10:14 | 36:10 | **petition** 11:11 |
| **outcome** 64:6 | 15:12 29:25 | **payments** | 11:22 13:10,11 |
| **outcomes** | 36:7 55:10 | 16:21 26:19 | 13:13 25:4,13 |
| 63:17 | **paragraph** | **pending** 11:2,4 | 25:13 29:25 |
| **outset** 57:3 | 22:21 | 11:5 12:7,9,11 | 39:7 40:12,13 |
| **outside** 11:3,19 | **pardon** 8:25 | 14:17 15:2 | 40:14 |
| 21:10 25:5 | **park** 4:11 | 21:7,8,10,11 | **phrase** 29:19 |
| 27:22 35:23 | **part** 10:22 | 27:11 32:15,21 | **phrased** 30:25 |
| 43:6 52:14 | 12:25 14:5 | 35:21 53:2,20 | **pick** 39:9 43:22 |
| **overall** 11:8 | 15:16,22 18:22 | 56:10,13 | **picking** 14:20 |
| 58:21 | 20:22 27:23 | **people** 13:20 | **pierce** 5:6 |
| **owe** 34:13,13 | 32:17 33:3 | 43:10 46:16 | **piercing** 43:3 |
| **owed** 18:3 32:4 | 38:20 44:25 | 47:18 48:3,10 | **place** 13:25 |
| 32:7 64:9 | 58:17 62:23,24 | 59:20 62:3,5,6 | 54:22 |
| **own** 16:11 24:8 | **partially** 59:24 | 62:17 64:14,17 | **plaza** 4:3 |
| 45:10 60:14 | **particular** | 64:18 | **pleaded** 53:13 |
| 61:3 62:4 | 10:20 42:10,25 | **percent** 45:10 | **please** 6:4,6 |
| 64:17 | 51:11 | **perfect** 53:9 | **pllc** 2:2,6 3:3,4 |
| **owned** 16:15 | **particularly** | **perfectly** 12:19 | 3:5 |
| **owner** 24:3 | 27:6 46:11 | **period** 30:7 | **podium** 8:14 |
| | 64:10 | 61:5 | |

**point** 14:20
24:16 28:22
32:13,22 37:15
39:11 42:15
46:4 51:1,2
60:19
**pointing** 63:10
**points** 37:13
44:5 47:16
**position** 54:9
**possibilities**
63:21
**post** 13:13 25:4
25:4,13 29:25
40:13,14
**pot** 61:19
**potential** 22:16
**potentially**
21:4
**pravati** 4:2,9
4:16 5:2 7:16
8:19 9:10,17
9:21 10:3,7
15:20,23,23
16:1,20,22
17:4 30:2,4
31:12 33:22
34:25 35:6
37:22 38:9
51:4,5,9 53:4,5
53:7,12,16,25
54:10 58:23
**pravati's** 2:1,5
2:10 31:25
32:15,23 33:3
53:23

**pre** 13:10,11
25:13 37:5
40:12
**precise** 52:25
53:8
**precluding**
48:19
**preclusion**
19:11
**prejudice**
48:17
**preparation**
58:11
**prepared**
10:15 32:12
53:7
**preparing**
30:20
**presentation**
33:6
**presumably**
13:6 20:13
30:10
**pretty** 16:6
**prevent** 38:9
**prior** 18:21
37:5 44:10,10
**privilege** 10:1
10:2 31:2,3,5,5
34:3 45:17,18
45:20 46:11
47:7,8 67:6
**privileged**
45:24 46:1
47:4,4
**privileges** 31:4

**probably** 7:25
13:20 19:19
20:2 21:8 48:9
56:25 65:21
**problem** 15:6
18:8 24:24
39:16 49:5
52:16 54:11
60:25 65:24
66:8
**proceeded** 57:2
**proceeding**
11:2,4,5 12:7,9
12:11 14:17
15:2 19:3,12
21:7,8,10,11
27:11 32:21
57:19 65:19
**proceedings**
27:20 44:2
66:17 68:4
**process** 18:14
18:18
**produce** 2:2,6
9:23,25 10:11
45:23 58:13
**produced** 9:18
29:12 57:8
58:22
**productive**
63:9
**promise** 45:14
**property** 11:10
11:21 12:21
13:3 23:3
27:22,23

