Leslie A. Berkoff, Esq.
Ira S. Zaroff, Esq.
MORITT HOCK & HAMROFF LLP
1407 Broadway, 39th Floor
New York, NY 10018
Tel: (212) 239-2000
lberkoff@moritthock.com
izaroff@moritthock.com

*Attorneys for Pravati Capital, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In re:

JOHN G. BALESTRIERE,

                         Debtor.

------------------------------------------------------------------------x

PRAVATI CAPITAL, LLC,

                         Plaintiff,

     -against-

JOHN G. BALESTRIERE, BALESTRIERE PLLC dba
BALESTRIERE FARIELLO, and BALESTRIERE LAW
FIRM PLLC,

                         Defendants.

------------------------------------------------------------------------x

Chapter 7

Case No. 24-11422-lgb

Adv. Case No.: _____

**COMPLAINT SEEKING A JUDGMENT AGAINST
THE DEBTOR DENYING DISCHARGE AND TO
DETERMINE DISCHARGEABILITY OF DEBT AND
FOR A DECLARATION OF ALTER EGO-LIABILITY**

Pravati Capital, LLC ("Pravati"), as a creditor and party in interest in the above-captioned

chapter 7 bankruptcy case (the "Bankruptcy Case") of John G. Balestriere (the "Debtor"), through

its attorneys, Moritt Hock & Hamroff LLP, as and for its complaint (the "Complaint") herein

against the Debtor seeking the denial of Debtor's discharge pursuant to Sections 727(a)(2)(A),

727(a)(2)(B), 727(a)(3), and 727(a)(6) of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), and to determine dischargeability of Debtor's debt pursuant to Sections 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6), of the Bankruptcy Code, and against Defendants Balestriere PLLC dba Balestriere Fariello, and Balestriere Law Firm PLLC, and in support thereof, alleges as follows:

## JURISDICTION

1.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157, 1331, and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein are Sections 523(a)(2)(A), 523(a)(2)(B), 523(a)(6), 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), and 727(a)(6) of the Bankruptcy Code.

2.    In the event that this Court determines that any of the causes of action alleged herein are not a core proceeding, Pravati consents to the entry of final orders and judgment by this Court determining such causes of action.

## THE PARTIES

3.    Plaintiff Pravati Capital, LLC is a Delaware limited liability company with offices located at 4400 N. Scottsdale Road, Suite 9277, Scottsdale, Arizona 85251.

4.    The Debtor is an individual with a principal place of residence at 395 South End Ave., Apt. 7CC, New York, NY 10280.

5.    Defendant Balestriere PLLC dba Balestriere Fariello is a New York limited liability company with its last known business address at 225 Broadway, 29th Floor, New York, NY 10007.

6.    Defendant Balestriere Law Firm PLLC is a New York limited liability company with its last known business address at 225 Broadway, 29th Floor, New York, NY 10007.

3962859v1

# BACKGROUND

7.     On August 16, 2024 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code.

8.     Pravati provides litigation funding to law firms for all types of civil cases.

9.     Beginning in 2018 and lasting until on or about March 18, 2021, Pravati advanced litigation funding to Balestriere PLLC, a New York based law firm that does business under the name Balestriere Fariello ("<u>BF</u>") totaling in excess of $5,550,000.00.

10.     On or about September 17, 2020, Pravati and BF executed an Omnibus Legal Funding Contract and Security Agreement (the "<u>Agreement</u>") wherein BF acknowledged the outstanding amounts owed to Pravati (at the time the Agreement was executed, BF owed Pravati $6,942,908.11 in outstanding principal and interest) and Pravati agreed to provide $500,000.00 immediately, and up to an additional $2 million in funding to BF provided BF achieved certain milestones, which it did not achieve.

11.     Concurrently with execution of the Agreement, the Debtor executed a Limited Guarantee Agreement wherein the Debtor personally guaranteed BF's payment obligations under the Agreement.

12.     The collateral for the Agreement was a percentage of all hourly and contingency fees received, as well as any other fees received by BF for any other legal work from the date of execution going forward.

13.     Two supplemental funding agreements were executed after the Agreement. The first was executed on December 17, 2020. The second supplemental funding agreement was executed on March 18, 2021. BF acknowledged in both supplemental funding agreements the outstanding debt, which at the time of the second supplemental funding agreement was

$8,558,066.65. Pursuant to each supplemental funding agreement, Pravati wired two separate installments of $250,000 to BF. Both supplemental funding agreements explicitly stated they did not modify the terms of the Agreement.

