Leslie A. Berkoff, Esq.
Ira S. Zaroff, Esq.
MORITT HOCK & HAMROFF LLP
1407 Broadway, 39th Floor
New York, NY 10018
Tel: (212) 239-2000
lberkoff@moritthock.com
izaroff@moritthock.com

*Attorneys for Pravati Investment Fund, IV, LP, and Pravati Capital, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
In re:

JOHN G. BALESTRIERE,

                       Debtor.
-----------------------------------------------------------------------x

Chapter 7

Case No. 24-11422-lgb

**PRAVATI INVESTMENT FUND, IV, LP, AND PRAVATI CAPITAL, LLC'S OPPOSITION TO DEBTOR'S MOTION TO (I) ENFORCE THE AUTOMATIC STAY, AND (II) AWARD DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY**

      Pravati Investment Fund IV, LP, and Pravati Capital, LLC (together "Pravati"), by and through its undersigned counsel, respectfully submits this Objection (the "Objection") to the Motion of Debtor to (i) Enforce the Automatic Stay, and (ii) Award Damages for Willful Violation of the Automatic Stay [Dkt. No. 139] (the "Motion"), and states as follows:

**PRELIMINARY STATEMENT**

      1.     The Motion is an attempt to use the automatic stay to strip Pravati of rights it has as against non-debtors and to impermissibly use the automatic stay as a sword.

      2.     Aside from the lack of substantive merit, the Motion also is procedurally flawed. It does not even attempt to extend the automatic stay to a non-debtor third party by satisfying the more rigorous standards of a Section 105 injunction.

4040916v1

3. A debtor must clearly demonstrate that the failure to enjoin the action would imminently and irreparably adversely affect or impact the bankruptcy estate or property of the bankruptcy estate. The Debtor, despite conclusory allegations, and hyperbole, does not and cannot satisfy this heavy burden. Indeed, the Motion presents no evidence to support the extraordinary relief requested. The sole Declaration submitted in support of the Motion is by the Debtor attesting to the truth of the Declaration which contains no factual allegations, and presumably, only the truth of exhibits, and fails to provide any factual support for the extraordinary relief sought.

4. In his Motion, the Debtor specifically complains that (i) Pravati's motion to intervene in the matter of *Moore, et al v. Rubin* (Case No. 1:2017-CV-06404) in the Eastern District of New York; (ii) Pravati's discovery motion and related filings in Arizona Superior Court in the matter *Pravati Investment Fund IV, LP v. Balestriere PLLC and John Balestriere* (Case No. CV2024-008391); and (iii) Pravati's lien assertions, UCC-1 filings, and service of information subpoenas somehow violate the automatic stay. Motion at ¶ 24.

5. However, the complained-of use of procedures utilized by Pravati to protect its interests are not in any way focused on the Debtor, individually, and are not in any way violative of the automatic stay. Indeed, as discussed, *infra,* they have been carefully tailored to focus only on a non-debtor entity in complete compliance with the Bankruptcy Code and applicable jurisprudence.

## STATEMENT OF FACTS

### Background

6. Pravati provides litigation funding to law firms for all types of civil cases. (*See* Adversary Complaint filed in this proceeding seeking a judgment against the Debtor denying

discharge and to determine dischargeability and for a declaration of alter-ego liability, dated July 2, 2025, Adversary Proceeding No. 25-01110-lgb [Dkt. 1] at ¶ 8 (the "Adversary Complaint").

7. Beginning in 2018 and lasting until on or about March 18, 2021, Pravati advanced litigation funding to Balestriere PLLC, a New York based law firm that does business under the name Balestriere Fariello ("BF") totaling in excess of $5,550,000.00. *Id*. at ¶ 9.

8. On or about September 17, 2020, Pravati and BF executed an Omnibus Legal Funding Contract and Security Agreement (the "Agreement") wherein BF acknowledged the outstanding amounts owed to Pravati (at the time the Agreement was executed, BF owed Pravati $6,942,908.11 in outstanding principal and interest) and Pravati agreed to provide $500,000.00 immediately, and up to an additional $2 million in funding to BF provided BF achieved certain milestones, which it did not achieve. *Id*. at ¶ 10.