**proposed** 35:7
49:2 58:18
**protected** 32:9
**provide** 45:6
46:2,5 47:8
50:16
**provided** 24:11
25:2,11 36:19
37:4 38:18
39:6,18,20
40:4,9,21
50:13
**providing**
15:18
**provisions**
13:15
**public** 39:15
46:4 50:20
**publicly** 25:22
25:23
**purpose** 38:8
46:8
**purposes** 21:22
**pursuant** 2:3,7
2:10
**put** 6:4 20:21
33:25 35:15
43:1 45:24
54:16 56:20
57:14

| q |
|---|

**question** 8:11
13:4,9 19:15
23:21 25:7
39:13 54:5
55:21 56:7
60:22

**questions**
10:14,17 12:19
13:16 30:11,12
33:13 41:10,12
**quick** 49:21
**quickly** 57:9
**quite** 8:20 9:1
64:22
**quoting** 29:24

**r**

**r** 1:21 3:1 4:13
6:1 68:1
**raised** 15:3
**read** 17:24
46:23 55:10
**reading** 11:24
**realistic** 63:17
**realistically**
61:1
**reality** 61:9,23
64:9
**really** 11:10
12:3,13 15:5
16:4,16,18
18:1 19:23
24:22 27:7
29:21,22 30:18
30:23 42:17
45:2 53:1
**reason** 6:14
13:12 24:1
27:8,9 33:12
42:12 52:17
54:8
**reasonable**
13:9 21:13,14
29:3 39:12

45:5,19 57:12
**rebekah** 4:13
**recall** 47:9
**receivable**
34:12 35:3
**receive** 26:18
58:11
**received** 18:2
44:9,12 53:11
**receiver** 33:21
35:8,10,10
**recently** 17:14
**recognizing**
57:23
**record** 6:5 7:5
46:4 58:16
68:4
**records** 23:15
37:3 38:16,23
58:20,23,25
59:2
**redraft** 65:6
**refer** 6:11
**refusals** 9:23
10:10
**refused** 9:25
**regard** 54:2
65:22
**regarding**
25:11 30:15
**regards** 49:23
**reiterate** 36:4
**rejected** 35:12
**relate** 12:4
**related** 8:18
9:10 42:10

**relates** 15:2
18:18 43:13
**relating** 11:15
15:8 18:12
37:16
**relatively** 15:1
20:2
**relevant** 10:4
13:4,14,16
14:13,16 19:18
**relief** 11:6
**relies** 31:8
**remained**
32:16
**remedies** 26:7
26:8,9,10,10
**remember**
18:15 31:2
**repaid** 64:8
**repeatedly**
32:19
**reply** 22:19
53:1
**reported** 15:23
**represent** 6:9
6:12 28:19
33:11 36:3
**representation**
31:23 46:6
**represented**
34:2
**representing**
39:23
**request** 9:19
17:23 24:9
25:8 37:6
48:14 52:25

57:8
**requested**
25:17 59:8
**requests** 9:22
10:6,14 11:24
14:24 17:25
24:13 26:24
28:5,12 48:8
**require** 22:23
24:9 25:2
34:12 41:5,17
46:21
**required** 38:15
43:20 45:23
48:10 54:16
**requirement**
54:22
**requirements**
10:19,25
**requires** 15:16
**resolution**
64:21
**resolve** 60:15
62:5
**respect** 11:7
19:4 37:3 65:4
**respective**
53:21
**respond** 30:20
31:7 37:12
**response** 9:19
32:20 57:8
**responsive**
45:16
**rest** 46:5 66:12
**result** 46:17

retained 46:8
retainer 39:21
  41:23,24 42:4
  49:25
retainers 36:13
right 6:15 7:10
  7:15,19,22
  12:23 15:15
  21:1,3 22:6,9
  24:16 29:8,12
  34:10 35:18,19
  37:11 40:23
  43:9 44:14,18
  44:21 45:11,22
  48:12 49:13
  50:8,8 52:21
  53:3,3 55:3,7,8
  55:10,21 58:3
  59:6 61:10
  64:23 65:10
  66:7,10
rights 9:13
  11:18 43:1,5
road 24:18
  68:21
robinson 22:22
  23:1 31:8
room 6:14,19
  9:5
roughly 9:15
rubin 35:9
  36:1
rule 2:3,8 9:16
  10:12 15:13,15
ruled 30:17
  65:2