14.     BF failed to meet its payment obligations under the Agreement, and on or about June 22, 2021 Pravati sent BF a Notice of material default demanding immediate payment of the amounts then owing. Pravati separately sent the Debtor a Demand to Guarantor demanding immediate payment of BF's outstanding debt to Pravati.

15.     Thereafter, on or about May 31, 2022, Pravati filed a demand for arbitration with the American Arbitration Association against the Debtor and Balestriere PLLC captioned, *Pravati Investment Fund IV, LP v. Balestriere PLLC and John G. Balestriere*, AAA Case No.: 01-22-0002-2850 (the "Arbitration").

16.     On or about March 7, 2024, a Final Award was obtained in the Arbitration, pursuant to which the Debtor and Balestriere PLLC were found liable to Pravati for damages in the amount of $16,153,364.93 (the "Judgment Debt"), including principal amounts and outstanding interest.

17.     The Final Award was confirmed as against BF by the Superior Court of the State of Arizona, in a judgment, dated March 27, 2025.

18.     By virtue of the Agreement, Pravati maintains a lien in the prospective recoveries in a multitude of cases which Pravati funded.

19.     On or about August 28, 2024, not even two weeks after filing for bankruptcy, the Debtor formed a new law firm: Balestriere Law Firm PLLC ("BLF"), a New York professional limited liability company.

20.     On or about October 29, 2024, the Trustee filed notice of his intention to abandon the estate's rights and interest in BF. The Abandonment date was November 12, 2024.

4

21.     Upon information and belief, the Debtor has improperly caused BF to fraudulently transfer assets to BLF both before and after the Petition Date, including assets in which Pravati maintains a lien or to which Pravati maintains a contractual right under the Agreement.

22.     Moreover, BF has withdrawn or moved to withdraw from many cases over which Pravati maintains a lien and which are not being appropriately managed and may have been abandoned to the detriment of the underlying clients, which will diminish or extinguish any recovery in the same.

23.     The Debtor's actions are adversely impacting Pravati's rights to collect upon its Judgment Debt.

24.     In order to both determine what steps are appropriate to take, vis a vis recovery of assets alleged to be improperly transferred by the Debtor, as well as determine if a basis exists to seek to block the Debtor's discharge in its entirety or the dischargeability of the Debtor's debt owed to Pravati, Pravati sought the production of certain documents from the Debtor and to take the Debtor's examination pursuant to Bankruptcy Rule 2004.

25.     By Order of this Court, dated December 11, 2024, the Court ordered the Debtor to produce documents and information pursuant to Bankruptcy Rule 2004.

26.     By Orders of this Court, dated March 5, 2025, the Court ordered BF and BLF, respectively, to produce documents and information pursuant to Bankruptcy Rule 2004.

27.     However, the Debtor, BF, and BLF have provided insufficient documents and information and have taken obstructionist positions in connection with responding to duly served subpoenas and complying with Orders of this Court.

3962859v1

## THE DEBTOR'S FRAUDULENT CONVEYANCES

28. Upon information and belief, the Debtor was at all relevant times the sole member of BF.

29. Shortly after the Petition Date, the Debtor formed BLF.

30. The Debtor is the sole member of BLF.

31. Upon information and belief, the formation of BLF was done in attempt to avoid the Judgment Debt and to permit the Debtor to fraudulently convey assets, including cases secured by Pravati, from BF to BLF, in an attempt to avoid the Debtor's obligations to pay the Judgment Debt.

32. Upon information and belief, the Debtor did in fact transfer cases, including those secured by liens by Pravati, clients, invoices, accounts payable, and other assets from BF to BLF (collectively the "Transfers").

33. Upon information and belief, the Debtor's Transfers took place both before and after the Petition Date.

34. Upon information and belief, the Debtor communicated with clients of BF that the cases previously handled by BF would no longer be handled by BF but would instead be handled by BLF.

35. Upon information and belief, cases, including those secured by Pravati, have been distributed, dispersed, or otherwise transferred from BF to BLF.

36. Upon information and belief, BLF received the cases and other assets from BF without consideration with actual intent to hinder, delay and defraud BF's and the Debtor's present and future creditors.

3962859v1

37.     Upon information and belief, BLF has acted as counsel for former clients of BF and has received income from such clients.

38.     The Transfers were made without fair consideration.

39.     The Transfers were made for the purpose of moving assets out of BF and into BLF to prevent creditors from reaching those assets.

40.     The Debtor exercises complete domination and control over BF and BLF, including as it concerns the Transfers.

41.     The aforementioned domination and control were used to commit said wrong against Pravati, which has resulted in harm to Pravati.