9. Concurrently with execution of the Agreement, the Debtor executed a Limited Guarantee Agreement wherein the Debtor personally guaranteed BF's payment obligations under the Agreement. *Id*. at ¶ 11.

10. The collateral for the Agreement was a percentage of all hourly and contingency fees received, as well as any other fees received by BF for any other legal work from the date of execution going forward. *Id*. at ¶ 12.

11. Two supplemental funding agreements were executed after the Agreement. The first was executed on December 17, 2020. The second supplemental funding agreement was executed on March 18, 2021. BF acknowledged in both supplemental funding agreements the outstanding debt, which at the time of the second supplemental funding agreement was $8,558,066.65. Pursuant to each supplemental funding agreement, Pravati wired two separate

installments of $250,000 to BF. Both supplemental funding agreements explicitly stated they did not modify the terms of the Agreement. *Id*. at ¶ 13.

12. BF failed to meet its payment obligations under the Agreement, and on or about June 22, 2021 Pravati sent BF a Notice of material default demanding immediate payment of the amounts then owing. Pravati separately sent the Debtor a Demand to Guarantor demanding immediate payment of BF's outstanding debt to Pravati. *Id*. at ¶ 14.

13. Thereafter, on or about May 31, 2022, Pravati filed a demand for arbitration with the American Arbitration Association against the Debtor and Balestriere PLLC captioned, *Pravati Investment Fund IV, LP v. Balestriere PLLC and John G. Balestriere*, AAA Case No.: 01-22-0002-2850 (the "Arbitration"). *Id*. at ¶ 15.

14. On or about March 7, 2024, a Final Award was obtained in the Arbitration (the "Final Award"), pursuant to which the Debtor and Balestriere PLLC were found liable to Pravati for damages in the amount of $16,153,364.93 (the "Judgment Debt"), including principal amounts and outstanding interest.

15. The Final Award found BF and the Debtor liable to Pravati for breaches of contract that included, *inter alia*, defaults caused by misrepresentations made by the Debtor to Pravati. *Id*. at ¶¶ 67 *et. seq*.

16. On August 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code.

17. Because the Debtor had filed for Bankruptcy, Pravati moved to have the Final Award confirmed *only* as against BF by the Superior Court of the State of Arizona. The Final Award was confirmed in a judgment, dated March 27, 2025. *Id*. at ¶ 17.

18. The March 27, 2025 Arizona judgment was domesticated in New York on June 11, 2025 in an action entitled *Pravati Investment Fund IV, LP v. Balestriere PLLC*, Index No. 653498/2025 (the "New York Action").

19. The Arizona judgment was domesticated in New York *only* against non-debtor BF, as Pravati was careful not to seek enforcement of the Final Award against the Debtor.

20. Importantly, the Debtor did not cause BF to file for bankruptcy. Instead, on or about August 28, 2024, not even two weeks after filing for bankruptcy, the Debtor formed a new law firm: Balestriere Law Firm PLLC ("BLF"), a New York professional limited liability company. Adversary Complaint at ¶ 19.

21. The formation of BLF, in an effort to evade a debt owed to a litigation funding company, is part of the Debtor's *modus operandi*. The Debtor, his wife (also an attorney), and a prior law firm owned by them, Balestriere PLLC, entered into a litigation funding agreement with a company called Counsel Financial II, LLC ("Counsel Financial"), whereby BF borrowed $1,700,000.00 from Counsel Financial. Both the Debtor and his wife personally guaranteed the loan.

22. BF defaulted on the loan. Instead of repaying the loan, the Debtor and his wife, in an effort to evade the debt owed to Counsel Financial, formed a new law firm called Balestriere, Fariello & Abrams LLP.

23. Counsel Financial brought suit against the Debtor, his wife, their law firms, and others, for, *inter alia*, fraudulent conveyances in an action entitled *Counsel Financial II, LLC. v. John Balestriere, et al.*, New York Supreme Court, County of Erie, Index No. 802819/2014. *See* Zaroff Decl. Ex. 1.