rules 2:11
ruling 62:12
rulings 67:3
run 48:15
running 36:20

**s**

s 3:1 4:20 6:1
sacrosanct
  32:24
saying 9:9
  14:25 19:2,3
  19:19 22:8
  23:17 29:2
  41:11 42:20,21
  43:13 44:2
  45:1 48:6,22
  51:10 54:18,19
  54:21 64:5
says 6:19 11:16
schedule 66:3
schnorr 65:19
schnurr 36:1
schnurrs 59:23
schools 34:17
schurrs 62:24
scope 30:18
scottsdale 5:4
second 2:10
  8:6 23:10
secondly 17:7
  37:20
section 23:3
sections 22:22
  57:15
secured 32:5
see 8:25 14:16
  16:19 19:21

30:9,10,11
  40:25 41:11,22
  42:23 48:23
  52:13
seeing 14:18
  38:15
seek 16:7 28:6
  29:23 30:13
  31:22 51:16
  53:15 59:10,10
seeking 16:23
  48:18 65:17
seeks 51:4
seem 11:25
  50:1 60:23
  62:20
seemed 14:24
seems 9:2
  10:18 11:3
  13:8 16:6
  18:10 21:14
  33:15 38:8
  39:12 40:20,24
  46:13 55:7
  56:25
seen 60:17
send 6:23
  48:16 53:19
  65:6
sending 65:22
sense 8:1,7
  17:13 20:21
  42:6
sent 7:6 51:5
separate 7:23
services 32:1
  36:19 37:3

53:25 64:11
session 6:3
set 8:6 29:20
  64:9 65:21
settle 35:13
settled 17:10
  18:4
settlement 17:9
  18:5 32:19,24
  33:1 37:25
  53:19,24 60:10
  63:14
settlements
  22:17 33:17,24
  34:22 36:6,25
  53:18 61:8,14
  61:22 63:22
seven 25:5
share 63:7
shared 32:15
  34:7 51:12
sheets 47:25
sherry 4:13
shielded 13:19
shortly 65:23
show 33:1
showed 33:2
  33:23
shows 58:16
side 17:25
  55:15
signature 68:6
signing 40:2
simply 17:18
  49:25
sit 2:2,7 35:19
  64:19,19

sitting 54:11
situation 11:2
  12:2 23:4 46:2
  53:11 63:23,25
  64:10
situations
  15:14
six 9:15 11:13
  30:7 39:6
  41:16 43:21
  44:22 56:13
  58:18
slowing 58:17
small 44:5,16
sole 23:1 24:2
solution 55:8
solutions 68:20
somebody
  13:18 23:16
  26:6 41:23
  56:4
someone's
  47:22
somewhat 53:7
sonya 2:25
  68:3,8
soon 58:14
sorry 7:8 22:5
  22:7 26:1 28:3
  38:4,14 43:1
  46:23 54:6
  63:15
sort 8:8 10:24
  43:4
sound 24:21
sounds 35:9

southern 1:2
space 8:24
speak 34:17
  53:17
speaking 33:12
specific 40:5
  42:24
specifically
  27:14
specificity 49:1
spend 7:25
spoke 34:18
staff 35:14
stand 30:14
standard 13:1
start 8:1,7 20:2
  20:18 32:14
  34:15
started 35:17
starting 34:16
state 44:13
  49:1,6
statement
  41:14
statements
  30:6,9 38:18
  39:5,10 40:10
  40:21 47:19,23
  47:25,25 48:7
states 1:1,12
status 32:17
statute 11:16
stay 19:13 26:7
  27:21 43:8
steps 29:10
stetson 5:3

stevens 35:8
stonewall 9:18
  15:18
stonewalling
  10:10 57:4
stop 23:9 32:10
stopping 22:2
  22:6 27:19
  43:8
story 60:1
street 4:10
stuff 13:10
  41:4 62:24
sublet 36:12
submit 48:13
  64:24
submitted
  30:17
subpoena 9:16
substitution
  25:17
sue 51:9
suggest 39:25
  48:12,15
suggesting
  61:25
suing 22:7 36:1
suite 36:11
  68:22
supplement
  33:6 50:12
supplemental
  30:13
suppose 10:22
  17:24 29:10,15
  33:12 35:25

supreme 36:2
sure 19:7 20:5
  21:22 23:12,23
  24:24 33:7
  35:18 40:23
  42:12 49:3
surprise 47:16
  48:7
surprised 13:7
suspicions 16:5
suspicious
  42:11
system 18:14