42.     The Transfers were made without fair consideration, thereby rendering BF and the Debtor insolvent to their creditors, and rendering the Transfers fraudulent pursuant to New York Debtor and Creditor Law.

43.     The Transfers were made with actual intent to hinder, delay and defraud BF's and the Debtor's present and future creditors, rendering the Transfers fraudulent pursuant to New York Debtor and Creditor Law.

44.     Based upon the foregoing, the Debtor, BF, and BLF are alter-egos of one another and are jointly and severally liable to Pravati.

45.     The Debtor acted willfully and maliciously with the intent to cause harm to Pravati by forming BLF in attempt to avoid the Judgment Debt and to permit the Debtor to fraudulently convey assets. The Debtor made the Transfers with actual intent to hinder, delay and defraud the Debtor's and his alter-ego law firms' present and future creditors, including Pravati.

46.     Based on the foregoing, the Debtor's debt to Pravati is non-dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.

3962859v1

47.     Based on the foregoing, Pravati is entitled to a judgment against the Debtor denying discharge pursuant to Section 727(a)(2)(A) and (B) of the Bankruptcy Code.

## **THE DEBTOR'S WITHDRAWAL FROM CONTINGENCY CASES**

48.     Upon information and belief, the Debtor caused BF to withdraw and/or move to withdraw as counsel from contingency-fee cases (the "Contingency Cases") over which Pravati has a lien.

49.     The withdrawals from the Contingency Cases occurred both before and after the Petition Date.

50.     Upon information and belief, the Debtor caused BF to continue to assert a charging lien over the Contingency Cases from which it withdrew or moved to withdraw as counsel.

51.     Upon information and belief, withdrawing from the Contingency Cases rendered BF insolvent: the fair value of its assets at the time became less than the amount required to pay its probable liabilities, including but not limited to those liabilities incurred by the Judgment Debt.

52.     The Debtor knew or had reasonable cause to believe the Transfers and withdrawals would render BF insolvent.

53.     Upon information and belief, the Debtor and BF abandoned efforts in most cases to maintain or prove a charging lien further diminishing the value of the Contingency Cases to the detriment of Pravati.

54.     Upon information and belief, the purposeful disposal of the assets over which Pravati has a lien by withdrawing from the Contingency Cases has diminished the value of the Contingency Cases and the chances of successfully procuring contingency fees.

3962859v1

55. Upon information and belief, the disposal of the Contingency Cases was done with willful, malicious and purposeful intent to cause harm to Pravati and to prevent, hinder, delay, and defraud Pravati as creditor of BF and the Debtor.

56. The Debtor was the sole member and alter-ego of BF and the Contingency Cases may be treated as property of the Debtor and the estate for purposes of Section 727(a)(2) of the Bankruptcy Code.

57. Based on the foregoing, the Debtor's debt to Pravati is non-dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.

58. Based on the foregoing, Pravati is entitled to a judgment against the Debtor denying discharge pursuant to Section 727(a)(2)(A) and (B) of the Bankruptcy Code.

## THE DEBTOR'S FAILURE TO MAINTAIN AND PRESERVE RECORDS

59. The Debtor was ordered to produce documents pursuant to an Order of this Court, dated December 11, 2024, and a subpoena served on him pursuant to such Order, dated January 8, 2025.

60. The Debtor's law firms, BF and BLF, were ordered to produce documents pursuant to Orders of this Court, dated March 5, 2025, and subpoenas served on them pursuant to such Orders, dated March 7, 2025.

61. Despite these Court Orders and subpoenas requesting documents, the Debtor and his alter-ego law firms, BF and BLF, consistently failed to produce responsive documents and information or adequate privilege logs despite various assertions of privilege.

62. The Debtor and his alter-ego law firms, BF and BLF, were put on notice on numerous occasions that their document productions and responses to the requests were deficient and their obstructionist positions untenable.

3962859v1

63.     Upon information and belief, the Debtor and his alter-ego law firms, BF and BLF have concealed, destroyed, falsified or failed to keep or preserve information and documents from which the Debtor and the Debtor's alter-ego law firms' financial condition or business transactions might be ascertained.

64.     Based upon the foregoing, the Debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained.

65.     There is no excuse for the Debtor's repeated failure or refusal to preserve and/or produce documents and information despite numerous requests and Orders of this Court to do so.

66.     Based upon the foregoing, Pravati is entitled to a judgment against the Debtor denying discharge pursuant to Sections 727(a)(2)(A) and (B) and 727(a)(3) of the Bankruptcy Code.