24. Counsel Financial alleged that, like here, the Debtor caused Balestriere PLLC to transfer cases secured by a security agreement with Counsel Financial out of Balestriere PLLC and into their new law firm, Balestriere, Fariello & Abrams LLP.

25. Ultimately, upon information and belief, the Debtor settled the litigation brought by Counsel Financial and apparently paid some portion of the loan.

**<u>The Automatic Stay Does not Apply to Non-Debtors, Including BF</u>**

26. On or about October 29, 2024, the Trustee filed notice of his intention to abandon the estate's rights and interest in BF. The Abandonment date was November 12, 2024. Adversary Complaint at ¶ 20; [Dkt. No. 20].

27. The Trustee, in his Notice of Abandonment, stated that "the Trustee has determined that the Debtor's interest in Balestriere Fariello (the '<u>Interest</u>') should be abandoned because (i) the Interest is of inconsequential value to the Debtor's estate given the nature and amount of the claims asserted against Balestriere Fariello, and (ii) the administration of Balestriere Fariello and the Debtor's Interest in it are otherwise burdensome to the Debtor's estate." [Dkt. No. 20].

28. While the Debtor may still own BF, that does not create or implicate the automatic stay vis a vis the assets Pravati is looking to go after. While the Debtor contends that he "has an interest in BF fee receipts" (Motion at ¶ 7) it is simply untrue. All monies owed to BF must be paid to Pravati as its judgment creditor and in accordance with the Agreement between BF and Pravati.

29. Moreover, as this Court has unambiguously indicated, actions taken against BF and BLF are not prohibited by the automatic stay. In fact, during a hearing on February 19, 2025, in connection with Pravati's Rule 2004 motions to obtain discovery from BF and BLF against which the Debtor vehemently objected, this Court acknowledged Pravati's right to pursue discovery and

other remedies against non-debtors, reiterating that the automatic stay does not apply to them in multiple instances:

    a. (February 19, 2025, Hearing Transcript ("Hearing Transcript"), 19:9-14) "But you also have these other claims going on against parties, one of which is in wind-up and the other isn't—and I don't think there is preclusion against proceeding against either of those because…the stay doesn't apply to either one of them."

    b. (Hearing Transcript, 26:6-7) "I think if you find out that [cases] got transferred to somebody else who's not under the automatic stay, you have remedies."

    c. (Hearing Transcript, 27:17-24) "And I grant you, you may need to find out where things were transferred…[T]here's nothing stopping you from filing some kind of action against an entity that's not in bankruptcy proceedings. . . . [T]here's nothing about the stay that applies to either property that's been abandoned outside of the estate . . . the old law firm, and property that's not part of the estate, the new law firm."

    d. (Hearing Transcript, 42:23-43:12) "if [the cases] moved to the new firm, you have all your rights. . . . But you also have all your rights outside of here, whether they're contractual or fraudulent transfer arguments, or anything else that exists with the other party, nothing is stopping you. There is no stay. So right now you could -- you know, other than Mr. Balestriere, there's obviously a lot of people…a lot entities you could technically be looking for information if you find something about it."

(Zaroff Decl. Ex. 2 (Hearing Transcript))

**The Arizona Discovery**

30. In order to pursue its rights, Pravati is taking discovery. The discovery Pravati seeks in Arizona is permissible enforcement discovery against BF, the only party against whom the Arbitration Award was confirmed. The Debtor's deposition is akin to a Rule 30(b)(6) deposition as the only representative available to testify on behalf of BF.

31. Importantly, the Arizona Court also acknowledged and recognized that the stay does not apply to Pravati's discovery requests. In an Order, dated September 3, 2024, the Arizona

7

Court specifically held that the "Bankruptcy Stay applies only to those parties who filed bankruptcy, which appears to be Respondent John G. Balestriere only, at this point." *See* Zaroff Decl. Ex. 3.[1]

32. Thus, the issue of the application of the automatic stay in the Arizona proceeding was litigated there and the Arizona Court concluded that the stay did not apply to BF or any other entity or individual not in bankruptcy.