**t**

t 68:1,1
table 8:6 29:20
tailor 17:23
tailored 10:6
  12:13
take 7:24 8:23
  10:3 16:8
  24:17 29:19
  35:15 50:18,22
  57:13
taken 13:25
  55:19
talk 29:17
  38:15 55:8
talked 40:20
talking 11:7
  20:16 29:22
  37:22 43:16
  58:24
targeted 28:12
technically
  14:4,6 43:11
  52:14

**telephonic**
65:17
**tell** 54:13 61:24
62:14
**telling** 26:22
**tend** 17:25
**term** 30:25
**terms** 12:3
25:8 28:2
31:24 39:22
41:17 44:24
45:1 59:3 65:3
**testify** 33:23
**text** 6:16
**thank** 6:17
7:14 8:3,16,17
10:16 33:10,10
37:8,8,10,15
38:10 49:9
53:9 55:5,5
63:4 65:8,13
66:1,9,11,14
66:15
**thankfully**
34:20
**thing** 10:17,24
31:20 33:7
41:7 42:1 45:5
52:16 60:7
**things** 11:15
12:20 13:17
17:11,22 21:17
24:13 25:3
26:4,13 27:16
27:18 28:2,21
38:21 42:5
46:6,11,19

48:3,4 49:21
54:8 55:17,18
57:2,18 59:10
60:15 62:6,8
62:12 63:21
66:5
**think** 7:24 8:8
11:3,25 12:1,3
12:16 13:2,4,4
13:16,21 14:22
15:1,12 17:4
18:22 19:11,15
19:17,20,22,25
20:4,25 21:13
21:16,18,23
22:3,4,11
23:21 25:7,10
26:4,5,6 27:3
27:10 28:24
30:3,8 32:13
33:25 35:20
36:8,14 38:16
38:16,24 39:3
39:3,14,19
40:4,9,14,15
40:16 41:6,12
41:25,25 42:1
42:3 44:8
45:17,19,20,25
46:1 47:14
51:14,22 52:15
52:17,20,21
53:7,14 54:12
54:15,25 55:13
55:20,24 56:8
56:12,16,20,23
57:17 58:3,22

58:24 59:16,25
60:18,25 62:19
63:9,12,13,23
64:12
**thinks** 40:6
**third** 21:5 31:4
62:10,11 63:15
**thought** 7:3
8:10 36:22
57:10,11 63:5
**three** 7:23 16:3
17:1 20:18
**tie** 25:11
**time** 2:12 7:25
9:14,17 10:2
10:12 13:22
14:9 15:21
23:22 24:9
30:6,7 36:7
38:14 55:9,20
55:22 56:11,11
57:12,18,23
58:11 61:6
64:25 67:7
**timeframe**
56:8 59:11
**today** 7:17
8:18 9:10 31:9
61:25 65:15
66:11
**together** 57:14
**told** 16:24
17:19 24:7
50:9,11 51:21
51:24 53:4
**total** 36:14

**touched** 22:11
44:5
**towards** 12:13
**track** 42:5
**transactions**
22:24
**transcribed**
2:25
**transcript**
49:10 68:4
**transfer** 9:20
11:14 13:3,20
15:25 17:21
19:2,24 20:9
22:5 25:12,16
25:23 30:1
31:24 34:22
36:5,21 37:6
37:22 38:1,4
43:4,7 47:20
**transferred**
10:7 16:2,19
18:2 19:18
20:3,4,7 21:18
21:19,21,21
22:1 25:19,21
26:6,19 27:18
28:18 31:20,24
33:18,24 36:6
36:15,25 37:20
37:21,24 38:22
39:13,16,19,24
40:7,8,8 41:4
42:3,4 46:3
49:24,25 52:19
**transfers** 9:12
13:13,15,23,24

15:14 16:6
22:25 31:13,15
31:16 36:8
40:11,17,22,25
41:19,21,22
43:20
**transition** 34:9
**treated** 23:3
**tricky** 10:22
11:24 12:17
21:6
**tried** 32:19,21
60:9
**trouble** 14:15
14:18 15:10
**true** 13:7,11
19:2 22:7
23:13 31:19
38:20 46:24
62:13 68:4
**truly** 23:17
53:23
**trustee** 14:2,3
**try** 17:23 47:21
66:3
**trying** 13:20
16:18 17:22
18:8,9 22:12
22:13 24:1,6
35:14 59:17
**turn** 8:14 59:3
59:4
**turned** 18:16
**turns** 21:18
41:18
**twice** 42:2