## THE DEBTOR'S FALSE REPRESENTATIONS

67.     Pursuant to the Agreement with Pravati, the Debtor and BF "represent[ed], that, as of the date of this Agreement, (a) The Portfolio of Cases and other Related Proceedings are meritorious and valued reasonably and in good faith."

68.     Despite this representation, it has been determined that at least one case in BF's portfolio of cases funded by Pravati was found to be meritless from the beginning and pursued in bad faith by the Debtor and BF.

69.     The above findings were made by The United States District Court for the Eastern District of New York in the case entitled, *Reply All Corp. v. Gimlet Media, Inc.* (1:15-cv-049590-WFK-PK) ("*Reply All*").

70.     The arbitrator found in the Arbitration that BF defaulted under the Agreement for failing to represent to Pravati that the *Reply All* case was meritless.

71.     Upon information and belief, despite the Debtor's representation that the portfolio of cases was meritorious and valued reasonably and in good faith, many of the cases over which Pravati has a lien were either: (i) meritless; and/or (ii) unreasonably overvalued.

72.     Upon information and belief, the Debtor and BF thereby acted willfully and maliciously towards Pravati in connection with the Agreement.

73.     Upon information and belief, at the time the Debtor made these misrepresentations, he knew them to be false with the intent to deceive Pravati.

74.     Pravati relied upon the Debtor's misrepresentations in agreeing to provide the Debtor and his alter-ego law firm with litigation funding.

75.     Pravati has suffered economic loss and damages as a result of the Debtor's misrepresentations.

76.     Upon information and belief, despite his representations, the Debtor never intended to repay the money Pravati loaned to BF and the Debtor thereby acted with the specific intent to cause Pravati economic injury.

77.     The Agreement did not permit the Debtor to use funds provided by Pravati for personal use by the Debtor.

78.     Upon information and belief, the Debtor, and his wife, used funds provided by Pravati for personal use.

79.     Upon information and belief, the improper use of such funds included, but was not limited to, personal vacations, including on trips to Italy.

3962859v1

80. The Agreement provided Pravati with a first position lien on all cases and forbade the Debtor and his law firm from assigning or encumbering those cases.

81. The Agreement required the Debtor and his law firm to report all new cases to Pravati so that it could file appropriate liens on the prospective proceeds of those cases.

82. Upon information and belief, despite these contractual obligations and representations, the Debtor caused his law firm to encumber certain of the cases by entering into a relationship with another litigation funding company known as Legalist.

83. Upon information and belief, the Debtor and his law firms, in contravention of the Agreement, accepted payment into their bank accounts from Legalist for the purpose of Legalist providing litigation funding.

84. Upon information and belief, despite the forementioned contractual obligations and representations, the Debtor also caused his alter-ego law firms to further encumber certain of the cases by allowing other law firms or lawyers to acquire contingency-fee liens over proceeds from certain of the cases over which Pravati has a priority lien.

85. Upon information and belief, the Debtor and his law firms provided false and/or misleading financial information in writing to Pravati upon which Pravati relied to agree to provide litigation funding to BF.

86. Upon information and belief, the Debtor and BF knew injury to Pravati was substantially certain to result from his willful and malicious conduct.

87. Based on the foregoing, the Debtor's debt to Pravati is non-dischargeable pursuant to Sections 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6) of the Bankruptcy Code.

3962859v1

## THE DEBTOR'S INTENTIONAL AND WILLFUL FAILURE TO PAY PRAVATI

88.     Despite the contractual obligations of the Agreement to pay Pravati and despite the Final Award and the Judgment Debt owed to Pravati, the Debtor and his law firms have purposefully failed to make any payments to Pravati while making payments to others, including to the Debtor and his alter-ego law firms.

89.     Upon information and belief, despite income generated by his law firms, including through cases improperly transferred from BF to BLF, the Debtor has caused his law firms to avoid making any payments to Pravati.

90.     Upon information and belief, the Debtor has caused his alter-ego law firms BF and/or BLF to make payments to and/or for the benefit of himself.

91.     Upon information and belief, the Debtor has caused his alter-ego law firm BLF to make payments to himself and/or to his alter-ego law firm BF.

92.     Upon information and belief, the Debtor has caused his alter-ego law firms BF and/or BLF to make payments to other parties while making no payments to Pravati.

93.     Upon information and belief, this conduct was malicious and willful with the intent to cause economic harm to Pravati.

94.     Upon information and belief, the Debtor and his alter-ego law firms are in violation of New York limited liability law governing the dissolution of limited liability companies, such as BF and BLF, for failure to pay Pravati.