33. The Debtor has known about the Arizona proceedings, the position of the Arizona Court that the stay did not impact the ongoing proceedings, as well as Pravati's efforts to obtain discovery in connection with non-debtor BF for nearly a year, yet has made no complaints to this Court until now and has filed this Motion simultaneously with the Debtor's motion to dismiss the Adversary Complaint in a transparent effort to impermissibly use the automatic stay as an offensive sword and to strain Pravati's and, ultimately, this Court's limited resources.

**Pravati's Motion to Intervene**

34. The Debtor's complaint about Pravati's motion to intervene in the case entitled *Moore, et al v. Rubin, et al*, Eastern District of New York, Case No.: 1:17-cv-06404-BMC-CLP, is without merit. The motion to intervene merely pertained to Pravati's efforts in that case to protect its rights as a creditor of the non-debtor law firm BF and any rights in and to the attorney fee award issued in favor of non-debtor BF. The motion had absolutely nothing to do with the Debtor, individually.

---

[1] Of course, "'[C]ourts have uniformly held that when a party seeks to commence or continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (i.e., stays) the proceedings.'" *In re Wood*, 670 B.R. 700, 705 (Bankr. S.D.N.Y. 2025) (citing to *In re Killmer*, 501 B.R. 208, 214 (Bankr. S.D.N.Y. 2013) (quoting *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 (6th Cir. 2001) (citing *In re Baldwin–United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir. 1985)))).

**The Information Subpoenas and UCC-1 Filings**

35. After the domestication of the Arizona judgment and the commencement of the New York Action, Pravati served information subpoenas upon former clients of BF, inquiring about whether BF represented them, where any payments by the clients were deposited by BF (*i.e.*, bank name, account number), and whether their cases were transferred from BF to BLF. In addition, a restraining notice and subpoena duces tecum was served upon BF's bank. All of this was done in accordance with New York enforcement devices, and none were directed towards the Debtor, individually. The fact that BF is an entity that acts through the individual debtor does not change this analysis.

36. Moreover, the UCC filings that the Debtor complains of have absolutely nothing to do with the Debtor or the Debtor's estate. The UCC filings were made by Pravati out of an excess of caution to simply protect its interests in fees to which it is entitled that might be or have been made to non-debtor BF that the Debtor, individually, has no entitlement or right to, or interest in, and which has been abandoned by the Trustee. [Dkt. No. 20].

37. Pravati's actions have nothing at all to do with relitigating claims against the Debtor, as he contends. They have been carefully taken out of respect for the stay and in accordance with its rights to enforce the Judgment Debt against BF, as held by this Court.

**ARGUMENT**

**I.      THE AUTOMATIC STAY IS LIMITED IN SCOPE TO THE DEBTOR AND PROPERTY OF THE ESTATE**

38. As noted, BF was not brought into bankruptcy and the Trustee, on November 12, 2024, abandoned the Debtor estate's interest in BF. [Dkt. No. 20]. As such, Section 362 does not apply to BF.

39. The Court should reject the Motion as an attempt to impermissibly apply the automatic stay to a non-debtor. It is axiomatic and noncontroversial that the automatic stay does not apply to non-debtors, including "non-bankrupt co-defendants." 11 U.S.C. §362(a); *Teachers Ins. and Annuity Ass'n of America, Inc. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (citations omitted). The express language of the automatic stay is self-limiting; the stay protects "only the debtor, property of the debtor or property of the estate...It does not protect non-debtor parties or their property." *In re Advanced Ribbons and Office Prod., Inc.*, 125 B.R. 259, 263 (9th Cir. B.A.P. 1991) (citations omitted); *see also Teachers Ins. and Annuity Ass'n of America, Inc.*, 803 F.2d at 65; *In re Bidermann Indus. U.S.A., Inc.*, 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996) ("As a general proposition, the automatic stay is limited to the debtor, and does not apply to actions against non-debtor third parties.").