**two** 8:5 17:17
19:14 24:13
35:21 49:21
**types** 46:14

### u

**u.s.** 1:23
**ultimately** 16:8
46:17 64:7
**uncommon**
48:2
**uncovered**
15:17
**under** 12:6,15
13:14 14:4,19
14:19 15:7
18:25 20:9
23:1,3 26:7,9
26:17 27:14
33:19 45:17,20
48:24 56:22
57:15
**understand**
13:24 18:9,17
25:6 26:25
27:3 28:9,15
29:8 31:18
37:18 38:12
39:1,4 40:3
42:8 44:4
45:15 50:22
51:18,19 52:7
59:6 63:3,12
**understanding**
13:22 15:19
**understood**
23:11 28:4
29:22 30:20

42:22 50:8,15
51:20
**undue** 33:3
**unduly** 14:24
**unfamiliar**
63:11
**united** 1:1,12
**unlimited**
26:15
**unreasonable**
44:25 47:9
56:20 58:4
59:16 60:4
**unusual** 64:1
**unwind** 35:18
**use** 6:20
**used** 30:25
**useful** 8:10
**using** 30:4
**usually** 62:4

### v

**valid** 27:8,9
**various** 23:1
46:14
**vast** 24:3
**vehicle** 22:15
**veil** 43:3
**veritext** 68:20
**view** 48:22
**views** 63:8
**virtual** 8:14
**virtue** 30:6
**vis** 18:5,5
53:11,11
**volume** 59:3

### w

**wait** 6:22
**waiting** 6:14
6:19
**waive** 31:5
**waiving** 34:3
**want** 18:1 28:4
32:13 36:4,23
62:1 64:15
**wanted** 24:17
35:17,18 51:9
60:7 65:14,16
**wanting** 64:13
**war** 31:16
**warranted**
12:2
**way** 8:23 12:4
25:12 30:24
34:14 35:18,19
38:6 40:1 43:2
45:24 47:16
54:18 57:2,18
64:11
**ways** 26:14
43:25
**we've** 10:9
15:12 24:7
40:20 50:12
57:1,2,3 65:4
**week** 58:14,22
59:5
**weeks** 9:15
58:19,19,19
**welcome** 63:2
**went** 12:25
30:11 31:21
34:3,14 37:5

40:17 41:14,18
42:19 43:17
52:19
**wharf** 3:20
**wholly** 16:14
**wind** 19:10
**winding** 29:25
51:24
**wish** 7:24
34:11 66:11
**withdraw**
35:21
**withheld** 45:16
**withholding**
45:20
**wonder** 60:21
**work** 9:8 54:3
**worked** 7:1
**world** 28:10,11
43:25 62:18
**worries** 7:9
**worse** 66:3
**worst** 12:25
**write** 49:6
**wrong** 23:17
33:15
**wrongdoings**
16:5

**x**

**x** 1:4,10 37:20
67:1

**y**

**yeah** 7:2,3 8:21
13:14 29:6
37:14 39:2
41:5 44:8 45:3

50:14 56:15,19
**year** 30:7 34:5
51:6 58:25
**years** 11:13
13:8 35:17
39:6 41:16
43:21 44:22
58:23,23,24
62:7,9
**york** 1:2,14 3:7
3:14 4:18 35:8
**yu** 14:20

**z**

**zaroff** 4:20
7:17,20,21 8:4
8:9,17,22,25
9:4,7,9 10:16
15:11 18:10
21:12 22:10,21
23:8,11,25
24:5,12 25:24
26:1,23 27:1
27:25 28:4,10
28:14,16,24
29:5,7,9 31:7
31:17 33:15
37:12,15,19
38:3,6,14 40:5
41:1 42:5,22
43:24 44:4,9
44:12,21 45:1
45:9,11,13,22
46:24,25 47:7
47:10,14 48:13
48:20,25 49:8
49:10,12,14,16
49:18,20,23

50:3,8,18
53:10,17 54:7
54:17 55:4,5
56:1,7,14 57:1
58:9 59:7 60:8
64:24 65:13
66:15
**zero** 34:16