95.     Upon information and belief, the Debtor and BF knew injury to Pravati was substantially certain to result from his failure to remit payment pursuant to the Agreement, in accordance with New York limited liability law, and to satisfy the Judgment Debt.

3962859v1

96. The Debtor and his law firms received the payment of fees for settling the matter entitled, *Vinoo Varghese v. Balestriere Fariello, and John G. Balestriere* (New York Supreme Court, County of New York, Index No. 651665/2024).

97. The Debtor failed to inform Pravati of this settlement or to remit any payment to Pravati despite the lien held by Pravati in connection with this case.

98. The Debtor and his law firms received the payment of fees for settling the matter entitled, *Sierra Stubbs and Gavin Jackson v. Yale University* (United States District Court for the District of Connecticut, Case No.: 3:21-cv-01525).

99. The Debtor failed to inform Pravati of this settlement or to remit any payment to Pravati despite the lien held by Pravati in connection with this case.

100. Upon information and belief, the Debtor and his law firms settled other cases over which Pravati has a lien, accepted contingency fees, or other renumeration for such settlements, but failed to inform Pravati of same or to remit payment to Pravati.

101. Upon information and belief, the Debtor and his law firms accepted payment of such contingency fees, or other renumeration, for themselves.

102. As admitted by the Debtor, he and his law firms used portions of such funds to pay other creditors other than Pravati.

103. Upon information and belief, the Debtor and his law firms had no intention of informing Pravati that it had obtained contingency fees, or other renumeration, for cases over which Pravati maintained a lien.

104. Upon information and belief, the Debtor's purposeful failure to pay Pravati while paying others, including himself, his wife, and his children, was done with the intent to hinder, delay or defraud Pravati's rights as a creditor.

3962859v1

105.     Upon information and belief, the Debtor's concealment of such settlement funds, contingency fees, or other renumeration, was done maliciously and willfully and made with the purposeful intent of hindering, delaying, or defrauding Pravati's rights as a creditor.

106.     The Debtor has concocted a scheme whereby he has caused his alter-ego law firms BF and BLF to intermingle funds under the guise of representing the Debtor and/or BF in connection with the dissolution of BF and/or the Debtor's bankruptcy proceeding.

107.     Upon information and belief, this scheme resulted in the payment of the law firms' funds to or for the benefit of the Debtor and/or his wife to the detriment of Pravati.

108.     The Debtor's complete domination and control of BF and BLF were used to commit wrongs against Pravati, including hindering, delaying, or defrauding Pravati and to prevent Pravati from recovering the Judgment Debt.

109.     The Debtor acted willfully and maliciously towards Pravati in order to avoid his obligations in connection with the Agreement and the Judgment Debt.

110.     Upon information and belief, the Debtor never intended to repay the money loaned to him by Pravati and/or his law firm BF.

111.     Upon information and belief, based upon the foregoing, the Debtor acted with the specific intent to cause Pravati economic injury.

112.     Based on the foregoing, the Debtor's debt to Pravati is non-dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.

113.     Based upon the foregoing, Pravati is entitled to a judgment against the Debtor denying discharge pursuant to Sections 727(a)(2)(A) and (B) and 727(a)(3) of the Bankruptcy Code.

3962859v1

## THE DEBTOR AND HIS LAW FIRMS' VIOLATION OF COURT ORDERS

114.    Pursuant to an Order of this Court, dated March 5, 2025, and consistent with the Court's direction at a hearing before this Court, "the Debtor and/or BLF shall turn over to Debtor's counsel any funds paid in connection with any cases or Legal Matters in which Pravati holds a lien, which funds shall be held in Debtor's counsel's escrow account pending a determination from the Bankruptcy Court as to the rights of any interested parties in such funds."

115.    Despite the clear and unequivocal Order of this Court, upon information and belief, the Debtor, and his counsel, caused funds to be paid to and/or earmarked for third-parties, or disbursed from the Debtor's counsel's escrow account without a determination by or permission from the Bankruptcy Court.

116.    Upon information and belief, such funds earmarked for third-parties and/or improperly disbursed by the Debtor and/or his counsel are for purported fee-sharing amounts with another lawyer or law firm in connection with a case or cases over which Pravati holds a lien.

117.    Based upon the foregoing failure to obey the lawful Order of this Court, Pravati is entitled to a judgment against the Debtor denying discharge pursuant to Sections 727(a)(6) of the Bankruptcy Code.