40. The Bankruptcy Code and caselaw make it abundantly clear: the stay herein simply does not extend automatically to non-debtors such as BF. *In re Crazy Eddie Sec. Litig.*, 104 B.R. 582, 583-84 (E.D.N.Y. 1989) (stays pursuant to 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants who are jointly liable on a debt with the debtor) quoting *Teachers Ins. and Annuity Ass'n of America, Inc.*, 803 F.2d at 65.

41. Only in extraordinary circumstances may a court enjoin independent actions against non-debtor parties under 11 U.S.C. §§ 105 and/or 362. "An extension of the automatic stay [to a non-debtor] is an extraordinary measure, reserved for the rarest of circumstances." *In re National Brokers of America, Inc.*, 663 B.R. 661, 670 (E.D. Pa. 2024) (declining to extend the stay to a third-party co-defendant).

42. Pravati's position herein is not novel. As a general rule, the bankruptcy stay does not apply to anyone but the debtor. Attempts to argue that the stay applies to non-debtor parties

are generally found to be without merit. For example, the automatic stay does not stop actions against guarantors, sureties, non-debtor affiliates, or co-defendants of a debtor. *See Teachers Ins. and Annuity Ass'n of America, Inc.*, 803 F.2d at 65-66 (co-defendant); *In re Keene Corp.*, 162 B.R. 935, 942 (Bankr. S.D.N.Y. 1994) (letter of credit); *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 60 (S.D.N.Y. 1992) (guarantor); *Matter of Johns-Manville Corp.*, 26 B.R. 405, 414 (Bankr. S.D.N.Y. 1983) (non-debtor co-defendants); *see also* 3 Collier on Bankruptcy § 362.03[3][d] (16th Ed. Rev 2025) ("The stay of litigation does not protect nondebtor parties who may be subjected to litigation for transactions or events involving the debtor." (citing cases)).

43. By his Motion, the Debtor is impermissibly attempting to wield the automatic stay as a sword. However, courts have consistently held that debtors cannot use the automatic stay as an offensive weapon. *See Winters By and Through McMahon v. George Mason Bank,* 94 F.3d 130, 136 (4th Cir. 1996) ("[s]ection 362 is a shield, not a sword"); *see also In re Synergy Dev. Corp.,* 140 B.R. 958, 959 (Bankr. S.D.N.Y. 1992*)* (the automatic stay is intended to maintain status quo and not as a sword); *In re Moss,* 270 B.R. 333, 342 (Bankr. W.D.N.Y. 2001) ("[t]he protections afforded by the Bankruptcy Code, such as the automatic stay, operate a as shield and not a sword").

44. While the Motion mentions—in passing—Section 105 of the Bankruptcy Code, it fails to discuss or even try to meet the standards necessary in order to obtain such extraordinary relief.

45. Of course, while Section 105(a) of the Bankruptcy Code empowers the Court to grant injunctive relief in certain limited circumstances, this power "is not limitless and should not be employed as a panacea for all ills confronted in the bankruptcy cases." *In re Schwamb*, 169 B.R. 601, 605 (E.D. La. 1994) (quoting *2 Collier on Bankruptcy* § 105.01(3) (15th Ed. 1993)) *aff'd*, 48 F.3d 530 (5th Cir. 1995).

46. Unlike the automatic stay provided by 11 U.S.C. § 362(a)(1), a party seeking to obtain an injunction benefiting non-debtors under 11 U.S.C. § 105(a) must satisfy a heavy burden of showing extraordinary circumstances. *See In re Third Eighty-Ninth Assoc.*, 138 B.R. 144, 146 (S.D.N.Y. 1992) ("The debtor bears the burden of proof in obtaining the 'extraordinary and drastic remedy' of an injunction.") (citation omitted). The invocation of section 105(a) requires that Debtors establish a "truly 'extraordinary set of circumstances'" to enjoin the prosecution of claims against non-debtors. *In re University Med. Ctr.*, 82 B.R. 754, 757 (Bankr. E.D. Pa. 1988) quoting *In re Metro Transp. Co.*, 64 B.R. 968, 974 (Bankr. E.D. Pa. 1986); *see also In re Sabratek*, 257 B.R. 732, 736-37 (Bankr. D. Del. 2000) (Court declined to enjoin a state court matter between non-debtor parties which did not involve property of the estate because there was no showing of irreparable harm).