## COUNT I

### Objecting to Debtor's Discharge under 11 U.S.C. § 727(a)(2)(A) and (B)

118.    Pravati repeats and realleges each and every allegation set forth in paragraphs 1 through 117 of this Complaint as if fully set forth at length herein.

119.    Section 727(a)(2) of the Bankruptcy Code provides that the Court shall grant a discharge unless, the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed,

3962859v1

mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A)   property of the debtor, within one year before the date of the filing of the petition; or

(B)   property of the estate, after the date of the filing of the petition.

120.   The Debtor formed BLF in an effort to avoid the Judgment Debt and to permit the Debtor to fraudulently convey assets, cases, including cases secured by Pravati, from BF to BLF in an attempt to avoid the Debtor's obligations to pay the Judgment Debt.

121.   The Transfers were made between the Debtor, BF and BLF, entities under the sole control and dominion of the Debtor.

122.   The Transfers, made by the Debtor from BF to BLF were made both before and after the Petition Date

123.   The Debtor, BF, and BLF are alter-egos of one another and are jointly and severally liable to Pravati.

124.   The Transfers were made with actual intent to hinder, delay, and defraud Pravati.

125.   Before and/or after the Petition Date, the Debtor caused BF to withdraw and/or move to withdraw as counsel from the Contingency Cases over which Pravati holds a lien.

126.   The Contingency Cases are assets of the Debtor and the estate as the Debtor is the sole member with complete domination and control of his alter-ego law firm BF.

127.   The Debtor's withdrawal and/or motions to withdraw as counsel from the Contingency Cases rendered BF insolvent.

128.   The Debtor's purposeful disposal of the assets over which Pravati has a lien by withdrawing from the Contingency Cases has diminished the value of the Contingency Cases and the chances of successfully procuring contingency fees to the detriment of Pravati.

129.     The Debtor's disposal of the Contingency Cases was done with purposeful intent to harm Pravati an prevent, hinder, delay and defraud Pravati and other creditors of BF and the Debtor.

130.     The Debtor's failure to preserve or keep proper books and records was done for the purpose of concealing assets that would otherwise be used to pay the Judgment Debt.

131.     The Debtor's intentional failure to pay Pravati while paying himself, his alter-egos BF and BLF, and other creditors was done with the intent to hinder, delay or defraud Pravati's rights as a creditor.

132.     The Debtor's efforts to conceal from Pravati his or his alter-ego law firms' receipt of fees, including settlement or contingency fees over which Pravati has a lien was done with the intent to hinder, delay or defraud Pravati's rights as a creditor.

133.     Based upon the foregoing, Pravati is entitled to judgment against the Debtor denying discharge pursuant to Sections 727(a)(2)(A) and (B) of the Bankruptcy Code.

## <u>COUNT II</u>

### Objecting to Debtor's Discharge under 11 U.S.C. § 727(a)(3)

134.     Pravati repeats and realleges each and every allegation set forth in paragraphs 1 through 133 of this Complaint as if fully set forth at length herein.

135.     Section 727(a)(3) of the Bankruptcy Code provides that the Court shall grant a discharge unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act was justified under all of the circumstances of the case.

136.     The Debtor's law firms are under the complete control and dominion of the Debtor.

137.     The Debtor and his alter-ego law firms failed to produce responsive documents or adequate privilege logs pursuant to Court-Ordered Subpoenas.

138.     Based upon the foregoing, the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which his financial condition or business transactions, including those of his alter-ego law firms, might be ascertained.

139.     Based upon the foregoing, Pravati is entitled to judgment against the Debtor denying discharge pursuant to Section 727(a)(3) of the Bankruptcy Code.

## COUNT III

### Objecting to Debtor's Discharge under 11 U.S.C. § 727(a)(6)

140.     Pravati repeats and realleges each and every allegation set forth in paragraphs 1 through 139 of this Complaint as if fully set forth at length herein.

141.     Section 727(a)(6) of the Bankruptcy Code provides that the Court shall grant a discharge unless the debtor has refused, in the case—

(A)  to obey any lawful order of the court, other than an order to respond to a material question or to testify.

142.     The Debtor and his alter-ego law firms violated an Order of this Court, dated March 5, 2025 by disbursing or earmarking for payment to third parties' funds over which Pravati has a lien without the determination by or permission from the Bankruptcy Court.

143.     The failure to obey the lawful Order of the Court requires judgment against the Debtor denying discharge pursuant to Section 727(a)(6) of the Bankruptcy Code.

3962859v1

## COUNT IV

### Objecting to Discharge of Debt under 11 U.S.C. § 523(a)(2)(A)

144.     Pravati repeats and realleges each and every allegation set forth in paragraphs 1 through 143 of this Complaint as if fully set forth at length herein.