47. This strict standard is applicable because "imposing an injunction for the benefit of a nondebtor party, besides depriving another party from the benefit of their bargain, also permits the nondebtor party to receive a major benefit of the bankruptcy process without having to be subject to any of its burdens and safeguards." *In re Nat'l Staffing Servs., LLC*, 338 B.R. 35, 37 (Bankr. N.D. Ohio 2005).

48. Moreover, to enjoin a proceeding by a creditor against a non-debtor third party, "the debtor must show that the creditor is not pursuing his legitimate right to collect from the third party, but rather is using the action against the third party primarily to pressure the debtor." *In re Juneau's Builders Center, Inc.*, 57 B.R. 254, 258 (Bank. M.D. La. 1986). Despite the Debtor's best efforts to obfuscate the issue, at bottom, Pravati simply seeks to maintain its rights as a judgment creditor by using permissible and appropriate procedural devices to enforce its Judgment Debt against a non-debtor entity abandoned by the Trustee. As held by the court in *In re Juneau's*,

"[m]erely to allege that the action against the third party has an adverse effect on the debtor [] is insufficient" since, "[m]ost likely all actions against related parties impact the debtor adversely." 57 B.R. at 258-59.

49. Significantly, as noted, during the February 19, 2025 Hearing, this Court observed that Pravati is free to pursue its debt collection efforts against non-debtors. *See, supra*, ¶ 28. As such, in accordance with well-established caselaw, and consistent with this Court's recognition that Pravati's rights against the non-debtor individuals and entities are unaffected by the automatic stay, the Debtor's Motion should be denied.

## II. THE *QUEENIE* EXCEPTION DOES NOT APPLY TO THE SITUATION HEREIN

50. The Debtor relies on an overly broad reading of exceptions to 11 U.S.C. § 362(a) enunciated in *Queenie, Ltd. v. Nygard International*, 321 F.3d 282, 287-88 (2d Cir. 2003) for the proposition that the automatic stay should somehow apply to Pravati's proper use of procedural efforts to secure its rights that have been carefully tailored to comply with the automatic stay.

51. In *Queenie*, the court upheld an extension of the automatic stay to a wholly owned subsidiary of the debtor because there was a direct connection between the property of the debtor and the property of the subsidiary. *See id.* Here, monies owed past, present, and future to BF should be used to pay its judgment creditor, Pravati, not the Debtor or his new law firm BLF. Presumably, this is among the reasons the Trustee abandoned BF.

52. The Debtor wrongly argues that *Queenie* stands for the proposition that BF is entitled to his automatic stay simply because BF is his law firm. To the contrary, the *Queenie* Court specifically held that lawsuits against non-debtors are *not* automatically stayed by a debtor's bankruptcy filing. *See Queenie, Ltd. v. Nygard International*, 321 F.3d at 287 (citing *3 Collier on Bankruptcy* § 362.03[3][d] (15th Ed. 2002); *id.* at 288 (the argument that the stay automatically

13

applies to third parties automatically "exceeds the bounds of responsible advocacy"); *accord Teachers Ins. and Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.").

53. The Debtor will not suffer any adverse economic impact from Pravati seeking discovery from or about BF in connection with the Judgement Debt. The Debtor admits that BF is being put into dissolution and has formed BLF as his new law firm, albeit improperly for the transparent purpose to evade the Judgment Debt. *See In re McCormick*, 381 B.R. 594, 602 (Bankr. S.D.N.Y. 2010) ("[I]t is unclear what impact the collection actions…will have on Debtor's 'intangible rights of ownership' since Debtor's shares in the LLC have no value according to his petition and Debtor admitted during the Hearing that the LLC 'was essentially a shell.'").

54. The Debtor strangely relies on the *Queenie* Court's citation to *A.H. Robbins Co. v. Piccinin,* 788 F.2d 994 (4th Cir. 1986) for the proposition that the stay may be applied in actions "where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant . . . .'" *Queenie*, 321 F.3d at 288 (quoting *A.H. Robbins Co.*, 788 F.2d at 999).