145.     Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a debt for money, property, services, or an extension, renewal or refinancing of credit, is not dischargeable to the extent obtained by—

   (A) false pretenses, a false representation, or actual fraud, other than a statement
       respecting the debtor's or an insider's financial condition.

146.     The Debtor and BF made material misrepresentations to Pravati in order to procure litigation funding pursuant to the Agreement.

147.     The Debtor made false representations to Pravati by overvaluing several cases in order to induce Pravati to provide funding.

148.     The Debtor made false representations to Pravati about the *Reply All* case upon which Pravati relied to provide litigation funding to the Debtor and his alter-ego law firm.

149.     The Debtor knew these representations were false and were intended to deceive Pravati.

150.     Pravati relied upon the Debtor's misrepresentations in agreeing to provide the Debtor and his alter-ego law firm with litigation funding.

151.     Pravati has suffered economic loss and damages as a result of the Debtor's misrepresentations.

152.     The Debtor and his alter-ego law firm made representations in writing that were materially false with respect to the Debtor and his alter-ego law firm BF, upon which Pravati relied.

3962859v1

153. Based on the foregoing, the Debtor's debt to Pravati is non-dischargeable under Section 523(a)(2)(A) of the Bankruptcy Code.

## COUNT V

### Objecting to Discharge of Debt under 11 U.S.C. § 523(a)(2)(B)

154. Pravati repeats and realleges each and every allegation set forth in paragraphs 1 through 153 of this Complaint as if fully set forth at length herein.

155. Pursuant to Section 523(a)(2)(B) of the Bankruptcy Code, a debt for money, property, services, or an extension, renewal or refinancing of credit, is not dischargeable to the extent obtained by—

(B) use of a statement in writing—

    (i)    that is materially false;

    (ii)    respecting the debtor's or an insider's financial condition;

    (iii)    on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv)    that the debtor caused to be made or published with intent to deceive.

156. With respect to the Agreement, the Debtor and his alter-ego law firm made representations in writing that were materially false with respect to the Debtor and his alter-ego law firm BF, upon which Pravati relied.

157. The Debtor made these representations with the intent to deceive Pravati in order to induce it to provide him and his alter-ego law firms with litigation funding.

158. With respect to the Agreement, the Debtor and his alter-ego law firm BF represented that all of the cases upon which Pravati would provide litigation funding were meritorious and valued reasonably and in good faith.

21

159. This representation was false, as found by the Arbitrator, at least as to the *Reply All* case.

160. With respect to the Agreement, the Debtor and his alter-ego law firm BF represented that it has not and would not encumber the cases on which Pravati holds a lien.

161. This representation was false and the Debtor made these representations with the intent to deceive Pravati in order to induce it to provide him and his alter-ego law firm with litigation funding.

162. With respect to the Agreement, the Debtor and his alter-ego law firm represented that no money owed or required to be paid to Pravati would be made subordinate to any lien or claim of any other party.

163. Despite this representation, the Debtor has paid monies otherwise owed to Pravati to himself or for the benefit of himself and/or his wife, and to other parties and creditors of the Debtor, including lawyers or law firms.

164. Despite these representations, the Debtor caused his law firm to encumber certain of the cases over which Pravati has a lien, including by, *inter alia*, entering into a relationship with Legalist, another litigation funding company.

165. These representations were false and the Debtor made these representations with the intent to deceive Pravati in order to induce it to provide him and his alter-ego law firm with litigation funding.

166. Based on the foregoing, the Debtor's debt to Pravati is non-dischargeable under Section 523(a)(2)(B) of the Bankruptcy Code.

3962859v1

<u>**COUNT VI**</u>

**Objecting to Discharge of Debt under 11 U.S.C. § 523(a)(6)**

167.    Pravati repeats and realleges each and every allegation set forth in paragraphs 1 through 166 of this Complaint as if fully set forth at length herein.

168.    Pursuant to Section 523(a)(6) of the Bankruptcy Code, a debt for willful and malicious injury by the debtor to another entity or to the property of another entity is not dischargeable.

169.    The Debtor and his alter-ego law firms have caused injury to Pravati and/or the assets over which it holds liens by way of his willful and malicious conduct.

170.    The actions of the Debtor have subjectively intended to cause Pravati injury and subjectively believed that the injury to Pravati was substantially certain to occur as a result of his actions.