55. While the Debtor helpfully admits that he is the alter-ego of his law firms, this does not advance his argument for the purposes of applying the automatic stay to BF post-abandonment, and Pravati's appropriate efforts to enforce the Judgment Debt against it in accordance with this Court's direction.

56. Pravati is not bringing new actions against BF for the purposes of also making the Debtor jointly and severally liable for the Judgment Debt because he already is liable. Instead, Pravati is utilizing the enforcement mechanisms available to it against non-debtor BF and to

preserve its rights against others that may claim an interest in monies owed to BF. The Debtor seemingly recognizes this in footnote 4 of his Brief at page 11.

57. Indeed, instead of causing BF to file for bankruptcy along with him, the Debtor improperly formed his new law firm BLF in a transparent effort to evade and hinder Pravati's efforts to collect on the Judgment Debt from BF—the same way he formed a new law firm to evade the debt he owed to Counsel Financial.

58. The Debtor simply does not meet the "special circumstances" requirement for the application of the automatic stay to his non-debtor former law firm because he has not demonstrated that Pravati's discovery requests "threaten serious risk to a reorganization of debtor's estate in the form of immediate adverse consequences." *In re McCormick*, 381 B.R. at 601-02 (citing *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 328 F.Supp.2d 441-442 (S.D.N.Y. 2004) (citing *Queenie*, 321 F.3d at 287-288)).

59. The cases relied on by the Debtor are inapplicable to the present situation. The facts in this case are too dissimilar from the facts in the cases relied upon by the Debtor to provide any support for the Debtor's position. Accordingly, it is respectfully submitted that the Court should disregard their holdings with respect to the Motion.

60. By way of example, in *In re Johns-Mansville*, the court held that Section 105(a) could be used to prohibit a co-defendant of the debtor in numerous asbestos-related tort suits from conducting extensive discovery of debtor's employees for its own use in those suits from which the debtor had already been served because such activity would disrupt the debtor's reorganization. *See* 40 B.R. 219, 225-26 (S.D.N.Y 1984). In contrast, here the Debtor seeks to enjoin Pravati from utilizing procedural devices in connection with reserving its rights relating to non-debtor BF's Judgment Debt.

61. In *A.H. Robbins Co. v. Piccinin,* the court extended the stay to co-defendants of the debtor in tort suits because any use by the co-defendants of the pool of insurance funds available to the debtor would have diminished the resources of the debtor to the detriment of all the creditors. *See* 788 F.2d 994, 1008-9 (4th Cir. 1986). This case is irrelevant and inapplicable given the abandonment of BF.

62. In both *Johns-Mansville* and *A.H. Robbins Co.*, relied on by the Debtor in the Motion, the non-debtor co-defendants were faced with truly "unusual circumstances." *A.H. Robbins*, 788 F.2d at 1008; *Johns-Mansville*, 26 B.R. at 422. Both cases involved thousands of tort actions pending against non-debtor co-defendants with whom the debtors would be held jointly and severally liable. *See id.* The time and effort need to defend such a massive number of suits and the obvious drain on the estate's assets provided the justification for the court's extraordinary extension of the stay based on these "special circumstances."

63. The Debtor's reliance on *In re Residential Cap. LLC* is entirely misplaced as the Court only extended the stay pursuant to section 105(a) "to anyone seeking discovery from the Debtors absent further order of the Court." 480 B.R. 529, 537 (Bankr. S.D.N.Y. 2012). The Court further held:

> The Debtors offered no support for their position that section 362(a) precludes discovery…The Court accepts FHFA's argument that section 362(a) does not, standing alone, protect the Debtors from discovery in third-party actions. But the Court concludes that section 105 provides the Court with the necessary authority to extend the protection of the automatic stay to discovery from the Debtors.

*Id.* at 537. The Court came to this conclusion based on the evidence provided by the Debtor that it would take many weeks to comply with the discovery requests at an estimated cost of up to over $4 million dollars. *Id.* at 548-551.

64. Here, not only are the procedural devices used by Pravati not directed at the Debtor, individually, there is no extraordinary burden to the Debtor and he does not provide any evidence to the contrary.