171.    The Debtor acted willfully and maliciously with the intent to cause harm to Pravati by forming BLF in an attempt to avoid the Judgment Debt and to permit the Debtor to fraudulently convey assets, including cases secured with liens by Pravati, in an attempt to avoid the Debtor's obligation to pay the Judgment Debt. The Transfers were made with actual intent to hinder, delay and defraud the Debtor's and his alter-ego law firms' present and future creditors.

172.    The Debtor acted willfully and maliciously with the intent to cause harm to Pravati by causing his alter-ego law firm BF to withdraw and/or move to withdraw as counsel from the Contingency Cases over which Pravati had a lien. The Debtor's purposeful disposal and abandonment of the Contingency Cases diminished their value and was done with the purposeful intent to cause harm to Pravati and to prevent, hinder, delay, and defraud Pravati.

3962859v1

173.    The Debtor acted willfully and maliciously with intent to cause harm by obtaining new clients in his capacity as the sole member of BF and servicing said clients at and through BLF.

174.    The Debtor acted willfully and maliciously with the intent to cause harm to Pravati by making false representations in order to procure litigation funding from Pravati.

175.    The Debtor was found to have misrepresented the merits of at least one case funded by Pravati and was found to have pursued such case in bad faith.

176.    The Debtor acted willfully and maliciously towards Pravati for his intentional breaches of the Agreement which includes, the use of the funds provided by Pravati for personal use, wrongfully assigning or encumbering cases over which Pravati holds a lien, including, *inter alia*, by entering into a relationship with another litigation funding company, and failing to report new cases so that Pravati could file appropriate liens.

177.    The Debtor acted with intent to cause harm to Pravati by never intending to repay Pravati. The Debtor caused his law firms to avoid making payments to Pravati yet made payments to himself and/or his alter-ego law firm BF, and to other parties and creditors, in violation of New York limited liability law.

178.    The Debtor acted with intent to cause harm to Pravati by settling Contingency Cases without informing Pravati, receiving proceeds from such settlements and using such proceeds to pay himself, his alter-ego law firms, and others, but not Pravati. The concealment of such settlement funds was intentional and done with malicious intent in order to cause economic injury to Pravati by hindering, delaying, and defrauding Pravati's rights as a creditor.

179.    The Debtor acted with intent to cause harm to Pravati by concocting a scheme whereby he has caused his alter-ego law firms to intermingle funds under the guise of representing the Debtor and/or BF in connection with the dissolution of BF and/or the Debtor's bankruptcy

proceeding. This scheme has been used to enrich the Debtor at the expense of Pravati by hindering, delaying and defrauding Pravati's rights as a creditor.

180.    Based on the foregoing, the Debtor's debt to Pravati is non-dischargeable under Section 523(a)(6) of the Bankruptcy Code.

## COUNT VII

### Declaration of Alter-Ego Liability

181.    Pravati repeats and realleges each and every allegation set forth in paragraphs 1 through 180 of this Complaint as if fully set forth at length herein.

182.    The Debtor was at all relevant times the sole member of both BF and BLF.

183.    The Debtor exercises complete domination and control over BF's and BLF's actions, including in connection with the fraudulent transfers and other actions alleged herein causing injury to Pravati.

184.    Through his domination and control of BF and BLF, the Debtor intermingled funds between BF and BLF.

185.    Pravati asks the Court to pierce the corporate veil between the Debtor and his law firms BF and BLF because the Debtor abused the corporate form by causing the law firms to breach contractual obligations to Pravati and by fraudulently transferring, concealing, and disposing of assets in order to hinder, delay, or defraud Pravati and to prevent Pravati from recovering the Judgment Debt.

186.    Pravati is entitled to a declaratory judgment that the Debtor and his law firms BF and BLF are, and hereafter shall be, jointly and severally liable to Pravati for any damages or other relief for which the Debtor and his law firms are liable to Pravati.

3962859v1

WHEREFORE, Pravati respectfully requests that a judgment be entered in its favor and against the Debtor (i) finding that the Judgment Debt owed by the Debtor is not subject to discharge; (ii) denying discharge; (iii) declaring that the Debtor and his law firms, BF and BLF, are alter-egos of one another and jointly and severally liable to Pravati; and (iv) granting such other and further relief as this Court deems just.

Dated: New York, New York
     July 2, 2025

MORITT HOCK & HAMROFF LLP

By:   /s/ *Leslie A. Berkoff*
     Leslie A. Berkoff
     Ira S. Zaroff
     1407 Broadway, 39th Floor
     New York, NY 10018
     Tel: (212) 239-2000
     lberkoff@moritthock.com

*Attorneys for Pravati Capital, LLC*

3962859v1