65. In *McCartney v. Integra Nat'l Bank North*, the court extended the stay to an action against a mortgagor for which the debtor was a guarantor. *See* 106 F.3d 506, 510-511 (3d Cir. 1997). However, in *McCartney*, the debtor, as guarantor, would have been required to be made a party to any such suit under relevant state law. *Id*. Here, Pravati is not seeking to initiate "a claim to establish an obligation of which the debtor is a guarantor." *Queenie*, 321 F.3d at 287-88.

66. Based on the foregoing, the contention in the Motion that Pravati violated the automatic stay, let alone willfully with maliciousness or in bad faith pursuant to Section 362(k)(1) of the Bankruptcy Code (as discussed below), is without merit in both fact and law and the Motion should, it is respectfully submitted, be denied in its entirety.

### III. THE DEBTOR'S REQUEST TO IMPOSE PUNITIVE DAMAGES PURSUANT TO 11 U.S.C. § 362(K) IS WITHOUT MERIT

67. It is important to recognize, as the Debtor admits in his Motion, that the Arizona court, having heard arguments about the automatic stay and whether it should permit Pravati to seek discovery from BF, determined that the automatic stay did not apply.

68. Additionally, at the February 19, 2025 hearing before this Court, the Debtor also heard the Court's own observations that the automatic stay does not apply to non-debtor entities. Therefore, any suggestion that Pravati has sought to willfully violate the automatic stay is baseless as a matter of fact and law.

69. In the context of 11 U.S.C. § 362(k), punitive damages "are only appropriate where the stay violation was conducted in bad faith, with malice, or in a particularly egregious manner." *In re Ebadi*, 448 B.R. 308, 320 (Bankr. E.D.N.Y. 2011). Here, it cannot be said that Pravati acted

with any such bad faith, malice or in an egregious manner, especially given Pravati's carefully tailored use of procedural devices as to non-debtors in accordance with this Court's guidance, and the Arizona court's finding that Pravati's discovery there did not offend the automatic stay. Zaroff Decl. Ex. 3.

70. The Debtor's citation to *In re Crawford*, 388 B.R. 506 (Bankr. S.D.N.Y. 2008) is regrettable because that case was overturned on appeal based on the bankruptcy court's erroneous imposition of punitive damages since it did not make the necessary finding that there was the requisite "maliciousness or bad faith." *In re Crawford*, 476 B.R. 83, 87 (S.D.N.Y. 2012).

71. The Debtor's reliance on *In re Sucre* is equally misplaced. 226 B.R. 340 (Bankr. S.D.N.Y. 1998). There, the court found that the defendant continued to take collection activities *against the debtor* unlike the situation herein. *See id*. at 347-48.

72. Pravati has diligently avoided collection efforts against the Debtor, individually. It did not seek to confirm the Arbitration Award in Arizona against the Debtor, only non-debtor BF, and the Arizona court has agreed that the automatic stay does not apply to BF in the Arizona proceedings. The Arizona judgment domesticated in New York is only against non-debtor BF in connection with whom the discovery requests there are directed. The motion to intervene only involved monies owed or that may become due to non-debtor BF, not the Debtor, individually. And, the filing of the UCC liens only apply to monies that may or have become due to BF.

73. Pravati has done nothing with "maliciousness or bad faith." It has taken appropriate measures to protect its Judgment Debt, and only against non-debtors, as recognized by this Court at the February 19, 2025 hearing, and as more recently indicated by the Arizona court acknowledging the same.

## **CONCLUSION**

WHEREFORE, Pravati requests this Court to deny Debtor's Motion in its entirety and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      September 11, 2025

MORITT HOCK & HAMROFF LLP

By:   */s/ Leslie A. Berkoff*
      Leslie A. Berkoff, Esq.
      Ira S. Zaroff, Esq.
1407 Broadway, 39th Floor
New York, NY 10018
Tel: (212) 239-2000
lberkoff@moritthock.com
izaroff@moritthock.com
*Attorneys for Pravati Investment Fund, IV, LP, and Pravati Capital, LLC*